**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

| | |
|---|---|
| **CELIK HALAT VE TEL SANAYI A.S.**<br><br>                              **Plaintiff,**<br>    **v.**<br><br>**UNITED STATES,**<br><br>                              **Defendant.**<br><br>**and**<br><br><br>**INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, AND WIRE MESH CORP.**<br><br><br>                    **Defendant-Intervenors.** | **Court No. 21-00045** |

<u>**PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

Pursuant to Rule 56.2 of the United States Court of International Trade, and for the reasons set forth in the accompanying memorandum in support of Plaintiff's Motion for Judgment on the Agency Record, plaintiff Celik Halat ve Tel Sanayi A.S. hereby submit its motion for judgment on the agency record with regard to certain aspects of the final determination of the United States Department of Commerce ("Commerce") in the final determination and order. *Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the Netherlands, Saudi Arabia, Taiwan, the Republic of Turkey, and the United Arab Emirates: Final Affirmative Determinations of Sales at Less Than Fair Value and Final Affirmative Critical Circumstances Determinations, in Part*, 85 Fed. Reg. 80001 (Dep't

Commerce Dec. 11, 2020) and accompanying Issues and Decision Memorandum; *Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the Netherlands, Saudi Arabia, Taiwan, the Republic of Turkey, and the United Arab Emirates: Antidumping Duty Orders*, 86 Fed. Reg. 7703 (Dep't Commerce Feb. 1, 2021).

Plaintiff respectfully requests that this Court remand the case to Commerce with instructions to reconsider aspects of its determination in accordance with this Court's decision.

Respectfully submitted,

/s/Irene H. Chen
Irene H. Chen
CHEN LAW GROUP, LLC.
200-A Monroe St., Ste. 100
Rockville, MD 20850
Tel (301) 760-7393

May 28, 2021                             *Counsel for Celik Halat ve Tel Sanayi A.S.*

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

**CELIK HALAT VE TEL SANAYI A.S.**

                                        **Plaintiff,**

    **v.**

**UNITED STATES,**

                                        **Defendant.**

**and**

**INSTEEL WIRE PRODUCTS COMPANY,
SUMIDEN WIRE PRODUCTS
CORPORATION, AND WIRE MESH CORP.**

                **Defendant-Intervenors.**

**Court No. 21-00045**

**PUBLIC DOCUMENT**

---

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 56.2 MOTION FOR
JUDGMENT ON THE AGENCY RECORD**

Irene H. Chen
CHEN LAW GROUP, LLC.
200-A Monroe St., Ste. 100
Rockville, MD 20850
Tel (301) 760-7393

May 28, 2021

*Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

I.    INTRODUCTION ......................................................................................................... 1

II.   SUMMARY OF THE ARGUMENT .............................................................................. 1

III.  JURISDICTION ........................................................................................................... 5

IV.   PLAINTIFF'S RULE 56.2 STATEMENT ..................................................................... 6

    A.   Administrative Determination to be Reviewed ..................................................... 6

    B.   Issues Presented for Review ................................................................................ 6

V.    STATEMENT OF FACTS ............................................................................................ 6

VI.   STANDARD OF REVIEW .......................................................................................... 14

VII.  ARGUMENT ............................................................................................................. 16

    A.   Commerce's Imposition of A Bright-Line Rule Rejecting Celik Halat's Entire Sections
B And C Questionnaire Response Is A Severe Abuse Of Discretion ................................. 16

        1.   Controlling Judicial Precedent Precludes Commerce from Applying a Bright-Line
Rule under the Antidumping Duty Statute ........................................................................ 18

        2.   Acceptance of Sections B and C Questionnaire Responses Would Have Imposed No
Burden Whatsoever on Commerce's Conduct of the Investigation ................................... 23

        3.   Acceptance of Sections B and C Questionnaire Responses Would Have Resulted in
the Calculation of an Accurate AD Margin for Celik Halat .............................................. 24

    B.   Commerce Failed to Provide Celik Halat The Opportunity to Remedy The Deficiency
Under 19 U.S.C. 1677m(d) ............................................................................................. 25

    C.   Commerce's Stated Rationale Is Unreasonable ......................................................... 28

        1.   Commerce's Adverse Facts Available Finding is Unsupported by Substantial
Evidence ........................................................................................................................ 28

        2.   Commerce Acted Contrary to the Statute When it Removed Celik Halat's Timely
Filed Sections B and C Responses from the Record ........................................................ 30

        3.   Commerce Incorrectly Relies on its Regulations in Rejecting and Removing from
the Record Celik Halat's Sections B and C Questionnaire Responses ............................. 31

        4.   Commerce's Other Proffered Rationale Do not Justify its Rejection of Celik Halat's
Questionnaire Response or a Resort to AFA .................................................................... 36

        5.   Commerce Failed to Sufficiently Explain its Deviation from Its Practice of Granting
Retroactive Extensions for Minor Clerical Errors and Routine Mistakes ........................ 38

        6.   Commerce's Inconsistent Application of Extension of Time Limits Final Rule
Includes Petitioners' Extension Requests ........................................................................ 42

        7.   Commerce's Attempt to Distinguish Past Judicial Decisions is Unavailing ........... 45

VIII. CONCLUSION ........................................................................................................... 46

# TABLE OF AUTHORITIES

## CASES

*Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) .............. passim

*Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019) .................... 22, 37

*China Kingdom Imp. & Exp. Co. v. United States*, 31 Ct. Int'l Trade 1329, 507 F. Supp. 2d 1337 (2007) ........................................................................................................................ 26

*China Steel Corp. v. United States*, 264 F. Supp. 2d 1339 (Ct. Int'l Trade 2003) ....................... 25

*Dongtai Peak Honey Indus. Co. v. United States*,971 F. Supp. 2d 1234 (Ct. Intl. Trade 2014) .. 15

*Dupont Teijin Films v. United States*, 931 F. Supp. 2d 1297 (Ct. Int'l Trade 2013)............. 16, 19

*Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) .. 19

*Foshan Shunde Yongjian Housewares & Hardware Co., Ltd. v United States*, 35 C.I.T. 1398, 1402, (Ct. Int'l Trade 2011)........................................................................................................ 26

*Foshan Shunde Yongjian Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313 (Ct. Int'l Trade 2013) ...................................................................................................... 14, 42

*Green Country Mobilephone, Inc. v. FCC*, 765 F.2d 235, 237, 246 U.S. App. D.C. 366 (D.C. Cir. 1985) ......................................................................................................................... 41

*Grobest & I-Mei Industrial (Vietnam) Co., Ltd. v. United States*, 815 F. Supp. 2d 1342 (Ct. Int'l Trade, 2012)................................................................................................ 19, 21, 23

*Hontex Enters. v. United States*, 27 Ct. Int'l Trade 272, 293, 248 F. Supp. 2d 1323, 1340 (Ct. Int'l Trade 2003)....................................................................................................... 14

*Hyundai Heavy Indus. Co., Ltd. v. United States*, 393 F. Supp. 3d 1293, 1303-04 (Ct. Int'l Trade 2019) ....................................................................................................................... 28

*Hyundai Steel Co. v. United States*, No. 19-00099, 2021 Ct. Intl. Trade LEXIS 60, at *3 n.3 (Ct. Int'l Trade Apr. 27, 2021) ............................................................................................. 29

*Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*, 28 F. Supp. 3d 1317, 1323 (Ct. Int'l Trade 2014)....................................................................................................... 15

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mutual Auto. Ins. Co*., 463 U.S. 29, 57, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)........................................................................................ 15

*Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 587 F. Supp. 2d 1303, 1307 (2008) ............................................................................................................................... 41

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006)........................................ 14

*NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1320 (Fed. Cir. 2009) .................................... 15

*NTN Bearing Corp. v. United States*, 74 F. 3d 1204 (Fed. Cir. 1995)............................ 17,19, 21

*Prime Time Commerce LLC v. United States*, 396 F. Supp. 3d 1319 (Ct. Int'l Trade 2019)........ 31

*Pro-Team Coil Nail Enter. v. United States*, 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) .......... 24

*Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278 (Fed. Cir. 2004) ................................. 14

*Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ................................................................................................................... 18, 27

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001)................................................. 15

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277 (Fed. Cir. 2005).......................................... 16

*Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177 (Fed. Cir. 1994) .............................................. 16

*Timken U.S. Corp. v. United States*, 434 F.3d 1345 (Fed. Cir. 2006) ......................................... 20

*Transactive Corp. v. United States*, 91 F.3d 232, 319 U.S. App. D.C. 428 (D.C. Cir. 1996) ...... 14

*U.K. Carbon & Graphite Co. v. United States*, 931 F. Supp. 2d 1322 (Ct. Int'l Trade 2013) ...... 14

iii

*U.S. Magnesium LLC v. United States*, 895 F. Supp. 2d 1319 (Ct. Int'l Trade 2013)................. 19
*WelCom Prods., Inc. v. United States*, 36 CIT 1366, 1340, 865 F. Supp. 2d 1340 (2012) ......... 15
*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998) ....................................... 14
*Wuhu Fenglian Co., Ltd. v. United States*, 836 F. Supp. 2d 1398 (Ct. Int'l Trade 2012) ........... 17
*Xiping Opeck Food Co., Ltd. v. United States*, 34 F. Supp. 3d 1331 (Ct. Int'l Trade 2014)........ 15

## STATUTES

19 U.S.C. § 1516a(a)(2)(B)(iii).................................................................................................. 5
19 U.S.C. § 1673d(a)(1)............................................................................................................ 20
19 U.S.C. § 1516a(b)(1)(B) ...................................................................................................... 15
19 U.S.C. § 1677f(i)(3)(A) ....................................................................................................... 17
19 U.S.C. § 1677m(d).……………………………………………………………………passim
28 U.S.C. § l581(c) .................................................................................................................... 6

## ADMINISTRATIVE DECISIONS

*Extension of Time Limits*, 78 Fed. Reg. 57790 (Sept. 20, 2013). .................................................. 45
*Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the Netherlands, Saudi Arabia, Taiwan, the Republic of Turkey, and the United Arab Emirates: Antidumping Duty Orders*, 86 Fed. Reg. 7703 (Dep't Commerce Feb. 1, 2021)..................................... 6, 15
*Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the Netherlands, Saudi Arabia, Taiwan, the Republic of Turkey, and the United Arab Emirates: Final Affirmative Determinations of Sales at Less Than Fair Value and Final Affirmative Critical Circumstances Determinations, in Part*, 85 Fed. Reg. 80001 (Dep't Commerce Dec. 11, 2020) ................................................................................................................................................. 6
*Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the Netherlands, Saudi Arabia, the Republic of Turkey, and the United Arab Emirates: Preliminary Affirmative Determination of Sales Less Than Fair Value and Preliminary Affirmative Critical Circumstances Determinations, in Part*, 85 Fed. Reg. 61722 (September 30, 2020) .............. 13

## ADMINISTRATIVE REGULATIONS

19 C.F.R. § 351.301 ................................................................................... 22, 32, 39, 40
19 C.F.R. § 351.303 .............................................................................................. 37, 38
19 C.F.R. § 351.302 ........................................................................................... passim

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

## I.  INTRODUCTION

Plaintiff Celik Halat Ve Tel Sanayi A.S. ("Celik Halat") initiated this appeal to review the final determination issued by the Department of Commerce ("Commerce") in the antidumping duty investigation of prestressed concrete steel wire strand from the Republic of Turkey. This appeal challenges Commerce's decision to apply total adverse facts available to Celik Halat on the basis that it untimely filed a single business proprietary information ("BPI") exhibit of its Section B questionnaire response 21 minutes after the 5:00 p.m. ET filing deadline on the response due date.[1]

## II.  SUMMARY OF THE ARGUMENT

While cases involving adverse facts available ("AFA") are a frequent occurrence before the Court, Commerce's actions and the basis for its application of AFA against Celik Halat in this case have set an astonishing new level of overreach by the agency. Due to a 21-minute delay in receiving one BPI exhibit of plaintiff's Section B questionnaire response, Commerce determined that Celik Halat's entire Sections B and C responses should be rejected and removed from the record.[2]  After removing Celik Halat's diligently prepared responses, Commerce

---

1  Public documents in the administrative record are designated as "PR." "CR" refers to confidential documents in the administrative record.

2  The only late filing at issue as stated in Commerce's Memorandum Rejecting Celik Halat's Sections B and C questionnaire is the Domestic Sales Table, a Section B exhibit. *See Letter from Commerce: Rejection of Sections B and C Questionnaire Pertaining to Celik Halat* (August 19, 2020) (PR 137). However, to the extent that Commerce's position is also that the public version of four of Celik Halat's Section C exhibits are also untimely (as they were filed at 5:06 p.m. ET on the due date), all arguments in this brief also apply to those filings as well.

applied adverse facts available in the final determination on the ground that no usable information was available to calculate an antidumping duty ("AD") margin for Celik Halat. Commerce's actions were an outrageous abuse of discretion in violation of its own regulations and its statutory obligations.

The pertinent facts are as follows:

- The deadline set by Commerce for Celik Halat's Sections B and C response to the AD questionnaire was 5:00 p.m. Eastern Time ("ET") on August 10, 2020.

- On August 10, 2020, at 4:10 p.m. ET, after confirming that all information and documents for Celik Halat's Sections B and C of the AD questionnaire were ready for submission to Commerce, Celik Halat's representative (the "representative") began to file the Section B and C responses through Commerce's ACCESS electronic records system ("ACCESS").

- At 4:12 p.m. ET, Celik Halat's representative received an e-mail from ACCESS with an error message, rejecting a single PDF exhibit of the BPI version of the Section B response, the Home Market Sales Table, on the ground that it contained "no searchable text." Celik Halat's representative decided to move on to the other parts of the filing.

- At 4:17 p.m. ET, Celik Halat's representative received ACCESS' confirmation that all BPI narrative files of Section B and C responses and all PDF versions of its Section B response BPI exhibits were successfully submitted under the time stamp of 4:16 p.m. ET.

- As Celik Halat's representative attempted to upload the BPI version of the Section C response, an error message of "no searchable text," similar to the one issued for the

Domestic Sales Table, appeared. Celik Halat's representative immediately re-scanned and re-OCR'ed each document of Section C response, to meet ACCESS' searchable text requirement, and proceeded without delay to re-file each document one by one.

- During filing, Celik Halat's representative encountered unusually slow ACCESS processing times, with messages of "waiting for ACCESS to respond."

- At 4:43 p.m. ET, Celik Halat's representative received ACCESS' confirmation that the BPI version of all Section C exhibits had been successfully submitted under the time stamp of 4:42 p.m. ET.

- At 4:57 p.m. ET, Celik Halat's representative received ACCESS' confirmation that the public version of the Section B response had been successfully submitted under the time stamp of 4:56 p.m. ET.

- At 5:00 p.m. ET, Celik Halat's representative received ACCESS' confirmation that Exhibits C-1, C-2, C-3 and C-4 of the public Section C response had been successfully submitted under the time stamp of 4:59 p.m. ET.

- Remaining exhibits of the public Section C response, Exhibits C-8, C-9, C-10 and C-11, were successfully submitted under the time stamp of 5:06 p.m. ET.

- At 5:21 p.m. ET, after numerous attempts, Celik Halat's representative gave up trying to submit the PDF version of the Home Market Sales Table, and instead filed the Excel version of the Home Market Sales Table. With the filing of the Excel version, Celik Halat received ACCESS' confirmation that the BPI exhibit to Section B response, the Home Market Sales Table, had been successfully submitted under the time stamp of 5:21 p.m. ET.

- By 5:21 p.m. ET on August 10, 2020, Celik Halat had submitted the complete public and BPI responses to Sections B and C of Commerce's AD questionnaire.

- On August 19, 2020, Celik Halat received a letter from Commerce stating that Celik Halat's entire response to Sections B and C of the AD questionnaire had been rejected. Commerce's reason for rejecting Celik Halat's entire Sections B and C response was that the "home market sales data portion of your response" was not filed until 5:21 p.m. ET.

- On September 23, 2020, Commerce published its preliminary determination and assigned Plaintiff an adverse facts available rate of 53.65 percent, the AFA rate recommended by Petitioners in the Petition.

- On December 11, 2020, Commerce published its final determination and continued to apply adverse facts available to Celik Halat, with the same AFA margin of 53.65 percent.

Based on a 21-minute delay in filing a single BPI exhibit to Section B, i.e., the home market sales table, Commerce rejected Celik Halat's entire Sections B and C questionnaire response. *See Letter from Commerce Pertaining to Celik Halat: Rejection of Sections B and C Questionnaire Response* (August 19, 2020) (PR 137). Commerce then assigned Celik Halat adverse facts available, even though (1) Celik Halat had the complete set of its Sections B and C questionnaire responses in hand and ready to file on the due date; (2) the great majority of Celik Halat's Sections B and C questionnaire response was filed by the 5:00 p.m. ET filing deadline; (3) due to unusually ACCESS processing times and minor formatting issues, Celik Halat was unable to submit the home market sales table until 5:21 pm ET on the due date; (4) Celik Halat submitted its Sections B and C responses on the deadline date, which was 45 days prior to the

Preliminary Determination and 121 days prior to the Final Determination. No burden would have been suffered by Commerce had it accepted the filings and it is indisputable that using Celik Halat's responses instead of AFA would have resulted in more accurate margins. Commerce applied an impermissible bright line rule in rejecting Celik Halat's response in its entirety, without evaluating the particular circumstances and in violation of its own regulations regarding timely filed documents. Commerce also defied its own practice of granting post-deadline extensions for minor delays.

Commerce's application of adverse facts available was in violation of the statute. There was no evidence of a failure to cooperate by Celik Halat. The entire episode involved difficulties with the ACCESS interface. Commerce improperly equated the minutes delay in Celik Halat's filing of a single BPI exhibit with an adverse facts available determination against Celik Halat. Commerce's penalty of AFA was grossly disproportionate to the minor compliance error and has no support in the record.

Commerce's arbitrary actions have resulted in an unjust windfall to petitioners and significant harm to Celik Halat. Accordingly, the Court should remand this case back to Commerce with instructions to reopen the AD investigation, accept for filing Celik Halat's Sections B and C questionnaire responses and calculate an AD rate for Celik Halat.

Plaintiff respectfully requests an expedited disposition of its challenge to Commerce's *Final Determination*. Celik Halat is laboring under an extreme and punitive cash deposit rate that has materially affected its ability to remain in the U.S. market as a supplier.

## III.  **JURISDICTION**

This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii). This action challenges certain determinations relevant to Commerce's final determination in the antidumping duty

investigation of prestressed concrete steel wire strand from the Republic of Turkey. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c).

## IV.  PLAINTIFF'S RULE 56.2 STATEMENT

### A.  Administrative Determination to be Reviewed

Plaintiff Celik Halat contests the final determination of the United States Department of Commerce ("Commerce") in the antidumping duty investigation, published as *Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the Netherlands, Saudi Arabia, Taiwan, the Republic of Turkey, and the United Arab Emirates: Final Affirmative Determinations of Sales at Less Than Fair Value and Final Affirmative Critical Circumstances Determinations, in Part*, 85 Fed. Reg. 80001 (Dep't Commerce Dec. 11, 2020) (PR 171) ("Final Determination") and accompanying Issues and Decision Memorandum ("Decision Memo") (PR 167); *Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the Netherlands, Saudi Arabia, Taiwan, the Republic of Turkey, and the United Arab Emirates: Antidumping Duty Orders*, 86 Fed. Reg. 7703 (Dep't Commerce Feb. 1, 2021) (PR 174).

### B.  Issues Presented for Review

1. **Issue 1:**   Whether Commerce's application of a bright-line rule to reject Celik Halat's entire Sections B and C questionnaire response based on one untimely filed exhibit regardless of any particular circumstances was arbitrary and capricious, unsupported by substantial evidence, and an abuse of discretion not in accordance with law.

2. **Issue 2:**   Whether Commerce's decision to apply adverse facts available based on Celik Halat's submission of a single Section B exhibit 21 minutes after the filing deadline, was an abuse of discretion, unsupported by substantial evidence and not in accordance with law.

## V.  STATEMENT OF FACTS

This appeal arises from the antidumping duty ("AD") investigation of prestressed concrete steel wire strand ("PC Strand") from the Republic of Turkey. On May 6, 2020, Commerce initiated the AD investigation of PC Strand from Turkey. *See Prestressed Concrete Steel Wire Strand from Argentina, Colombia, Egypt, Indonesia, Italy, Malaysia, the Netherlands, Saudi Arabia, South Africa, Spain, Taiwan, Tunisia, the Republic of Turkey, Ukraine, and the United Arab Emirates: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 28605 (May 13, 2020) (PR 24). On or about June 18, 2020, Commerce selected Celik Halat for individual examination as one of the two largest exporters by volume of Prestressed Concrete Steel Wire Strand from Turkey. *See Commerce Respondent Selection Memorandum* (June 19, 2020) (CR 29/ PR 66).

On June 19, 2020, Commerce issued an AD questionnaire to Celik Halat. The AD questionnaire consisted of four sections, Section A, Section B, Section C and Section D, that required Celik Halat's response by certain deadlines. *See Commerce Initial Questionnaire to Celik Halat* (June 19, 2020) (PR 67). The due date for the Section A response was July 10, 2020. *Id.* at 5. (PR 67). The due date for the Sections B, C and D response was July 27, 2020. *Id.* Celik Halat's responses to the AD questionnaire (the "Response") were required to be filed electronically through Commerce's ACCESS electronics document system ("ACCESS") before 5:00 p.m. Eastern Time ("ET") on the due date specified for each section. *Id.* at 2. To prepare the various Responses, Celik Halat's staff devoted hundreds of work hours, including through a Turkish national holiday period, to ensure that the responses would be completed on time for filing.

On July 17, 2020, Celik Halat timely submitted its response to Section A of the AD questionnaire. *See Celik Halat Responses to Section A Questionnaire* (July 17, 2020) (CR 34-

36/PR 96-98). On July 22, 2020, Celik Halat requested an extension of time to submit its responses to Sections B, C, and D of Commerce's questionnaire on August 17, 2020, citing the Covid-19 lockdown, the closure of the company's offices, and an intervening religious holiday. *See Celik Halat's Request for Extension to file Sec. B-D Questionnaires* (July 22, 2020) (PR 103). On July 23, 2020, Commerce granted a partial extension for Sections B, C, and D responses to August 10, 2020.[3] *See Commerce Letter to Celik Halat: Granting Partial Extension to file Sec. B-D Responses* (July 23, 2020) (PR 106). On July 24, 2020, Commerce issued a supplemental Section A questionnaire to Celik Halat. *See Commerce's Supplemental Sec. A Questionnaire to Celik Halat* (July 24, 2020) (PR 107). On August 7, 2020, Celik Halat timely submitted a response to the supplemental Section A questionnaire. *See Celik Halat's Supplemental Sec. A Questionnaire Response* (August 7, 2020) (CR 38-48/PR 117-129).

During the afternoon of August 10, 2020, Celik Halat prepared to file its full response to Sections B and C of the AD questionnaire. At 4:10 p.m. ET, after confirming that all documents for Celik Halat's Sections B and C response to the AD questionnaire were ready for submission to Commerce, Celik Halat's representative (the "representative") initiated the process of filing the Section B and C responses through the Commerce's ACCESS website. *See Celik Halat's Request for Reconsideration of the Department's Rejection of the Sections B&C Antidumping Questionnaire Response of Celik Halat* ("Request for Reconsideration") (August 24, 2020) at 1 (PR139). At 4:12 p.m., Celik Halat's representative attempted to file the PDF version of the BPI

---

3  On August 5, 2020, Celik Halat filed a second request for a three-day extension of the Section D questionnaire response deadline of August 10, 2020 due to the near impossibility of completing the Section D response. (PR 115). On August 5, 2020, Commerce granted the extension for the Section D response to August 13, 2020. (PR 116).

Domestic Sales Table, an exhibit to its Section B response, but received an e-mail from ACCESS with an error message, rejecting that document on the ground that it contained "no searchable text" on several pages. *Id.* at 1 and Exh. 1 (PR 139). At this point, Celik Halat's representative considered but decided not to call the ACCESS help desk or the Commerce analyst for help. The representative had previously called the ACCESS help desk or the analyst, but was unable to reach anyone immediately, due to Covid-19 remote working arrangements. *Celik Halat Response to Pet. Req. for AFA* 6, n.4 (PR 147).

Putting the home market sales table aside, Celik Halat's representative moved on to submit the other Sections B and C files. *Id. at* 3-4 (PR 139). However, the submission process was unusually slow, due to error messages or long ACCESS processing times. At 4:17 p.m.ET, Celik Halat's representative received ACCESS' confirmation that all narrative files of Section B and C response and the other Section B pdf BPI exhibits were successfully submitted under the time stamp of 4:16 p.m.ET. *See id.* at Exh. 2 (PR 139). As Celik Halat's representative attempted to upload the BPI version of the Section C exhibits, an error message of "no searchable text," similar to the one issued for the Home Market Sales Table, appeared. *Id.* at Exh. 4 (PR 139). Celik Halat's representative immediately re-scanned and re-OCR'ed each document of the Section C response, to meet ACCESS' searchable text requirement, and proceeded without delay to re-file each document one by one. At 4:43 p.m.ET, Celik Halat's representative received ACCESS' confirmation that the entire BPI version of the Section C response had been successfully submitted under the time stamp of 4:42 p.m. *Id.* at Exh. 5 (PR 139).

At 4:57 p.m., Celik Halat's representative received ACCESS' confirmation that the public version of the Section B response had been successfully submitted under the time stamp of 4:56 p.m.ET. *Id.* at Exh. 3 (PR 139). At 5:00 p.m.ET, Celik Halat's representative received

ACCESS' confirmation that the public versions of Exhibits C-1, C-2, C-3 and C-4 of the Section C response had been successfully submitted under the time stamp of 4:59 p.m. ET. *Id.* at Exh. 6. (PR 139).

As of 5:00 p.m.ET, only four public Section C exhibits and the BPI Domestic Sales Table of Celik Halat's entire Sections B and C response had yet to be filed. *Id.* at Exh. 7 and 8 (PR 139). Celik Halat's representative was able to submit the remaining exhibits of the public Section C response, Exhibits C-8, C-9, C-10 and C-11, under the time stamp of 5:06 p.m. ET. *Id.* at Exh. 7 (PR 139). Celik Halat's representative repeatedly tried to file the pdf version of the BPI domestic sales table, but finally gave up after multiple attempts and filed the Excel version. *Id.* at 4-5. At 5:21 p.m.ET, Celik Halat's representative received ACCESS' confirmation that the exhibit to BPI version of the Section B response, the Excel version of the Domestic Sales Table, had been successfully submitted under the time stamp of 5:21 p.m. ET. *Id.* at Exh. 7 and 8 (PR 139).

On August 19, 2020, Celik Halat received a letter from Commerce stating that Celik Halat's entire response to Sections B and C of the AD questionnaire had been rejected. *See Letter from Commerce Pertaining to Celik Halat: Rejection of Sections B and C Questionnaire Response* (August 19, 2020) (PR 137). Citing the untimely filing of the home market sales data at 5:21 p.m. ET, Commerce stated that Celik Halat's Sections B and C responses were "untimely filed" and that it was unable to accept Celik Halat's response.[4] *Id.* By separate memorandum on the same date, Commerce directed that Celik Halat's entire Section B and C response, including

---

4  "Home Market Sales Data" refers to the "Domestic Sales Table."

all documents and supporting exhibits that had been timely filed, be removed from the docket. *See Commerce Letter: Rejection of Celik Halat Submissions* (August 19, 2020) (PR 136).

On August 24, 2020, Celik Halat submitted to Commerce a Request for Reconsideration of Commerce's Rejection of its Sections B and C Antidumping Questionnaire Responses. *Request for Reconsideration* (PR 139). Celik Halat explained that Commerce should accept its responses following the principles enunciated in Commerce's practice and its regulations under 19 C.F.R. § 351.302, which states that an untimely filed extension request may be considered if "the party demonstrates that an extraordinary circumstance exists." *Request for Reconsideration* at 6 (PR 139). Celik Halat further described the minutes-delay in filing part of its responses arising out of unexpected technical difficulties and detailed the extraordinary circumstances leading to the short delay. Celik Halat cited multiple cases where Commerce actively granted, or was ordered by this Court to grant, extension of deadlines in situations that involved similar clerical issues as the current case. Celik Halat asserted that the delay in filing the responses was so brief that it would not prejudice any party to the proceeding, whereas rejecting the responses would amount to a "death penalty" for Celik Halat due to the punitive rates imposed as a result. *Id.* at 13 (PR 139).

On August 27, 2020, Commerce denied Celik Halat's Request for Reconsideration and continued to reject Celik Halat's Response, citing the language in the cover letter of the AD questionnaire. *See Commerce Letter Denying Celik Halat's Request for Reconsideration* (August 27, 2020) (PR 140).

On September 2, 2020, Celik Halat requested a meeting with Commerce to discuss Celik Halat's request that Commerce reconsider its decision to reject Celik Halat's Questionnaire Responses. *See Celik Halat's Letter Requesting a Meeting with Commerce* (Sept. 2, 2020) (PR

142). On September 4, 2020, Commerce held a video conference call with Celik Halat's counsel and representative to discuss Celik Halat's request that Commerce reconsider its rejection of the Response. *See Commerce's Memorandum on Video Conference with Celik Halat* (Sep. 4, 2020) (PR 149).

On September 8, 2020, Celik Halat filed a response to petitioners' letter dated August 31, 2020, requesting that Commerce accept its Response in full and reject petitioners' demand for imposition of adverse facts available. *See Celik Halat's Response to Petitioners' Demand for Imposition of Total AFA and to the Department's Denial of Reconsideration of the Rejection of its Section B and C Responses* (Sep. 8, 2020) (PR 147).

On September 30, 2020, Commerce published a Federal Register notice of its preliminary determination that PC Strand from Turkey is being, or is likely to be, sold in the United States at less than fair value (the "Preliminary Determination"). *See Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the Netherlands, Saudi Arabia, the Republic of Turkey, and the United Arab Emirates: Preliminary Affirmative Determination of Sales Less Than Fair Value and Preliminary Affirmative Critical Circumstances Determinations, in Part*, 85 Fed. Reg. 61722 (September 30, 2020) (PR 154). Commerce preliminarily assigned an adverse facts available dumping margin of 53.65 percent to Celik Halat and that it would direct Customs and Border Protection (CBP) to suspend liquidation of all entries of PC strand from Turkey and to collect cash deposits of 53.65 percent on entries of PC Strand exported by Celik Halat. *See id.* at 61724. In the Preliminary Decision Memorandum, Commerce concluded that "{b}ecause Celik Halat failed to submit all portions of its response to sections B and C of the questionnaire by the established deadline, we find that Celik Halat failed to cooperate to the best of its ability to comply with Commerce's request for information within the meaning of

section 776(b)(1) of the Act." *See Decision Memorandum for the Preliminary Determination in the Less Than Fair Value Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey* (September 23, 2020) at 9 ("Preliminary Decision Memo") (PR 153).

In response to the *Preliminary Determination*, on October 30, 2020, Celik Halat submitted a case brief, in which it argued *inter alia*: (1) that Commerce should accept Celik Halat's entire sections B and C questionnaire response for filing because the home market sales file was the only substantive portion of the response that was filed late – just 21 minutes late – and that the late filing was due to repeated rejections by ACCESS; (2) the imposition of total adverse facts was unjustified and wholly disproportionate compared with the minor error in question and Celik Halat cooperated to the best of its ability; (3) Commerce should calculate the final margin based on Celik Halat's submitted responses; and (4) even if the untimely portions of the submissions are excluded; Commerce can use the timely filed portions to calculate a margin using non-adverse facts available. *See Case Brief of Celik Halat ve Tel Sanayi A.S.* at 2-15 ("Celik Halat Case Brief") (October 30, 2020) (PR 160).

On December 11, 2020, Commerce published in the Federal Register the Final Determination in the Antidumping Duty Investigation. *See Final Determination* (PR 171) and accompanying *Decision Memo* (PR 167). In the Final Determination, Commerce continued to apply adverse facts available to Celik Halat, assigning the same AFA margin of 53.65 percent. *Final Determination* at 80002 (PR 171). Commerce relied on the 53.65 percent dumping margin as the "only information regarding the PC strand industry in Turkey reasonably at Commerce's disposal on the record of this investigation." *Final Decision Memo* at 4 (PR 167).

On February 1, 2021, Commerce published in the *Federal Register* the antidumping duty order covering subject merchandise in the underlying antidumping duty investigation.

13

*Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the Netherlands,*
*Saudi Arabia, Taiwan, the Republic of Turkey, and the United Arab Emirates: Antidumping Duty*
*Orders*, 86 Fed. Reg. 7703 (Dep't Commerce Feb. 1, 2021) (PR 174). As part of the AD order,
Commerce has directed Customs to continue collecting cash deposits of 53.65 percent on PC
Strand entries by Celik Halat. (PR 176).

## VI.   <u>STANDARD OF REVIEW</u>

This Court evaluates whether Commerce's decisions are "unsupported by substantial
evidence on the record, or otherwise not in accordance with law." 19 U.S.C. §1516a(b)(1)(B).
Compliance with both statute and regulation is required for an agency action to be "in
accordance with law." *See, e.g.*, *Hontex Enters. v. United States*, 27 Ct. Int'l Trade 272, 293, 248
F. Supp. 2d 1323, 1340 (Ct. Int'l Trade 2003). Further, substantial evidence review requires that
the court assess whether the agency action is reasonable given the record as a whole. *Nippon*
*Steel Corp. v. United States*, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).

The Court will find that a decision is not arbitrary or capricious if, *inter alia*, it reflects a
"logically reasoned and well-researched approach." *Save Domestic Oil, Inc. v. United States*, 357
F.3d 1278, 1289 (Fed. Cir. 2004). Thus, "{c}ourts 'look for a reasoned analysis or explanation
for an agency's decision as a way to determine whether a particular decision is arbitrary,
capricious, or an abuse of discretion.'" *U.K. Carbon & Graphite Co. v. United States*, 931 F.
Supp. 2d 1322, 1328 (Ct. Int'l Trade 2013) (*quoting Wheatland Tube Co. v. United States*, 161
F.3d 1365, 1369 (Fed. Cir. 1998)). Further, "{a}n 'agency action is arbitrary when the agency
offers{s} insufficient reasons for treating similar situations differently.'" *Foshan Shunde*
*Yongjian Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313, 1325 (Ct. Int'l
Trade 2013) (*quoting Transactive Corp. v. United States*, 91 F.3d 232, 237, 319 U.S. App. D.C.

428 (D.C. Cir. 1996) (*citing Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mutual Auto. Ins. Co*.,

463 U.S. 29, 57, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983))).

By statute, each "determination by Commerce must include an explanation of the basis

for its determination." *See NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1320 (Fed. Cir.

2009) (quoting 19 U.S.C. 1677f(i)(3)(A)).  Thus, "{w}here the Department has reached

important conclusions that are not fully explained with reference to record evidence {and

relevant statutes or regulations}, remand is appropriate for Commerce to explain its rationale . . .

such that a court may follow and review its line of analysis, its reasonable assumptions, and other

relevant considerations." *Xiping Opeck Food Co., Ltd. v. United States*, 34 F. Supp. 3d 1331,

1343-1344 (Ct. Int'l Trade 2014).

Where the agency is vested with discretion to set the procedures by which it administers

its governing statute, the court reviews such decisions for abuse of discretion. *Jiangsu Jiasheng*

*Photovoltaic Tech. Co., Ltd. v. United States*, 28 F. Supp. 3d 1317, 1323 (Ct. Int'l Trade 2014)

(*See, e.g., Dongtai Peak Honey Indus. Co. v. United States*,971 F. Supp. 2d 1234, 1239 (Ct. Intl.

Trade 2014). "An abuse of discretion occurs where the decision is based on an erroneous

interpretation of the law, on factual findings that are not supported by substantial evidence, or

represent an unreasonable judgment in weighing relevant factors." *Id*. (quoting *WelCom Prods.,*

*Inc. v. United States,* 36 CIT 1366, 1340, 865 F. Supp. 2d 1340, 1344 (2012) (citing *Star Fruits*

*S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005))). In abuse of discretion review,

"an agency action is arbitrary when the agency offers insufficient reasons for treating similar

situations differently." *See SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

# VII.  <u>ARGUMENT</u>

## A.  **Commerce's Imposition of A Bright-Line Rule Rejecting Celik Halat's Entire Sections B And C Questionnaire Response Is A Severe Abuse Of Discretion**

Commerce's imposition of a bright-line rule to reject Celik Halat's entire Sections B and C questionnaire response based on the 21-minute late filing of a single Section B exhibit is a severe abuse of discretion under the law. The statute and prior court cases make clear that Commerce must weigh accuracy and fairness in its administration of proceedings against the interests of finality and agency burden. Based on this factual record, the interests of accuracy and fairness far outweighed any burden or the interests of finality in this case. However, in applying a bright-line rule to reject Celik Halat's entire Sections B and C questionnaire response, Commerce failed to consider its statutory obligations to weigh accuracy and fairness against any burden on the agency and interests of finality.

While the antidumping duty statute sets forth certain deadlines for the completion of certain actions, e.g., 19 U.S.C. § 1673d(a)(1), for issuance of a final antidumping duty determination, the statute does not set deadlines for specific submissions by respondents. Instead, Commerce has the authority to set deadlines in a proceeding, to meet the statutorily prescribed deadlines for completing an administrative investigation. As such, Commerce is tasked with setting deadlines for submissions of questionnaire responses. However, the Court has confirmed in prior decisions that Commerce's discretion is not unlimited, and that Commerce nonetheless must exercise its discretion in a reasonable and fair manner. *See Dupont Teijin Films v. United States*, 931 F. Supp. 2d 1297, 1304 (Ct. Int'l Trade 2013) ("Commerce's exercise of its discretion, however, must be reasonable in light of Commerce's statutory obligations), *citing Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177, 1182 (Fed. Cir. 1994). As this Court has

previously stated, "while Commerce clearly has the discretion to regulate administrative filings, that discretion is bounded at the outer limits by the obligation to carry out its statutory duty of 'determin{ing} dumping margins as accurately as possible.'" *Wuhu Fenglian Co., Ltd. v. United States*, 836 F. Supp. 2d 1398, 1403 (Ct. Int'l Trade 2012), *quoting NTN Bearing Corp. v. United States*, 74 F. 3d 1204, 1208 (Fed. Cir. 1995).

Commerce's rejection of Celik Halat's entire Section B and C questionnaire response was unreasonable and a severe abuse of discretion. Except for the BPI version of one domestic sales table, which was filed at 5:21 pm ET, the complete BPI versions of Celik Halat's Sections B and C response were filed timely by Commerce's deadline of August 10, 2020 at 5:00 pm ET.[5]   The late filed document were filed on the due date, within 21 minutes after the 5:00 p.m. ET deadline, and only due to minor formatting errors and Commerce's slow ACCESS processing times. Despite the minutes delay in filing a single substantive exhibit, i.e., the domestic sales table, Commerce rejected Celik Halat's entire Sections B and C questionnaire response, including all narratives, exhibits, and public and BPI versions. Instead of utilizing Celik Halat's submitted questionnaire responses to calculate a rate, Commerce deemed Celik Halat uncooperative and imposed a final AFA rate of 53.65 percent. Celik Halat's calculated rate based on its responses, including Sections B and C, would have been only 2 percent - a fraction of the AFA rate.[6]   Commerce's actions have improperly inflated Celik Halat's AD rate by 2,700

---

5  Except for four public exhibits, which were filed at 5:06 pm ET, the complete BPI and public versions of Celik Halat's Section C response was filed timely by Commerce's deadline of August 10, 2020 at 5 p.m. ET.

6  Celik Halat's actual calculated AD rate, based on its questionnaire responses, would have been less than two percent. *See Celik Halat Case Brief* at 8 (Oct. 30, 2020) (PR 160).

percent. The agency has engaged an outrageous abuse of discretion that directly violates the purpose and intent of the statute.

1. **Controlling Judicial Precedent Precludes Commerce from Applying a Bright-Line Rule under the Antidumping Duty Statute**

As confirmed by court precedent, the antidumping duty statute prohibits Commerce from taking an inflexible approach to all submissions for deadlines not dictated by the statute. Deadlines for the submission of Sections B and C questionnaire responses are not set forth in the statute. Commerce's regulations contain deadlines for certain submissions, such as the submission of new factual information under Section 351.301(b) of the Department's regulations. 19 C.F.R. § 351.301(b). However, Commerce routinely sets different deadlines for separate sections of the AD questionnaire, often beyond the initial 30 days.[7]

While Commerce has discretion both to set deadlines and to enforce those deadlines, Commerce is obligated to determine whether to waive those deadlines in appropriate circumstances.[8] *See, Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) (finding that while Commerce has some discretion to consider resources

---

7  Commerce issued the initial questionnaire to Celik Halat on June 18, 2020. (PR 67). Commerce's due date for Celik Halat's response to Section A was July 10, 2020 and July 27, 2020 for its responses to Sections B, C, and D. (PR 67).   However, Commerce subsequently granted extensions for Celik Halat's responses to each of the three sections. Specifically, Celik Halat's Sections B and C were due on August 10 (PR 106), and its Section D response was due on August 13 (PR 116).

8  A regulation which is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion. *See Tehnoimportexport v. United States*, 15 C.I.T. 250, 766 F. Supp. 1169, 1178 (Ct. Int'l Trade 1991) (analyzing price regulation which provided for correction of errors in a party's submission if received in time to permit proper analysis and verification). *NTN Bearing Corp. v. United States,* 74 F.3d 1204, 1207 (Fed. Cir. 1995); *see also Fischer S.A. v. United States*, 34 C.I.T. 334, 700 F. Supp. 2d 1364, 1375-77 (2010).

and limit an investigation, it abused discretion by precluding Shelter Forest's submission when acceptance of submission would yield a more accurate result). In such cases, Commerce is prohibited from imposing a rigid bright-line deadline for such submissions.

Commerce must evaluate the specific circumstances of an untimely filed submission before determining whether to reject that submission. Commerce's inquiry must be specific to the facts of the case and guided by certain general principles. In particular, Commerce must analyze "whether the interests of accuracy and fairness outweigh the burden placed on the Department and the interest in finality." *Grobest & I-Mei Industrial (Vietnam) Co., Ltd. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012). This Court has unequivocally rejected the position that deadlines not required by statute are inflexible. *Id.; see also U.S. Magnesium LLC v. United States*, 895 F. Supp. 2d 1319, 1325 (Ct. Int'l Trade 2013) ("In determining whether Commerce's rejection of an untimely submission amounts to an abuse of discretion, this Court considers whether the interests of accuracy and fairness outweigh the burden placed on {Commerce} and the interest in finality.") (internal quotes omitted); *Wuhu Fenglian Co., Ltd.,* 936 F. Supp. 2d at 1404-05; *Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254, 1267 (Ct. Int'l Trade 2012); *Dupont Teijin Films* 931 F. Supp. 2d at 1350. Rather, Commerce must evaluate the circumstances of the untimely submission on a case-by-case basis. The statute does not allow Commerce to impose an unbending and rigid rule in these instances. *NTN Bearing Corp.*, 74 F. 3d at 1207.

In *NTN Bearing Corp. v. United States*, the Federal Circuit rejected Commerce's inflexible approach in rejecting a respondent's attempt to submit clerical errors after the deadline. The Federal Circuit reiterated that it is Commerce's duty to calculate dumping margins "as accurately as possible and that the antidumping laws are remedial not punitive." *Id.* at 12008-

1209. The Federal Circuit concluded the correction of the clerical errors "would neither have required beginning anew nor have delayed making the final determination" and all that was required was a "straightforward mathematical adjustment." *Id.* The Federal Circuit held that Commerce's rigid application of its deadlines "resulted in the imposition of many millions of dollars in duties not justified under the statute." *Id.* at 1208 . The Federal Circuit noted that in some cases, there exists a tension between finality and correctness, but found that in this instance, there was no issue regarding finality because NTN had requested the correction well in advance of the final determination. *Id.* at 1208. The Federal Circuit subsequently held that the holding in *NTN Bearing* was not limited to the correction of clerical errors. *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1351-52 (Fed. Cir. 2006).

In *Pro-Team Coil Nail Enter. v. United* States, the Court rejected Commerce's inflexible approach in rejecting a revised Q&V Schedule because the respondent had submitted the information seven days after the deadline for its second supplemental questionnaire response. *Pro-Team Coil Nail Enter. v. United States*, 419 F. Supp. 3d 1319, 1330-31 (Ct. Int'l Trade 2019). The Court noted that "it is well-settled that a deadline-setting regulation that is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion." *Id* (citing *NTN Bearing*, 74 F.3d at 1207). The Court also found that Commerce erred in disregarding *NTN Bearing* and *Timken* based on the agency's conclusion that PT/Pro-Team had not made a clerical error. *Id.*

The Court of Appeals for the Federal Circuit has also opined on Commerce's interest in finality, explaining that "preliminary determinations are preliminary precisely because they are subject to change,' and that at the preliminary results stage, 'the tension between finality and correctness simply {does} not exist.'" *Wuhu Fenglian Co., Ltd.*, 836 F. Supp. 2d at 1404

20

(*quoting NTN Bearing Corp.*, 74 F. 3d at 1208). Therefore, Commerce faces an even higher burden when it rejects a submission made before the preliminary determination, as it did in this case.

This court has also held that AFA is far too harsh for a minor filing delay due to counsel error and when the AFA rate and the actual rate diverged widely. In *Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014), the Court found that Commerce abused its discretion in assigning an exporter of stainless steel sinks the 76.53 percent China-wide rate based on adverse facts available, because its response to Commerce's quantity and value request was filed the morning after the due date due to neglect of counsel. The exporter had timely filed its separate-rate application, which Commerce had also removed from the record. *Id.* at 1339. The Court concluded that the delay was inconsequential, as it only took place during non-business hours, i.e., Q&V information was only unavailable between 5:00 pm close of business on the due date, to the beginning of the next business day. *Id.* at 1345. The Court also found that, by contrast the consequences of the unexcused late filing was "particularly severe," subjecting the respondent to the PRC-wide rate, "more than twice as high as the rate assigned to cooperating, non-investigated exporters." *Id.* at 1347. Noting that the record demonstrated that the mistake was "committed innocently and inadvertently by plaintiffs' counsel," the Court concluded that "Commerce attached a consequence that was grossly disproportionate to the mistake that was made." *Id.*

This Court has also remanded cases back to Commerce in cases where the delay in submitting the response in question was far longer than here. In *Grobest & I-Mei Industrial (Vietnam) Co., Ltd. v. United States,* this Court weighed the interests of "accuracy and fairness" against the burden on Commerce where the exporter submitted its separate rate certification 95

days after the deadline. Commerce assigned the exporter the country-wide rate based on application of adverse facts available. 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade, 2012). The court criticized Commerce's decision and remanded the case, requiring Commerce to assign a separate rate to the exporter. *Id.* at 1365-66. The court concluded that the interest of fairness outweighed the burden placed on Commerce due to the following: (1) the Vietnam-wide rate of 25.76 percent assigned to the separate rate respondent, Amanda Foods, was "in stark contrast to the 4.27 percent rate assigned to the other separate-rate respondents;" (2) the burden of reviewing this particular type of submission is not great, (3) although untimely submitted, the submission was still made more than seven months before the preliminary determination, and (4) the exporter made every effort to correct the error as soon as it became aware of the omission. *Id.*

In *Bosun Tools Co. v. United States,* the Court found that Commerce abused its discretion by rejecting the respondent Chengdu's attempt to re-file the redacted version of its second supplemental questionnaire response two days after it previously attempted to file on time but which, for reasons unclear on this record, only uploaded in part. 405 F. Supp. 3d 1359, 1365 (Ct. Int'l Trade 2019). Although Chengdu attempted to file the redacted version of the submission on ACCESS, only the subparts containing the exhibits were uploaded; the subpart containing the cover letter and narrative portion of the submission did not upload to ACCESS. *Id.* The Court noted that before the relevant deadline expired Chengdu attempted to upload the redacted version of its submission but was only successful in uploading it in part and that it successfully uploaded the unredacted version in full. *Id.* After Chengdu was alerted to the missing subparts by Commerce staff two days later, Chengdu re-filed the missing subparts within an hour. *Id.* The Court found Commerce's removal of Chengdu's entire submission from the record to be an abuse of discretion because it would "likely undermine the accuracy of the dumping margins" in

the case and Commerce had not explained why it would be burdensome to "incorporate the late filed information." *Id.*

Prior court cases have conclusively established that Commerce may not apply a rigid and unbending approach when considering untimely filed submissions. Commerce must consider its overarching statutory obligation to calculate antidumping margins as accurately as possible against issues of finality and agency burden. Here, Commerce never addressed these factors.

### 2. Acceptance of Sections B and C Questionnaire Responses Would Have Imposed No Burden Whatsoever on Commerce's Conduct of the Investigation

Acceptance of Celik Halat's Sections B and C questionnaire response would have imposed no burden whatsoever on Commerce's conduct of the investigation. A single domestic sales table from Celik Halat's BPI version of its Section B questionnaire response was unavailable to Commerce only between 5:00 p.m. ET and 5:21 p.m. ET on the deadline date. This brief period could not have impacted or delayed the investigation in any way. Importantly, Commerce did not address in the *Final Determination* whether there was any burden in accepting the 21 minute late filing.

In prior cases, the court has found Commerce to have abused its discretion in cases involving far longer delays by the plaintiff in filing a submission (e.g., 16 hours in *Artisan*; 95 days in *Grobest*). In *Artisan*, the Court concluded that Commerce abused its discretion in assigning Kehuaxing the adverse facts available PRC-wide rate. The Court surmised that acceptance of Kehuaxing's one business day late filing would have been inconsequential to Commerce's conduct of the investigation. *Artisan,* 978 F. Supp. 2d at 1345.

Here, there was no evidence of any burden on Commerce to accept the late filing. The delay was far briefer than in *Artisan*.   The untimely submitted data was unavailable to

Commerce for a total of 21 minutes. Further, Commerce's investigation schedule was not disrupted in any way.

Commerce has a higher threshold to meet because Celik Halat's late filing was prior to the Preliminary Determination. There are no finality concerns because the late filing was over one month before the Preliminary Determination and no days were lost by Commerce. *See Pro-Team Coil Nail Enter. v. United States*, 419 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2019) (holding that finality concerns not implicated because plaintiff had submitted the Q&V Schedule before Commerce issued *Preliminary Results*). There was no burden on Commerce to accept Celik Halat's responses.

### 3. Acceptance of Sections B and C Questionnaire Responses Would Have Resulted in the Calculation of an Accurate AD Margin for Celik Halat

In addition to lack of burden and no finality issues, the interests of fairness and accuracy weighed heavily in favor of accepting Celik Halat's Sections B and C questionnaire responses. Commerce's rejection of Celik Halat's response is both unfair and resulted in a grossly inaccurate and punitive AD margin.

Based on Celik Halat's actual information, as set forth in its sections B and C questionnaire response, Celik Halat's calculated AD rate would have been less than 2 percent. *Celik Halat Case Brief* at 8 (Oct. 30, 2020) (PR160). That is compared with an AFA rate of 53.65 percent assigned to Celik Halat, a rate nearly 2700 percent higher. By refusing to accept Celik Halat's sections B and C questionnaire response, and imposing a punitive total adverse facts available rate, Commerce has imposed significant AD cash deposits on Celik Halat's entries that are not justified by the statute and have further distorted the PC Wire Strand market. As a result, Celik Halat is effectively locked out of the U.S. market for two years, until the first

administrative review is completed. *Id.*

**B. Commerce Failed to Provide Celik Halat The Opportunity to Remedy The Deficiency Under 19 U.S.C. 1677m(d)**

Commerce applied facts available with an adverse inference in assigning an antidumping duty rate to Plaintiff.   In doing so, Commerce adopted an interpretation of Section 782(d) that is contrary to the plain language of Section 782(d). Commerce's conclusion is not reasonable or consistent with the statute.

In particular, the Department's ability to apply adverse facts available is subject to 19 U.S.C. § 1677m(d) which requires that the Department first inform the respondent of any deficiency and provide that person an opportunity to remedy or explain the deficiency in light of the time limits established for completion of the investigation. 19 U.S.C. § 1677e(a) (2015), 1677m(d) (2015). *China Steel Corp. v. United States*, 264 F. Supp. 2d 1339, 1355 (Ct. Int'l Trade 2003) ("Before resorting to facts available, however, the Department is required to comply with the notice and remedial requirements of §1677m(d)."). Section 782(d) of the Act, codified as 19 U.S.C. §1677m(d), provides as follows:

> If…a response to a request for information…does not comply with the request, the administering authority…shall promptly inform the person submitting the response the nature of the deficiency and <u>shall, to the extent practicable</u>, provide that person with an opportunity to remedy or explain the deficiency…"

19 U.S.C. § 1677m(d)

The plain language of the statute makes clear that Commerce cannot automatically resort to adverse facts available because of an untimely filed submission. The use of facts otherwise available as a substitute for the untimely submitted information is expressly qualified by § 1677m(d). *See* 19 U.S.C. § 1677e(a) (stating that "… the administering authority . . .

25

shall, *subject to section 1677m(d) of this title,* use the facts otherwise available in reaching the applicable determination under this subtitle") (emphasis added). *China Kingdom Imp. & Exp. Co. v. United States*, 31 Ct. Int'l Trade 1329, 1344, 507 F. Supp. 2d 1337, 1352 (2007). Instead, Commerce must first provide a party with the opportunity to correct a deficiency. *Id.* ("shall…provide that person with the opportunity…"). This requirement is subject to the condition that doing so must be "practicable." This Court has explained that, before adverse facts can be applied, Commerce must "(1) find that the response to a request for information is deficient; (2) provide, when practicable, an opportunity to the party submitting the information to explain or correct the deficiency; and (3) determine whether such explanation or correction is either unsatisfactory or untimely." *Foshan Shunde Yongjian Housewares & Hardware Co., Ltd. v United States*, 35 C.I.T. 1398, 1402, (Ct. Int'l Trade 2011).

These requirements apply equally to a submission that is not timely filed as it does to a submission that does not contain complete information. In *Shelter Forest Int'l Acquisition, Inc. v. United States*, the Court concluded that Commerce abused its discretion by rejecting Shelter Forest's submission as untimely when it had not provided notice to Shelter Forest regarding deficiencies, as required by 19 U.S.C. § 1677m(d)). 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021). In *China Kingdom Import & Export Co., Ltd. v. United States*, this Court explained that "the use of facts otherwise available as a substitute for the untimely submitted information is expressly qualified by § 1677m(d)." 507 F. Supp. 2d 1337, 1352 (Ct. Int'l Trade 2007). After concluding that there was "no ambiguity or silence in § 1677m(d) that would justify resort to the second step in a *Chevron* analysis" under the circumstances, the court considered the specific facts of the case and whether it would have been practicable for Commerce to allow a remedy of the deficiency. *Id.* at 1354. The court explained that the information in question was submitted to

Commerce 53 days before the preliminary determination and "more than eight months" before the final results were due. The court explained that "no reason is apparent why affording {the respondent}, at the least, the opportunity to explain the deficiency would have been impracticable." *Id.* at 1355. The court concluded that Commerce committed legal error for failing to make a finding that it would not be practicable to allow the respondent to remedy the deficiency. *Id.* at 1358.

Commerce acted contrary to the plain language of Section 782(d) of the Act when it applied facts available with an adverse inference in assigning Plaintiff an antidumping duty margin without first providing Plaintiff with an opportunity to remedy the deficiency. On August 24, 2020, Celik Halat requested that Commerce reconsider its rejection of its Sections B and C responses. *See Request for Reconsideration* (PR 139). However, citing 19 C.F.R. § 351.302, Commerce denied Celik Halat's request and continued to reject Celik Halat's Sections B and C Responses. *See Letter dated August 27, 2020 from Elizabeth Eastwood, Program Manager, Office II, AD/CVD Operation, to Celik Halat* (PR 140). Court precedent, however, has established that Commerce may not rely on its regulations to discharge it of its obligations under Section 1677m(d). *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ("19 C.F.R. § 351.301 and § 351.302 cannot be read to discharge Commerce of its obligation to notify respondents of deficiencies in submissions under § 1677m(d)"). Here, Commerce could have discharged its obligation by accepting Plaintiff's submission of the Section B domestic sales table 21 minutes after the deadline. *See Request for Reconsideration,* Exhibit 8 (PR 139). Commerce erred in refusing to accept the untimely filing as a correction to the deficiency and in concluding that 19 U.S.C. § 1677m(d) did not apply in this instance.

27

### C.  Commerce's Stated Rationale Is Unreasonable

Commerce's proffered rationale in the *Final Determination* regarding its rejection of Celik Halat's responses and its imposition of AFA is unreasonable. Commerce erroneously relies on its regulations in rejecting Celik Halat's Sections B and C questionnaire responses. Commerce also fails to provide record evidence for its AFA conclusion or a reasoned explanation for why it deviated from its practice of accepting untimely filings due to minor errors on a retroactive basis. Commerce's rationale should be rejected in its entirety.

### 1.  Commerce's Adverse Facts Available Finding is Unsupported by Substantial Evidence.

In the *Final Determination*, Commerce adopted its AFA finding from the *Preliminary Determination*, concluding that "because Celik Halat failed to submit all portions of its response to sections B and C of the questionnaire by the established deadline, Celik Halat failed to cooperate to the best of its ability to comply with Commerce's request for information." *Decision Memo* at 4 (PR 167). Commerce determined "to use an adverse inference when selecting from among facts otherwise available to assign a margin to Celik Halat" and selected the 53.65 percent dumping margin as alleged in the Petition. *Id.* at 4. (PR 167). Commerce's explanation for its AFA finding consists of a description of Celik Halat's untimely filing and its conclusion that Celik Halat's timely filing of the majority of its response "was immaterial," and that Celik Halat should have known of the formatting requirements. *Id.* at 5. (PR 167). None of Commerce's explanations justifies its AFA conclusion. Commerce disregarded the entire statutory framework to arrive at a conclusory and factually unsupported finding of AFA against Celik Halat.

Assuming arguendo that Commerce satisfied the deficiency notice requirement,

Commerce is only authorized to apply adverse facts available, after it undertakes a two-step

analysis. First, Commerce must find that use of "facts available" is needed because "necessary

information is not available on the record," or "an interested party or any other person . . .

withholds information that has been requested by {Commerce} . . . {or} significantly impedes a

proceeding." 19 U.S.C. § 1677e. Second, Commerce must find "that an interested party has

failed to cooperate by not acting to the best of its ability to comply with a request for

information." *Id.* § 1677e(b)(1). Only at that point may Commerce use an adverse inference "in

selecting from among the facts otherwise available." *Id.* § 1677e(b)(1)(A). *Hyundai Steel Co. v.*

*United States*, No. 19-00099, 2021 Ct. Intl. Trade LEXIS 60, at *3 n.3 (Ct. Int'l Trade Apr. 27,

2021).

Commerce cannot rely on the untimely filing of a single exhibit to impose AFA.

"An adverse inference may not be drawn merely from a failure to respond."  *Hyundai Heavy*

*Indus. Co., Ltd. v. United States,* 393 F. Supp. 3d 1293, 1303-04 (Ct. Int'l Trade 2019).

Commerce may apply an adverse inference "under circumstances in which it is reasonable

for Commerce to expect that more forthcoming responses should have been made." *Nippon*

*Steel*, 337 F. 3d at 1383. Here, Commerce does not provide a reasoned explanation for its finding

of adverse facts available against Celik Halat. In particular, Commerce failed to explain how

Celik Halat failed to act to the best of its ability in responding to questionnaire responses based

only on the 21 minute late filing of a single BPI Section B exhibit. *Decision Memo* at 4-5 (PR

167).

This record is clear that Commerce's imposition of adverse facts available is contrary to

the statute and grossly disproportionate to the innocent and minor error at issue. Other than the

domestic sales table, Celik Halat timely filed all other responses. There is no record evidence of

non-cooperation or withholding of information by Celik Halat and Commerce has failed to

provide such evidence. In light of Commerce's silence and the overwhelming record evidence,

Commerce's finding of adverse facts available is unsupported by substantial evidence and should

be reversed.

**2. Commerce Acted Contrary to the Statute When it Removed Celik Halat's Timely Filed Sections B and C Responses from the Record**

Commerce's decision to remove Celik Halat's timely filed questionnaire responses from

the record was contrary to the statute and its own regulations. In the *Final Determination*, in

rejecting Celik Halat's entire Sections B and C responses, Commerce concluded that it was

"immaterial that portions of Celik Halat's questionnaire was filed prior to the deadline." *Final*

*Decision Memo* at 9 (PR 167). However, the statute and Commerce's own regulations do not

permit a wholesale removal of Celik Halat's timely filed Sections B and C questionnaire

responses.

In the *Final Determination*, Commerce concluded the following:

> Finally, we disagree with Celik Halat that Commerce should use
> Celik Halat's timely filed information to determine its margin in
> the final determination, instead of applying the AFA rate of 53.65
> percent provided in the Petition.   As discussed above, because
> Commerce rejected Celik Halat's response to sections B and C of
> the questionnaire as untimely filed and removed this response from
> the record, neither Celik Halat's home market nor U.S. sales data
> are available for Commerce to use.   Thus, even assuming,
> *arguendo*, that it was appropriate to base Celik Halat;s margin on
> its reported information, Commerce is unable to do so without
> the home market and U.S. sales data.

*Decision Memo* at 8 (PR 167).

Contrary to its position in the *Final Determination,* the statute does not permit the

removal of timely filed questionnaire responses. Pursuant to 19 U.S.C. §

1677m(e), Commerce "shall not decline to consider" information that is necessary to the determination but does not meet all the applicable requirements if the information is submitted timely, can be verified, is complete enough and can be used without undue difficulties, and the respondent acted to the best of its ability. Here, Commerce failed to determine whether the timely filed portions of Celik Halat's Sections B and C questionnaire response could be used to calculate a margin. *See Prime Time Commerce LLC v. United States*, 396 F. Supp. 3d 1319, 1329 (Ct. Int'l Trade 2019) (remanding determination because Commerce did not consider whether the rejected submission satisfied the requirements of 19 U.S.C. § 1677m(e) for purposes of calculating importer-specific assessment rate). Commerce's removal of Celik Halat's timely filed questionnaire responses was contrary to the statute and should be reversed.

### 3. Commerce Incorrectly Relies on its Regulations in Rejecting and Removing from the Record Celik Halat's Sections B and C Questionnaire Responses

Commerce's regulations also do not justify the rejection and removal of Celik Halat's timely filed portions of its Sections B and C responses. In the *Final Determination*, Commerce cited Section 351.303(b) of its regulations and similar language in its cover letter to the antidumping duty questionnaire as rationale for rejecting the timely filed questionnaire response. *Decision Memo* at 5 (PR 167). Commerce cites the language in 19 C.F.R. § 351.303(b) as follows: "{Commerce} will consider a document to be officially received by {Commerce} only when it is filed electronically in its entirety using ACCESS…, in accordance with 19 CFR 351.303(b)(2)(i), or, where applicable, filed manually in the APO/Dockets Unit in accordance with 19 CFR 351.303(b)(2)(ii)." *Id.* (PR 167). To emphasize the language of Section 351.303(b), Commerce cites the following language in the AD questionnaire cover letter: "{a}n electronically filed document must be received successfully **in its entirety** by Commerce's

31

electronic records system, ACCESS, by 5:00 p.m. Eastern Time (ET) on the date indicated on the cover page of the enclosed questionnaire." *Id.* (PR 167).

Commerce's reliance on the foregoing language in the regulation and cover letter to justify its wholesale rejection of Celik Halat's questionnaire response is flawed. The regulation and cover letter refer to "document," not "questionnaire response." There is nothing in Section 351.303(b) to indicate that document means "questionnaire response." In fact, the reference to document in Section 351.303 is generic one and can be construed to refer to documents such as a letter, a brief, or separate portions of a questionnaire response that a filer is submitting on a given day through the ACCESS filing portal.[9]  Commerce has impermissibly inflated the requirement that a document must be received in its entirety by ACCESS by 5:00 pm to cover the entire questionnaire response.

Commerce's own regulation does not support its position. Section 351.303(b)(2)(i) of Commerce's regulations provides as follows:

(2)   ***Filing of documents and databases –***

(i) Electronic filing. A person must file all documents and databases electronically using ACCESS at https://access.trade.gov. A person making a filing must comply with the procedures set forth in the ACCESS Handbook on Electronic Filing Procedures, which is available on the ACCESS Website at https://access.trade.gov.

Commerce's regulation refers to the electronic filing of "all documents and databases."

Questionnaire responses often include both a narrative portion and databases, which indicates

---

9  ACCESS Handbook on Electronic Filing Procedures, Sec. 2, Introduction and Sec. 3-C Document Security Classification, available at https://access.trade.gov/help/Handbook_on_Electronic_Filing_Procedures.pdf (last visited May 24, 2021) ("ACCESS Handbook")

that a "document" is not a reference to the entire questionnaire response. Furthermore,

Commerce's Electronic Filing Procedures Handbook describes the filing of a document as

follows:

### O. Document Receipt

Upon completion of the electronic transmission of a document
using ACCESS, users will be provided with an on-screen
electronic confirmation page. A courtesy email notice of electronic
Receipt will also be sent to the email address of the registered user.
Therefore, if a legal assistant submits the document using the
ACCESS account of the representing attorney, the electronic
Receipt will be emailed to the attorney's registered email account.
If the on-screen electronic confirmation page does not appear or
The submitter does not receive an electronic email notification of
successful submission, then the submitter must assume that the
transmission was not successful and the documents were not
properly submitted….

*ACCESS Handbook* at 15.

Commerce's Handbook refers to the electronic submission of a "document" and an

"electronic receipt" emailed to the registered user after successful submission of the "document."

It is undisputed that multi-part submissions like Celik Halat's sections B and C questionnaire

response involve the filing of multiple documents and database exhibits, each set of which

generates its own ACCESS electronic receipt. *Request for Reconsideration*, Exhibits 1-8 (PR

139). Under Commerce's regulations, all documents that receive the ACCESS receipt are

deemed to have been officially received by Commerce if they are filed via ACCESS and deemed

received by 5:00 pm. ET.[10]

---

10  The objective of this regulation is to address those documents that are submitted by the filer
close to the deadline of 5:00 p.m. ET, but are not actually deemed received by ACCESS until
after 5:00 p.m. ET. According to this regulation, a document filed at 4:59 p.m. ET, but not
deemed received by ACCESS unless it is "filed electronically in its entirety" by 5:00 p.m.

Commerce's reliance on 19 C.F.R. § 351.301(b) is also inconsistent with the instructions

in its cover letter to the AD questionnaire. In its August 27, 2020, memorandum denying Celik

Halat's Request for Reconsideration, Commerce concluded that Celik Halat did not "respond

completely to sections B and C of Commerce's questionnaire by the established deadline, nor did

it contact Commerce prior to the established deadline to request an extension of the deadline to

submit its response to Sections B and C of the questionnaire." *Commerce Letter Denying Celik

Halat's Request for Reconsideration* at 1 (August 27, 2020) (PR 140). However, the language

that Commerce cited in the August 27, 2020 memorandum differs from its position in the August

27, 2020 memorandum that the entire questionnaire response had to be filed by 5:00 pm ET.

> If you are unable to respond completely to every question in the
> attached questionnaire by the established deadline, or are unable to
> provide all requested supporting documentation by the same date,
> you must notify the official in charge and submit a request for an
> extension of the deadline for all or part of the questionnaire
> response…If Commerce does not receive either the requested
> information or a written extension request before 5 p.m. ET on the
> established deadline, we may conclude that your company has
> decided not to cooperate in this proceeding. Commerce will not
> accept any requested information submitted after the deadline. As
> required by section 351.302(d) of our regulations, we will reject
> such submissions as untimely.

*Id.* (PR 140).

Commerce's own cover letter states that it "will not accept any requested information

submitted after the deadline." The cover letter does not state that Commerce will not accept the

questionnaire response if not filed in its entirety after 5:00 p.m. ET. Commerce's cover letter also

does not state that if Commerce does not receive all of the requested information by 5:00 p.m.,

---

This is a different issue than questionnaire responses that have multiple documents and databases
that have to be submitted in different tranches through ACCESS.

that it would deem Celik Halat uncooperative and resort to adverse facts available. *See Commerce Initial Questionnaire to Celik Halat* (June 19, 2020) (PR 67) at 3, G-5 to G-9. In light of Commerce's own language in its cover letter, Commerce's attempt to characterize its regulation, 19 CFR §351.301, as requiring the entire response to be filed by 5:00 p.m. ET is flawed and not credible. The cover letter does not clarify that failure to file the entire questionnaire response by 5:00 p.m. ET would result in, or likely to result in, the rejection of the entire questionnaire response and application of AFA.

Similarly, Section 302(d) of Commerce's regulations provides that

> **(d)** ***Rejection of untimely filed or unsolicited material.***
> **(1)** Unless the Secretary extends a time limit under paragraph (b) of this section, the Secretary will not consider or retain in the official record of the proceeding:
>> **(i)** Untimely filed factual information, written argument, or other material that the Secretary rejects, except as provided under § 351.104(a)(2); or
>> **(ii)** Unsolicited questionnaire responses, except as provided under § 351.204(d)(2).
>
> **(2)** The Secretary will reject such information, argument, or other material, or unsolicited questionnaire response with, to the extent practicable, written notice stating the reasons for rejection.

19 CFR 351.302(d).

Commerce's own regulation does not authorize it to reject the timely filed portions of Celik Halat's questionnaire response. Under 19 § C.F.R. 351.302(d), Commerce's rejection of materials covers untimely filed material and unsolicited questionnaire responses. There is no reference in the regulation to questionnaire responses not filed in its entirety by the 5:00 p.m. deadline.

In the *Final Determination*, Commerce concluded that it "properly rejected sections B

and C of Celik Halat's questionnaire response in its entirety as untimely." *Final Decision Memo* at 5-6 (PR 167). According to Commerce, it was "immaterial that portions of Celik Halat's questionnaire response were filed prior to the deadline" because "Celik Halat did not file its response to sections B and C of the questionnaire in its entirety by the established deadline of 5:00 p.m. ET on August 10, 2020." *Decision Memo* at 5 (PR 167). Commerce's regulations, its questionnaire cover letter, and its Handbook on Electronic Filing Procedures all contradict its conclusion that "document" means "entire questionnaire response" and the Court should reject this rationale.

### 4. Commerce's Other Proffered Rationale Do not Justify its Rejection of Celik Halat's Questionnaire Response or a Resort to AFA

In the *Final Determination*, Commerce offers a recitation of other reasons why it rejected Celik Halat's entire questionnaire response and refused to grant an extension for the untimely filed portions. However, none of Commerce's reasons have any merit.

Commerce faults Celik Halat for failing to request an extension of time before the 5:00 p.m. ET deadline. Commerce cites the cover letter to the questionnaire:

> "{i}f you are unable to respond completely to every question in the attached questionnaire by the established deadline, or are unable to provide all requested supporting documentation by the same data…you must notify the official in charge and submit a request for an extension of the deadline for all or part of the questionnaire response…"

*Decision Memo* at 6.

However, the record evidence demonstrates that Celik Halat did respond completely to every question in the questionnaire and had all of the supporting documentation on hand and ready to file. Due to technical difficulties, Celik Halat was unable to file every section of the questionnaire response by 5:00 p.m. ET. Celik Halat had previously filed an extension request

for Sections B and C, but it was denied by Commerce. *See Commerce Denies Celik Halat's Sections B-D Questionnaire Extension Request* (August 4, 2020) (PR 114).

In the *Final Determination*, Commerce concluded that "{a}fter Celik Halat realized its filing difficulties, it had sufficient time to notify Commerce (*i.e.,* either the official in charge or the ACCESS Help Desk) and request an extension of the deadline to resolve the problem prior to the expiry of the deadline. *Final Decision Memo* at 6. However, in its Request for Reconsideration, Celik Halat's representative stated that he considered but decided not to call Commerce because of the short time remaining until the 5:00 pm deadline and the prior difficulties in contacting Commerce by telephone.[11]  Celik Halat's representative already explained that he decided to press on to fix the technical errors and make the push to file everything by 5:00 p.m. ET. Celik Halat made multiple attempts to file all parts of the Sections B and C questionnaire response by 5:00 p.m. ET on the due date. *See Request for Reconsideration* at p.11-12 and Exh. 1-3 (PR 139). Celik Halat's representative noted that ACCESS was running particularly slowly at that time and continued to reject its documents. At the time that Celik Halat began filing the questionnaire response, the representative believed that all prepared documents were in conformity with Commerce's formatting requirements. *Id.* at p. 3 (PR 139). Because Celik Halat's submission was complete and ready to be filed before the deadline, and the great majority of the filing was completed by the 5:00 p.m. ET deadline, no extension request was needed. *See Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359, 1367 (Ct. Int'l Trade

---

11  It is the undersigned counsel's understanding that Commerce personnel have all been working from home since March 2020, at the start of the Covid-19 pandemic shut-down. Phone calls are forwarded to Commerce's staff's personal or mobile phones, which may or may not be answered immediately. If the caller needs to reach the ACCESS help desk, they leave a message and someone from the ACCESS help desk calls back later in the day or the following day.

2019) (rejecting Commerce's argument that retroactive extension request was required because unredacted version was timely filed and untimely re-filed redacted version related back to original submission).

Commerce cites 19 CFR 351.302(c) as consistent with the language in its cover letter. *Decision Memo* at 6 (PR 167). However, as the *Artisan* court found, this regulation applies to "any time limit established by this part." *i.e.,* Part 351 of the Code of Federal Regulations. *See* 19 C.F.R. §351.302(c). The time deadline at issue here for Sections B and C responses is not explicitly set by regulation under Part 351. *See Artisan*, 978 F. Supp. 2d at 1349. As the *Artisan* court also noted, this regulation does not justify Commerce's rejection of the timely filed portions of Celik Halat's sections B and C questionnaire response *Artisan*, 978 F. Supp. 2d at 1349.

Commerce incorrectly faults Celik Halat for not filing a retroactive extension of the questionnaire response deadline. *Decision Memo* at 6 (PR 167). After Commerce rejected Celik Halat's entire questionnaire response, Celik Halat promptly filed a Request for Reconsideration of Commerce's Rejection of the Sections B and C Questionnaire Response, which set forth the entire set of circumstances and requested that Commerce accept for filing Celik Halat's Sections B and C questionnaire response. *See Request for Reconsideration* (PR 139). Commerce's regulation does not set forth the timing or form of the retroactive request for extension. Nonetheless, this does not justify Commerce's rejection of or refusal to accept for filing Celik Halat's questionnaire response for this minor compliance error.

### 5. Commerce Failed to Sufficiently Explain its Deviation from Its Practice of Granting Retroactive Extensions for Minor Clerical Errors and Routine Mistakes

In the *Final Determination*, Commerce rejected Celik Halat's references to other

proceedings where Commerce had previously granted out-of-time extensions for minor clerical errors, concluding that they are "immaterial here." *Decision Memo* at 7 (PR 167). Commerce's deviation from its usual practice of granting extensions for minor delays was unreasonable. Commerce also failed to explain why it has treated Celik Halat's case differently from other cases involving similar circumstances.

19 C.F.R. § 351.302 provides in pertinent part,

> **(b) Extension of time limits.**   Unless expressly precluded by statute, the Secretary may, for good cause, extend any time limit established by this part.
> **(c) Requests for extension of specific time limit.** Before the applicable time limit established under this part expires, a party may request an extension pursuant to paragraph (b) of this section. An untimely filed extension request will not be considered unless the party demonstrates that an extraordinary circumstance exists. The request must be in writing, in a separate, stand-alone submission, filed consistent with § 351.303, and state the reasons for the request. An extension granted to a party must be approved in writing.
> **(1)** An extension request will be considered untimely if it is received after the applicable time limit expires or as otherwise specified by the Secretary.
> **(2)** An extraordinary circumstance is an unexpected event that:
> **(i)** Could not have been prevented if reasonable measures had been taken, and
> **(ii)** Precludes a party or its representative from timely filing an extension request through all reasonable means.

19 C.F.R. § 351.302.

   In the *Final Determination*, citing its Final Rule on *Extension of Time Limits*,[12] Commerce contends that "insufficient resources, inattentiveness, or the inability of a party's representative to access the Internet on the day on which the submission was due" are "unlikely

---

12  *Extension of Time Limits*, 78 Fed. Reg. 57790 (Sept. 20, 2013).

examples of an extraordinary circumstance." *Decision Memo* at 7. According to Commerce, extraordinary circumstances examples include "a natural disaster, riot, ware (sic), *force majeure,* or medical emergency." *Id.* Commerce claimed that "Celik Halat was capable of preparing a document to contain searchable text as it had timely filed other submissions in accordance with the ACCESS filing requirements…" *Id.* Commerce rejected Celik Halat's citations of previous cases where it had granted out-of-time extensions, calling them "immaterial here." *Id.*

Since Commerce's Final Rule on *Extension of Time Limits* was issued in 2013, it has been Department's practice, however, to allow respondents to file submissions out of time, without a timely extension request, for reasons including routine mistakes and clerical errors by counsel.

- Counsel's printer jam[13]

- Counsel's inadvertent missing of deadline due to limited staff during holidays;[14]

- Counsel's inadvertent omission in requesting extensions for Sections B and C, but not Section D.[15]

---

[13]  Nucor Corporation Extension Request dated August 25, 2017(ACCESS Barcode: 3611722-01) in *Carbon and Certain Alloy Steel Wire Rod from Mexico* (A-201-830) and DOC Letter dated August 25, 2017 to Wiley Rein, LLP, counsel for Nucor Corporation granting Nucor's Extension Request. (ACCESS Barcode: 3611780-01).

[14]  Hyundai Steel Company Extension Request dated January 5, 2016 in *Certain Cold-Rolled Steel Flat Products from Korea: Extension Request for Supplemental Section D Questionnaire Response* (A-580-881) (ACCESS Barcode: 3429991-01) and DOC Memorandum to the File Dated January 11, 2016 re: DOC meeting granting Hyundai's extension request. (ACCESS Barcode: 3431804-01).

[15]  Roung Shu Extension Request dated February 18, 2015 in *Narrow Woven Ribbons with Woven Selvedge from Taiwan* (A-583-844) (ACCESS Code: 3260204-01) and DOC Letter dated February 27, 2015 to Akin Gump Strauss Hauer & Feld LLP granting Extension Request.

- Counsel's failure to correctly note the filing deadline.[16]

- Counsel's concern about EU privacy laws[17]

- Counsel's medical conditions[18]

Commerce's actions in applying an inconsistent standard to Celik Halat are arbitrary and capricious. *See, e.g., Green Country Mobilephone, Inc. v. FCC*, 765 F.2d 235, 237, 246 U.S. App. D.C. 366 (D.C. Cir. 1985) ("We reverse the {agency} not because the strict rule it applied is inherently invalid, but rather because the {agency} has invoked the rule inconsistently. We find the {agency} has not treated similar cases similarly."); *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 587 F. Supp. 2d 1303, 1307 (2008) ("Agencies have a responsibility to administer their statutorily accorded powers fairly and rationally, which includes not treating similar situations in dissimilar ways." (quotation and alteration marks and citation omitted)). "{A}n 'agency action is arbitrary when the agency offers{s} insufficient reasons for treating

---

(ACCESS Barcode: 3261940-01).

16  British Steel Post-Deadline Extension Request dated July 7, 2017, *Carbon and Certain Alloy Steel Wire Rod from the United Kingdom* (A-412-826) (ACCESS Barcode: 3590026-01) and DOC Letter dated July 10, 2017 to Steptoe & Johnson LLP granting British Steel's Extension Request. (ACCESS Barcode: 3591490-01).

17  Forgital Italy SpA February 22, 2019 request for 1 day out of time extension to file Section A response (ACCESS Barcode: 3796694-01) in *Finished Carbon Steel Flanges from Italy* (A-475-835) arising from prior counsel's failure to file due to concerns re: EU privacy laws and DOC Letter dated March 5, 2019 granting Forgital's extension request. (ACCESS Barcode: 3800014-01).

18  Sapa Profiles (Shanghai) Co. Extension Requests dated September 8, 2014 (ACCESS Barcode: 3227011-01) and September 17, 2014 (ACCESS Barcode: 3228665-01), in *Aluminum Extrusions from the People's Republic of China* (C-570-968), and DOC Letter dated September 22, 2014 (ACCESS Barcode: 3230428-01) to Sidley Austin LLP, counsel for Sapa, granting Sapa's 4-day extension request because of "medical issues" involving the company's counsel.

similar situations differently.'" *Foshan Shunde Yongjian Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313, 1325 (Ct. Int'l Trade 2013) (*citations omitted*). Commerce's actions should be reversed because it failed to accorded similar treatment to Celik Halat as in other post-*Extension of Time Limits* cases, where retroactive extensions were granted for clerical errors involving even lengthier delays.

### 6. Commerce's Inconsistent Application of Extension of Time Limits Final Rule Includes Petitioners' Extension Requests

In contrast to the overly-rigid and unjustified standard that Commerce applied to respondent Celik Halat, Commerce failed to apply the same standard to petitioners when they encountered ACCESS issues when filing a document in the parallel CVD investigation. This inconsistent treatment confirms the arbitrary and capricious nature of Commerce's actions against Celik Halat.

For example, in the parallel countervailing duty investigation of *PC Wire Strand from Turkey*, Petitioners had attempted to file their new subsidy allegations due on August 5, 2020.[19] However, Petitioners' counsel received an email at 4:55 pm. ET from ACCESS rejecting the BPI and public versions of their August 5, 2020 new subsidy allegations due to a "typographical error in the header of the document."[20] Despite receiving the ACCESS rejection email prior to 5:00 p.m. ET, Petitioners waited until the following day, August 6, 2020, to call Commerce regarding

---

19  *See DOC Memorandum Re: Phone Call with Counsel for the Petitioner* (August 6, 2020) (ACCESS Barcode 4013270-01) *Countervailing Duty Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey* (C-489-843).

20  *Id.*

the ACCESS rejection.[21]  Petitioners did not file a written extension request or explain in writing

the specific circumstances of ACCESS's rejection of their filing. Commerce then granted

Petitioners a retroactive extension to Friday, August 7, 2020 at 10:00 a.m. ET to refile the final

business proprietary and public versions of their new subsidy allegations.[22]  In granting the

retroactive deadline extension, Commerce did not require Petitioners to demonstrate

"extraordinary circumstances."

Similarly, in the recent antidumping duty investigation of *Metal Lockers and Parts*

*Thereof from the People's Republic of China*, Petitioners filed an untimely extension request

regarding their submission of Surrogate Country and Surrogate Value Comments. Petitioners

filed their Extension Request at 4:56 p.m., ET on the due date, which was in violation of

Commerce's Final Rule on the *Extension of Time Limits*, which states that an extension request

for submissions that are due from multiple parties "will be considered untimely if it is not filed

by 10:00 a.m. on the due date." 78 Fed. Reg. 57790, 57992 (Sept. 20, 2013). This Rule applies to

submissions due by a certain deadline by multiple parties, including "factual information to value

factors under section 351.408(c)." 78 Fed. Reg. at 57792. This rule was designed to avoid the

situation that occurs "if one party requests a last-minute extension of the time limit," with the

result that "it may obtain an advantage by reviewing other parties' submissions before the party

files its own submission." *Id.* By a memorandum dated November 2, 2020 in the *Metal Lockers*

investigation, Commerce set the deadline for "all interested parties" to submit "surrogate country

---

21  *Id.*

22  *Id.*

and surrogate values comments "by no later than 5:00 p.m. ET on November 16, 2020.[23]

Despite this clear deadline, and Commerce's Final Rule, Petitioners filed their Extension Request

for submission of their Comments on Surrogate Country and Surrogate Values untimely at 4:56

p.m. ET on November 16, 2020. Petitioners requested one additional business day for an

extension, citing "technical difficulties in uploading the large electronic attachment to

Petitioners' Comments" and that "the electronic file will not upload through the Department's

system."[24]  The following day, respondents filed a letter requesting that Commerce reject

Petitioners' untimely extension request because it was filed after 10:00 a.m. ET.[25]   However,

Commerce granted Petitioners' out-of-time extension request, despite the lack of any claim by

Petitioners of "extraordinary circumstances."[26]  Instead of addressing respondent's arguments

regarding Petitioners' untimely extension request, Commerce granted Petitioners' request "based

on the circumstances discussed in its letter." *Id.* Commerce's actions are arbitrary and capricious

---

23  DOC Memorandum dated November 2, 2020 re: Extension of Deadline to File Comments on
Surrogate Countries and Surrogate Values and Treatment of Production Component Names.
*Antidumping Duty Investigation for Certain Metal Lockers and Parts Thereof from China* (A-
570-133) (ACCESS Barcode: 4047619-01).
24  Letter dated November 16, 2020 from Kelley Drye & Warren to the Honorable Wilbur L.
Ross, Jr., Secretary of Commerce (ACCESS Barcode 4053947-01) *Antidumping Duty
Investigation of Certain Metal Lockers and Parts Thereof from the People's Republic of China*
(A-570-133).

25  Letter dated November 17, 2020 from Fox Rothschild LLP to the Honorable Wilbur L. Ross,
Jr., Secretary of Commerce (ACCESS Barcode 4054197-01) *Antidumping Duty Investigation of
Certain Metal Lockers and Parts Thereof from the People's Republic of China* (A-570-133).

26  DOC Memo to the File re: Extension of Deadline to File Comments on Surrogate Countries
and Surrogate Values and Treatment of Production Component Names (ACCESS Barcode:
4054032-01) *Antidumping Duty Investigation of Certain Metal Lockers and Parts Thereof from
the People's Republic of China* (A-570-133).

because it has held Celik Halat to a different standard with regard to ACCESS formatting requirements than Petitioners in *Metal Lockers.* In their untimely extension request, Petitioners provided no details about their attempts to file through ACCESS. Commerce's inconsistent treatment of Petitioners in the *Metal Lockers* case compared with Celik Halat in this case is an improper double standard.

### 7. Commerce's Attempt to Distinguish Past Judicial Decisions is Unavailing

In the *Final Determination*, Commerce claimed that the "facts in *Artisan* stand in contrast to those present here, where Commerce: 1) established clear, unambiguous deadlines for submitted the requested information; and 2) notified interested parties of the consequences for untimely filings." *Decision Memo* at 8. According to Commerce, *Artisan* was distinguishable because the Court, in finding that Commerce had abused its discretion, "noted that Commerce was ambiguous in stating its policy on time extensions for the information at issue and that its determination was based on 'the particular circumstances of this investigation.'" *Id.* (emphasis added).

In insisting that Artisan does not apply, Commerce dodges the relevant portions of the Court's holding in *Artisan*. The Court in *Artisan* concluded that the delay in Commerce receiving the respondent Kehuaxing's Q&V response "would have been inconsequential" due to the fact that the delay was 16 hours and during non-business hours. *Artisan,* 978 F. Supp. 2d at 1345. Here, the delay was far shorter, at only 21 minutes. The *Artisan* court emphasized that the "consequence Commerce attached to an unexcused late filing was particularly severe; the subjecting of Kehauxing to the PRC-wide rate, which is based on an adverse inference." The *Artisan* Court concluded that the "record evidence reveals that the mistake was a relatively minor one that resulted in a delay in the availability of the Q&V information that lasted only from the

end of one business day to approximately the beginning of the next one" and that "the mistake was committed innocently and inadvertently by plaintiffs' counsel." *Id*. Here, the mistake was also relatively minor, with a delay of only 21 minutes (compared to the 16-hour delay in *Artisan*). Moreover, the mistake was committed innocently by Celik Halat's representative, as he was already in the process of filing the Sections B and C questionnaire response nearly one hour before the 5 pm deadline and had filed the great majority of the questionnaire response by 5:00 p.m. ET on the due date.

## VIII.   CONCLUSION

For the foregoing reasons, Celik Halat respectfully requests this Court to grant Plaintiff's Motion for Judgment, set aside the *Final Determination* with respect to Celik Halat, and remand the *Final Determination* back to Commerce for a new decision that is supported by substantial evidence and in accordance with law. Specifically, this Court should direct Commerce to reopen the AD investigation with regard to Celik Halat, accept for filing and place on the record Plaintiff Celik Halat's Sections B and C questionnaire responses, and calculate a new AD rate for Celik Halat.

Respectfully submitted,

/s/Irene H. Chen
Irene H. Chen
CHEN LAW GROUP, LLC.
200-A Monroe St., Ste. 100
Rockville, MD 20850
Tel (301) 760-7393

Date: May 28, 2021                    *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains **13,876** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities, the signature block, and the present certificate).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

Dated: May 28, 2021                              /s/ Irene H. Chen
                                                 Irene H. Chen

                                                 *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*