## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

|  |  |
|---|---|
| CELIK HALAT VE TEL SANAYI A.S., | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, AND WIRE MESH CORP., | ) |
| Defendant-Intervenors. | ) |

Court No. 21-00045

PUBLIC DOCUMENT

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:
JESUS N. SAENZ
Counsel
Office of the Chief Counsel
    for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

MILES K. KARSON
Trial Attorney
U.S. Dept. of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0309
E-mail: miles.karson@usdoj.gov

July 27, 2021

Attorneys for Defendant

# **TABLE OF CONTENTS**

STATEMENT PURSUANT TO RULE 56.2 ...................................................................1

    I.     The Administrative Determination Under Review .......................................1

    II.    Issues Presented For Review ........................................................................2

STATEMENT OF FACTS ...........................................................................................2

ARGUMENT ...............................................................................................................6

    I.     Standard Of Review .....................................................................................6

    II.    Commerce Did Not Abuse Its Discretion By Rejecting Celik Halat's Untimely Questionnaire Responses ............................................................................8

          A.    Judicial Precedent Supports Commerce's Decision In This Case ..................10

          B.    Substantial Evidence Supports Commerce's Conclusion That No "Extraordinary Circumstances" Existed .......................................................15

    III.   Commerce's Decision To Apply Facts Available with an Adverse Inference To Celik Halat Was Supported By Substantial Evidence And In Accordance With Law ..........19

          A.    Celik Halat's Failure To Cooperate To The Best Of Its Ability Supports Commerce's Decision To Apply Facts Available With An Adverse Inference ........................................................................................20

          B.    Plaintiff's Reliance On 19 U.S.C. § 1677m(d) – Requiring Commerce To Provide Respondents An Opportunity To Remedy Or Explain Deficiencies – Is Misplaced And Unsupported By The Facts ................................................24

CONCLUSION ..........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Am. Alloys, Inc. v, United States,*
  30 F.3d 1469 (Fed. Cir. 1994) ..................................................................................... 7

*ArcelorMittal USA LLC v. United States,*
  399 F. Supp. 3d 1271 (Ct. Int'l Trade 2019) ................................................... 11, 18

*Artisan Manufacturing Corp. v. United States,*
  978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ............................................................ 12

*Atl. Sugar, Ltd. v. United States,*
  744 F.2d 1556 (Fed. Cir. 1984) ................................................................................. 6

*Bosun Tools Co. v. United States,*
  405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019) ........................................................... 14

*Celik Halat ve Tel Sanayi A.S. v. United States,*
  503 F. Supp. 3d 1241 (Ct. Int'l Trade 2021) ............................................................ 5

*China Kingdom Import & Export Co., Ltd. v. United States,*
  507 F. Supp. 2d 1337 (Ct. Int'l Trade 2007) ........................................................... 25

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197 (1938) ................................................................................................... 6

*Consolo v. Fed. Mar. Commc'n,*
  383 U.S. 607 (1966) ................................................................................................... 6

*Dongtai Peak Honey Indus. Co. v. United States,*
  971 F. Supp. 2d 1234 (Ct. Int'l Trade 2014) .............................................. 8, 18, 19

*Dongtai Peak Honey Indus. Co. v. United States,*
  777 F.3d 1343 (Fed. Cir. 2015) ....................................................................... passim

*Essar Steel Ltd. v. United States,*
  678 F.3d 1268 (Fed. Cir. 2012) ............................................................................... 19

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,*
  216 F.3d 1027 (Fed. Cir. 2000) ............................................................................... 22

*Grobest & I-Mei Industries Co. v. United States,*
  815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ........................................................... 11

*Husteel Co., Ltd. v. United States,*
   77 F. Supp. 3d 1286 (Ct. Int'l Trade 2015) ........................................................ 23

*Hyosung Corp. v. United States,*
   35 C.I.T. 343 (Ct. Int'l Trade 2011) ................................................................ 14

*Hyundai Heavy Indus. Co., Ltd. v. United States,*
   393 F. Supp. 3d 1293 (Ct. Int'l Trade 2019) .................................................... 21

*INS v. Elias-Zacarias,*
   502 U.S. 478 (2002) ........................................................................................ 7

*Matsushita Elec. Indus. Co. v. United States,*
   750 F.2d 927 (Fed. Cir. 1984) ........................................................................ 7

*Maverick Tube Corp. v. United States,*
   107 F. Supp. 3d 1318 (Ct. Int'l Trade 2015) .......................................... 9, 18, 19

*Maverick Tube Corp. v. United States,*
   857 F.3d 1357 (Fed. Cir. 2017) ...................................................................... 22

*Micron Tech., Inc. v. United States,*
   117 F.3d 1386 (Fed. Cir. 1997) ...................................................................... 7

*Mui Pineapple Co. v. United States,*
   264 F. Supp. 2d 1244 (Ct. Int'l Trade 2003) ................................................ 8

*Nippon Steel Corp. v. United States,*
   118 F. Supp. 2d 1366 (Ct. Int'l Trade 2000) ............................................ 14, 23

*Nippon Steel Corp. v. United States,*
   337 F.3d 1373 (Fed. Cir. 2003) ...................................................................... 22

*NTN Bearing Corp. v. United States,*
   74 F.3d 1204 (Fed. Cir. 1995) .................................................................. 12, 13

*Nucor Corp. v. United States,*
   612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ................................................ 7

*Pro-Team Coil Nail Enter. v. United States,*
   419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ................................................ 13

*PSC VSMPO-Avisma Corp. v. United States,*
   688 F.3d 751 (Fed. Cir. 2012) ................................................................ passim

*Shelter Forest Int'l Acquisition, Inc. v. United States,*
   497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ............................................ 11, 20

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
  298 F. 3d 1330 (Fed. Cir. 2002) ........................................................................ 23

*Timken Co. v. United States*,
  699 F. Supp. 300 (Ct. Int'l Trade 1988) ............................................................ 7

*Tung Mung Dev. Co., Ltd. v. United States*,
  25 C.I.T. 752 (2001) ........................................................................................ 24

*United States v. Eurodif S.A.*,
  129 S. Ct. 878 (2009) ........................................................................................ 6

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) .......................................................................................... 7

*Wheatland Tube Co. v. United States*,
  161 F.3d 1365 (Fed. Cir. 1998) ........................................................................ 7

*Yantai Timken Co. v. United States*,
  521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007) ......................................... 8, 20, 21

*Yantai Timken Co. v. United States,*
  300 F. App'x 934 (Fed. Cir. 2008) ................................................................... 8

*Zenith Elecs. Corp. v. United States*,
  988 F.2d 1573 (Fed. Cir. 1993) ........................................................................ 23

**Statutes**

5 U.S.C. § 706 .................................................................................................... 7

19 U.S.C. § 1516a(b)(1)(B)(i)……………………………………………………....6

19 U.S.C. § 1671b(e)(2)…………………………………………………………....5

19 U.S.C. § 1677e .................................................................................. 13, 20, 22

19 U.S.C. § 1677m(d) ............................................................................ 11, 19, 20

19 U.S.C. § 1677m(e) ....................................................................... 13, 19, 20, 21

28 U.S.C. § 2640(e) ........................................................................................... 7

**Rules**

United States Court of International Trade Rule 56.2 .................................................. 1

**Regulations**

19 C.F.R. § 351.301(b)(1)......................................................................... 24

19 C.F.R. § 351.302 .................................................................................. 18

19 C.F.R. § 351.302(b) ............................................................................. 14

19 C.F.R. § 351.302(c)......................................................................... 12, 21

19 C.F.R. § 351.302(c)(2) ................................................................... 17, 18

19 C.F.R. § 351.303 .................................................................................. 13

**Other Authorities**

*Antidumping and Countervailing Duty Proceedings: Electronic Filing Procedures; Administrative Protective Order Procedures,*
  76 Fed. Reg. 39,263 (Dep't of Commerce July 6, 2011) ......................... 24

*Certain Hot-Rolled Carbon Steel Flat Products from Ukraine,*
  66 Fed. Reg. 50,401 (Dep't of Commerce Oct. 3, 2001) ........................ 19

*Extension of Time Limits,*
  78 Fed. Reg. 57,790 (Dep't of Commerce Sep. 20, 2013) ................. 14, 17

*Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, Indonesia, Italy, Malaysia, the Netherlands, Saudi Arabia, South Africa, Spain, Taiwan, Tunisia, the Republic of Turkey, Ukraine, and the United Arab,*
  85 Fed. Reg. 28,610 (Dep't of Commerce May 6, 2020) (initiation), P.D. 24 .......................... 2

*Prestressed Concrete Steel Wire From the Republic of Turkey,*
  85 Fed. Reg. 61,722 (Dep't of Commerce Sept. 30, 2020) (prelim. determ.) (*Preliminary Determination*), P.D. 157 ....................................................................... 5

*Prestressed Concrete Steel Wire Strand From the Republic of Turkey,*
  85 Fed. Reg. 80,001 (Dep't of Commerce Dec. 11, 2020) (final determ.), P.D. 182 ......... 2, 23

*Prestressed Concrete Steel Wire Strand From the Republic of Turkey,*
  86 Fed. Reg. 7,703 (Dep't of Commerce Feb. 1, 2021) (AD Order) ..........................................6

*Wooden Bedroom Furniture from the People's Republic of China,*
  69 Fed. Reg. 67,313 (Dep't of Commerce Nov. 17, 2004)
  (final determination of sales at less than fair value) ................................. 19

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE**

_____
                                                      )
CELIK HALAT VE TEL SANAYI A.S.,          )
                                                      )
              Plaintiff,                              )
                                                      )
       v.                                             )
                                                      )
UNITED STATES,                               )
                                                      )          Court No. 21-00045
              Defendant,                           )
                                                      )
       and                                           )          PUBLIC DOCUMENT
                                                      )
INSTEEL WIRE PRODUCTS COMPANY,      )
SUMIDEN WIRE PRODUCTS                    )
CORPORATION, AND WIRE MESH CORP.,   )
                                                      )
              Defendant-Intervenors.              )
_____)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to United States Court of International Trade Rule 56.2, defendant, the United

States, respectfully responds to the motion for judgment on the agency record filed by plaintiff

Celik Halat ve Tel Sanayi A.S. (Celik Halat), ECF No. 20 ("Celik Br.").  Celik Halat challenges

the United States Department of Commerce's final determination in the antidumping duty

investigation of prestressed concrete steel wire strand (PC strand) from the Republic of Turkey.

As explained below, the motion should be denied because the final determination is supported by

substantial evidence and is otherwise in accordance with law.

**STATEMENT PURSUANT TO RULE 56.2**

I.     **The Administrative Determination Under Review**

The administrative determination under review is *Prestressed Concrete Steel Wire Strand*

*From the Republic of Turkey*, 85 Fed. Reg.  80,001 (Dep't of Commerce Dec. 11, 2020) (final

determ.), P.D. 182,[1] and accompanying Issues and Decision Memorandum (Dep't of Commerce

Dec. 7, 2020) (IDM), P.D. 167 (collectively, *Final Determination*).  The investigation covers the

period April 1, 2019 to March 31, 2020.

## II.   Issues Presented For Review

1.   Whether Commerce acted within its discretion to reject Celik Halat's untimely filed

Section B and C Questionnaire Response.

2.   Whether Commerce's decision to apply facts available with an adverse inference to Celik

Halat for failing to cooperate to the best of its ability is supported by substantial evidence and in

accordance with law.

## STATEMENT OF FACTS

In April 2020, domestic interested parties filed a petition for the imposition of

antidumping duties on imports of PC strand from Turkey.  *See* Letter re:  Prestressed Concrete

Steel Wire Strand from Argentina, Colombia, Egypt, Indonesia, Italy, Malaysia, Netherlands,

Saudi Arabia, South Africa, Spain, Taiwan, Tunisia, Turkey, Ukraine, and United Arab Emirates

– Petition for the Imposition of Antidumping and Countervailing Duties (Apr. 16, 2020), P.D. 1-

9.  Commerce initiated its AD investigation of PC strand from Turkey on May 13, 2020.

*Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, Indonesia, Italy,*

*Malaysia, the Netherlands, Saudi Arabia, South Africa, Spain, Taiwan, Tunisia, the Republic of*

*Turkey, Ukraine, and the United Arab*, 85 Fed. Reg. 28,610 (Dep't of Commerce May 6, 2020)

(initiation), P.D. 24.  In June 2020, Commerce selected Celik Halat for individual examination as

a mandatory respondent.  *See* Memorandum re: Respondent Selection (June 18, 2020), P.D. 66.

---

[1]  Citations to the public documents (P.D.) refer to the record of the investigation.

That same month, Commerce issued its initial questionnaire.  Letter re:  Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey – Antidumping Duty Questionnaire (June 19, 2020), P.D. 67 (Initial Questionnaire).  Sections B-D of the questionnaire were due to Commerce on July 27, 2020.  *Id.*

On July 22, 2020, Celik Halat requested an extension of the deadline to submit its Section B-D questionnaire response to August 17, 2020.  *See* Letter re:  Prestressed Concrete Steel Wire Strand from Turkey – Extension Request of Celik Halat for Sections B-C-D in the AD investigation. (July 22, 2020), P.D. 103.  Celik Halat stated that it needed additional time due to the lockdowns and office closures resulting from the Covid-19 pandemic.  *Id.*  Commerce granted Celik Halat's extension request, in part, extending the deadline an additional fourteen days, to August 10, 2020.  *See* Letter re:  Less-Than-Fair-Value Duty Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey – Grant of Partial Extension to sections B, C, and D questionnaire (July 23, 2020), P.D. 106.

On August 4, 2020, Celik Halat requested an extension to submit its section B-D of Commerce's initial questionnaire. *See* Letter re:  Prestressed Concrete Steel Wire Strand from Turkey – Extension Request of Celik Halat for supplemental Sections B-C-D in the AD investigation (Aug. 4, 2020), P.D. 113.   Celik Halat stated that a religious holiday in Turkey caused many people to take a week holiday to visit family members, and that a finance manager was involved in a minor traffic accident on his return from his family visit.  *Id.*  Celik Halat accordingly requested an additional four days to file its questionnaire responses.  *Id.*  Commerce denied the request, stating that it was unable to grant Celik Halat's request due to the investigation's statutory deadlines and that the due date remained the previously extended deadline of August, 10, 2020.  *See* Letter re:  Less-Than-Fair-Value Duty Investigation of

Prestressed Concrete Steel Wire Strand from the Republic of Turkey – Denial of Sections B-D Questionnaire Request (August 4, 2020), P.D. 114.

On August 5, 2020, Celik Halat requested its third extension of sections B-D of Commerce's initial questionnaire.  *See* Letter re:  Pre-stressed Concrete Steel Wire Strand from Turkey Extension – Request of Celik Halat for Section D in the AD investigation (August 5, 2020), P.D. 115.  Celik Halat stated that, due to the finance manager's minor traffic accident, it was having difficulty completing section B and C, that it was impossible to complete section D of Commerce's initial questionnaire, and accordingly requested a three-day extension to submit its section D response.  *Id.*  Commerce granted Celik Halat's request extending only the response to Section D given Celik Halat's concerns and stated inability to complete the section D on-time. *See* Letter re:  Less-Than-Fair-Value Duty Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey – Grant of Extension for Section D Questionnaire (August 5, 2020), P.D. 116).  Celik Halat's section B-C response remained due on August 10, 2020.  *Id.* Celik Halat did not file any subsequent extension requests for its section B-C response.

On August 10, 2020, Celik Halat failed to timely submit its section B-C response.  Letter re:  Less-Than-Fair-Value Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey - Rejection of Sections B and C Questionnaire (August 19, 2020), P.D. 137; *see* IDM at 5.  Celik Halat began the process of uploading its response late in the afternoon on August 10, but because Celik Halat did not properly format its documents, Commerce's document system did not accept the documents and responded with an error message.  *See* Letter re:  Pre-Stressed Concrete Steel Wire Strand from Turkey:  Response of Celik Halat to Petitioner's Demand for Imposition of Total AFA and to the Department's Denial of Reconsideration of the Rejection of its Section B and C Responses (September 8, 2020), P.D.

147.  Celik Halat chose not to contact the help desk for technical assistance, alert any Commerce

official of the error, or request an extension of time before the deadline as a result of its filing

difficulties.  *Id.*  Because Celik Halat failed to submit its response to Commerce's questionnaire

by the established deadline, Commerce rejected the submission as untimely.  Rejection Letter

(Aug. 19, 2020), P.D. 137.  Commerce also denied Celik Halat's request for reconsideration of

its decision.  *See* Letter re:  Less-Than-Fair-Value Investigation of Prestressed Concrete Steel

Wire Strand from the Republic of Turkey - Denial of Reconsideration Request for Untimely

Questionnaire (August 27, 2020), P.D. 140.

   Commerce issued its preliminary affirmative determination in September 2020.

*Prestressed Concrete Steel Wire From the Republic of Turkey*, 85 Fed. Reg. 61,722 (Dep't of

Commerce Sept. 30, 2020) (prelim. determ.) (*Preliminary Determination*), P.D. 157, and

Preliminary Decision Memorandum (Dep't of Commerce Sept. 23, 2020) (PDM), P.D. 153.

Commerce preliminarily relied on facts available with an adverse inference for purposes of

calculating Celik Halat's margin.  *Id*.  Accordingly, Commerce imposed measures and

established a cash deposit rate of 53.65 percent.  *Preliminary Determination*, 85 Fed. Reg. at

61,724.[2]  Additionally, because Commerce found that plaintiff had "massive imports" over a

"relatively short period," Commerce preliminarily determined that critical circumstances existed

with respect to imports of PC strand shipped by Celik Halat.  PDM at 12-16.  Consequently,

Commerce instructed U.S. Customs and Border Protection to retroactively suspend liquidation,

in accordance with 19 U.S.C. §§ 1671b(e)(2).  *Preliminary Determination*, 85 Fed. Reg. at

61,725.

---

[2]  This Court previously dismissed Celik Halat's challenge to the preliminary
determination as not within the Court's residual jurisdiction.  *Celik Halat ve Tel Sanayi A.S. v.
United States*, 503 F. Supp. 3d 1241 (Ct. Int'l Trade 2021).

On January 25, 2021, the International Trade Commission notified Commerce of its affirmative determination that an industry in the United States is materially injured by reason of imports of PC Strand that are sold in the United States at less than fair value from Turkey. *See* International Trade Commission Letter (Jan. 25, 2021), P.D. 170. Consequently, Commerce published its antidumping duty order on PC strand from Turkey in the *Federal Register*. *Prestressed Concrete Steel Wire Strand From the Republic of Turkey*, 86 Fed. Reg. 7,703 (Dep't of Commerce Feb. 1, 2021) (AD Order).

## ARGUMENT

### I.     Standard Of Review

The Court upholds Commerce determinations that are supported "by substantial evidence on the record" and otherwise "in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 129 S. Ct. 878, 887, n.6 (2009).

The substantial evidence standard is met if the record exhibits "less than a preponderance, but more than a scintilla" of relevant and reasonable evidence to buttress the underlying conclusions. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of the entire record, "including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984). Even if the Court may draw two inconsistent conclusions from the record, it "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Commc'n*, 383 U.S. 607, 620 (1966).

"It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988).  Rather, when Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, agency conclusions will fail only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion.  *See INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (2002); *see also Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

The statute's axiom necessitates that an agency explain the standards that it applied and rationally connect them to the conclusions made from the record.  *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).  To review the reasonableness of agency action, "{c}ourts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."  *See Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998); *see also* 5 U.S.C. § 706; 28 U.S.C. § 2640(e).

Commerce is entitled to broad discretion regarding the manner in which it develops the administrative record in its proceeding.  *See Stupp Corp. v. United States*, Court No. 2020-1857 (Fed. Cir. 2021) at 13 (citing *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012)); *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997); *Am. Alloys, Inc. v, United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994)), *mandate pending*.  Indeed, "{a}bsent constitutional constraints or extremely compelling circumstances{,} the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties."  *Vermont Yankee Nuclear*

*Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (quotations and citations

omitted).  This Court thus has held that "{Commerce} has broad discretion to establish its own

rules governing administrative procedures, including the establishment and enforcement of time

limits."  *Yantai Timken Co. v. United States*, 521 F. Supp. 2d 1356, 1370 (Ct. Int'l Trade 2007),

*aff'd*, 300 F. App'x 934 (Fed. Cir. 2008); *Dongtai Peak Honey Indus. Co. v. United States*, 971

F. Supp. 2d 1234, 1239 (Ct. Int'l Trade 2014), *aff'd*, 777 F.3d 1343 (Fed. Cir. 2015) (*Dongtai*

*II*).  Commerce's enforcement of its timeliness regulation is examined under an abuse of

discretion standard.

## II.     Commerce Did Not Abuse Its Discretion By Rejecting Celik Halat's Untimely Questionnaire Responses

Plaintiff contends that Commerce's rejection of Celik Halat's sections B and C

Questionnaire Responses was unreasonable and an abuse of discretion.  Celik Br. at 16-18.

Plaintiff also claims that Commerce's decision was unlawful and unsupported by the facts.  *Id.* at

6, and *generally* at 16-24.  As demonstrated below, Commerce's decision to reject Celik Halat's

untimely submission was not an abuse of discretion, and was supported by a reasonable

explanation.

"Commerce has broad discretion to establish its own rules governing administrative

procedures, including the establishment and enforcement of time limits."  *Yantai Timken*, 521 F.

Supp. 2d at 1370-71.  In order for Commerce to fulfill its mandate to administer the antidumping

duty laws, the agency must be permitted to enforce its deadlines.  *Id.* at 1371; *see also Mui*

*Pineapple Co. v. United States*, 264 F. Supp. 2d 1244, 1257 (Ct. Int'l Trade 2003) (recognizing

Commerce's discretion to enforce deadlines for submitting information and that, because of

statutory deadlines and limited resources, accurate information must "be provided promptly to

allow the agency sufficient time for review").  Consequently, this Court and the United States

Court of Appeals for the Federal Circuit have affirmed Commerce's authority to reject untimely submissions.  *See, e.g.*, *Stupp Corp.*, *mandate pending*; *PSC VSMPO,* 688 F.3d at 751 (upholding Commerce's rejection of information submitted after the deadline stating that "courts must not improperly intrude upon an agency's power to implement and enforce proper procedures for constructing an agency record").  Moreover, "{s}trict enforcement of time limits and other requirements is neither arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation for its decision."  *Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318, 1331 (Ct. Int'l Trade 2015).

Here, Commerce provided a reasoned explanation for rejecting Celik Halat's untimely filed response.  Celik Halat does not dispute that it failed to submit its entire response to sections B and C of Commerce's Initial Questionnaire by the established deadline.  *See, e.g.*, Celik Br. at 17.  Celik Halat was cautioned numerous times that, because Commerce "must conduct {the} investigation in accordance with statutory and regulatory deadlines," any response to the agency's requests for information submitted after the established deadlines would be rejected as untimely.  *See, e.g.*, Letter re: Less-Than-Fair-Value Duty Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey - Initial Questionnaire (June 19, 2020), P.D. 67; and Letter re:  Less-Than-Fair-Value Duty Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey – Partial Grant of Extension for Sections B, C, and D Questionnaire Responses (July 23, 2020), P.D. 106*.*  Celik Halat, however, did not heed these warnings and submitted its response past the established deadline.

Commerce's deadlines are designed to allow a respondent sufficient time to prepare responses to detailed requests for information and to allow the agency to analyze and verify such information within the statutorily mandated timeframe for completing an investigation.

9

Commerce requires a significant amount of time and effort to gather the necessary information and consider the facts of the record, and provide interested parties with an appropriate period for comments and rebuttal comments.  Commerce's regulations provide for specific circumstances in which an untimely submission may be excused – namely circumstances that are unforeseeable and beyond a party's control.  Technical difficulties, like a party's inability to access the internet, is not one of those circumstances.  Here, Celik Halat's untimely submission was entirely of its own making, not because of an unexpected event or because of an "extraordinary" circumstance. Celik Halat chose to file its response at the eleventh hour and encountered filing difficulties because it improperly formatted its submission.  As a consequence, Celik Halat failed to submit its entire response to sections B and C of Commerce's Initial Questionnaire by the deadline. Thus, Commerce reasonably exercised its discretion in rejecting Celik Halat's submission and in enforcing the applicable time limitations in this case.  *See PSC VSMPO*, 688 F.3d at 760 (stating that "absent constitutional constraints or extremely compelling circumstances {Commerce} should be free to fashion {it}s own rules of procedure and to pursue methods of inquiry capable of permitting {it} to discharge {its} multitudinous duties").  As Commerce explained, "Celik Halat did not file its response to sections B and C of the questionnaire in its entirety by the established deadline," and "Celik Halat acknowledged that it failed to request an extension of the deadline for its sections B and C questionnaire response to resolve its filing difficulties when it had the timely opportunity to do so."  IDM at 5, 8.  Indeed, Celik Halat was capable of submitting a timely response, but it simply failed to do so.

### A.    <u>Judicial Precedent Supports Commerce's Decision In This Case</u>

Celik Halat contends that Commerce was obligated to accept its untimely submission.  As support, Celik provides examples, it argues, that require the agency to "evaluate the specific

circumstances and context of an untimely filed submission before determining whether to reject

that submission."  Celik Halat Br. at 19.  Plaintiff's argument is misplaced, and the cases

referenced are inapposite.

According to plaintiff, *Shelter Forest* stands for the proposition that "{Commerce}

abuse{s} {its} discretion … when acceptance … would yield a more accurate result."  *Id.* at 18-

19.  The untimely submission at issue in *Shelter Forest*, however, was the result of Commerce's

failure to notify respondent of the deficiencies in its original, *timely* submissions.  *See Shelter*

*Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1401 (Ct. Int'l Trade 2021).

Here, Celik Halat concedes that it was aware of the deadline but failed to satisfy it.  Celik Br. at

1.  *See* 19 U.S.C. § 1677m(d); As such, *Shelter Forest* is not applicable.

Plaintiff's reliance on *Grobest & I-Mei Industries Co. v. United States*, 815 F. Supp. 2d

1342, 1365 (Ct. Int'l Trade 2012) is similarly misplaced.  Celik Br. 19.  *Grobest* not only pre-

dates Commerce's revision to its regulations on the establishment and enforcement of deadlines,

but also is superseded by judicial precedent.  *See ArcelorMittal USA LLC v. United States*, 399 F.

Supp. 3d 1271, 1281 (Ct. Int'l Trade 2019) (citing *Dongtai II*, 777 F.3d at 1351).  And even if

the decision was applicable, the facts surrounding *Grobest* are distinguishable.  Unlike Celik

Halat, the facts in *Grobest* involved the late filing of a separate rate certification providing

information that was consistent with what was provided to Commerce in several prior

administrative reviews of the same company, and that such information was unlikely to prompt

further investigation by Commerce.  *See Grobest*, 815 F.Supp.2d at 1364-67.  Indeed, the

missing information in this case was not minor or incidental to Commerce's dumping

calculation; rather, the entirety of Celik Halat's domestic sales database was vital to Commerce's

calculation of an accurate dumping margin.

11

Like *Grobest*, *Artisan* also precedes the revised rules and judicial precedent. *Artisan Manufacturing Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014); *Dongtai II*, 777 F.3d at 1351; *see also* 19 C.F.R. § 351.302(c) (2020). More importantly, the facts in *Artisan* are distinguishable. In *Artisan*, Commerce rejected a respondent's timely-filed separate rate application and its untimely-filed quantity and value response, denying the applicant's separate rate request and assigning the applicant a margin based on adverse facts available. *See Artisan*, 978 F. Supp. 2d at 1337-40. In holding that Commerce abused its discretion, the Court explained that Commerce was ambiguous in stating its policy on time extensions for the information at issue and that its determination was based on "*the particular circumstances of this investigation.*" *Id*. at 1344, 1347-1348 (emphasis in original). Unlike in *Artisan*, Commerce provided unambiguous guidance to respondents concerning the deadlines and consequences for late-filed submissions. . The Federal Circuit has emphasized that Commerce does not violate principles of fairness by rejecting an untimely submission where the party has notice and a meaningful opportunity to be heard. *See Dongtai II*, 777 F.3d at 1351-52. To the extent that *Artisan* and *Grobest* are inconsistent, this Court must follow *Dongtai II* and give effect to Commerce's current regulatory requirement that parties demonstrate "extraordinary circumstances" if they timely fail to request an extension of time. 19 C.F.R. § 351.302(c).

Nor does *NTN Bearing Corp.* require that Commerce be more "flexible" with its deadlines. Celik Br. at 19-20 (citing *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995)). As an initial matter, "{i}t is not for {the submitting party} to establish Commerce's deadlines or to dictate to Commerce whether and when Commerce actually needs the requested information." *Dongtai II*, 777 F.3d at 1352. And contrary to plaintiff's claims, the administrative burden to accept Celik Halat's untimely questionnaire response is not outweighed

by the injury to the respondent.  *See generally,* Celik Br. 23-24; *see also, e.g., Dongtai II*, 777 F.3d at 1352.  Specifically, the respondent in *NTN Bearing Corp*. sought to correct clerical errors in an otherwise timely submission: one digit in a 13-digit code identifying specific types of parts for 23 U.S. sales and the inclusion of four Canadian sales.  *NTN Bearing Corp.*, 74 F.3d at 1207-8.  Here, Celik Halat did not seek to correct clerical errors in an otherwise timely submission; rather its entire submission was untimely.

 *Pro-Team* is equally inapposite.  In *Pro-Team*, the court rejected Commerce's decision to disregard the quantity and value schedule because the respondent failed to submit the information in the form and manner requested.  *Pro-Team Coil Nail Enter. v. United States,* 419 F. Supp. 3d 1319, 1331 (Ct. Int'l Trade 2019).  Significant to this case, "Commerce did *not* reject {PT/Pro-Team's} Q&V {quantity and value} Schedule on the basis that it contained *untimely* filed factual information pursuant to its regulatory authority to reject such information."  *Id.* at 1330 (emphasis added).  The Court explained that 19 U.S.C. § 1677e "permits Commerce to use the facts otherwise available when a respondent 'fails to provide {necessary} information by the deadlines for submission of the information or in the form and manner requested'; however, that authority is subject to 19 U.S.C. § 1677m(e) . . . ."  *Id.*  Section 1677m(e) states that Commerce "shall not decline to consider information that is submitted by a party," but only if "the information is submitted by the deadline established for its submission."  19 U.S.C. § 1677m(e)(1).  Even if *Pro-Team* is applicable (which it is not), by failing to meet the deadline for Sections B and C of the Initial Questionnaire response, Celik Halat did not satisfy its statutory obligation to submit information *in the form and manner requested*.

 In *Bosun Tools*, this Court found that Commerce abused its discretion by rejecting a respondent's out-of-time attempt to refile a redacted version of a document for which the

unredacted version had been timely filed. *Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359, 1367 (Ct. Int'l Trade 2019). As this Court explained, "{t}he information in the submission *was provided by the deadline set* and the updated version of the submission, filed two-days late, related back to the original, timely filing." *Id.* (emphasis added). This case is distinguishable from *Bosun Tools,* bBecause Celik Halat failed to submit its questionnaire response by the requisite deadline.

Finally, fairness and accuracy considerations do not require Commerce to accept Celik Halat's late response. Celik Br. at 24-25. In holding that the Court "improperly intruded upon Commerce's power to apply its own procedures for the timely resolution of antidumping reviews," the Federal Circuit explained that the "role of judicial review is limited to determining whether the record is adequate to support the administrative action," and that the Court "cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate results if the evidence were considered." *PSC VSMPO*, 688 F.3d at 761; *see also Hyosung Corp. v. United States*, 35 C.I.T. 343 (Ct. Int'l Trade 2011) (stating that Commerce has "discretion to reject {untimely submissions} because Commerce will not consider or retain in the official record of the proceeding any untimely filed information"); *Nippon Steel Corp. v. United States*, 118 F. Supp. 2d 1366, 1377 (Ct. Int'l Trade 2000) (stating that Commerce may establish time limits to aid the completion of its mission, and that it may enforce such time limits by rejecting late, but verifiable data). "Indeed, the pursuit of what the court perceives to be the best or correct results would render judicial review totally unpredictable." *PSC VSMPO*, 688 F.3d at 761. Just as the respondent in *PSC VSMPO*, Celik Halat was afforded "notice and a meaningful opportunity to be heard." Moreover, Celik Halat was well aware of the established deadlines in this case and the importance of submitting its

14

documents in a timely manner and the consequences for not doing so.   Fairness and accuracy

concerns, therefore, do not require this Court to set aside Commerce's application and

enforcement of the deadline in this case.

> **B.      Substantial Evidence Supports Commerce's Conclusion That No
> "Extraordinary Circumstances" Existed**

A party may file a timely extension request, which Commerce may grant for good cause

shown.  19 C.F.R. § 351.302(b).  But it "would be counterproductive to set the same standard for

untimely extension requests" as for timely requests, because "parties would have no incentive for

filing timely extension requests."  *Extension of Time Limits*, 78 Fed. Reg. 57,790, 57,793 (Dep't

of Commerce Sep. 20, 2013).  Thus, while untimely extension requests still require a showing of

good cause, the bar to meet that standard is heightened—the requesting party must "demonstrate

that an extraordinary circumstance exists."  19 C.F.R. § 351.302(c).  "{I}t is the party's

responsibility to demonstrate that extraordinary circumstances exist based on the specific facts."

*Extension of Time Limits*, 78 Fed. Reg. at 57,793.

Commerce has defined an "extraordinary circumstance" as:  (1) an unexpected event; (2)

that could not have been prevented if reasonable measures had been taken; and (3) precludes a

party or its representative from timely filing an extension request through all reasonable means.

19 C.F.R. § 351.302(c)(2).  Examples of extraordinary circumstances include "a natural disaster,

riot, war*, force majeure*, or medical emergency," but not "insufficient resources, inattentiveness,

or the inability of a party's representative to access the internet on the day on which the

submission was due."  *See Extension of Time Limits*, 78 Fed. Reg. at 57,793.  Celik Halat fails to

establish that an "extraordinary circumstance" existed in this case.

Here, Commerce found that there was no "unexpected event" surrounding Celik Halat's

untimely submission.  IDM at #.  Plaintiff's assertion that its untimely filing was due to

"unexpected technical difficulties" is unsupported by the facts.  Commerce reminded Celik Halat

of the ACCESS[3] filing requirements.  Commerce also provided Celik Halat several resources to

ensure it was capable of timely filing properly formatted documents onto ACCESS.  Indeed, the

"Handbook on Electronic Filing Procedures"[4] is identified as a resource in Commerce's AD

questionnaire (June 10, 2020) at 2, P.D. 55, and provides information regarding the specific error

encountered by Celik Halat and specifically alerts parties of the requirement to submit

documents with searchable text: "All documents must be submitted as searchable PDFs.

…{Commerce} requires all submitted documents to be searchable … Failure to convert a PDF

into a text searchable document will result in the rejection of your submission."  Handbook at 12.

The Handbook also reminds parties that commerce "will only consider the document timely filed

electronically only if it is received in its entirety by ACCESS by the time and date specified."

Handbook at 16.  "The Handbook also reminds parties of its availability to provide assistance,

"should technical problems with the website arise," and that "{i}f the user suspects that a

technical problem may be preventing a successful submission, he/she should contact the

ACCESS Help Desk for additional information and assistance." Handbook at 8 and 15.

Information on how to contact the ACCESS Help Desk with any issues with an ACCESS

account is listed prominently on the ACCESS home webpage.  ACCESS Homepage, available at

*https://access.trade.gov/login.aspx.*

    Celik Halat receiving an email stating a "no searchable text" error was discovered in its

submission is not an "unexpected technical difficulty," but rather an alert that the submission

---

[3]  ACCESS is the repository for all documents filed in an antidumping/countervailing
duty proceeding conducted by the U.S. Department of Commerce, Enforcement and Compliance.
Its website is https://access.trade.gov/login.aspx.

[4]  The Handbook on Electronic Filing Procedures is available on the ACCESS home page
at https://access.trade.gov/help/Handbook_on_Electronic_Filing_Procedures.pdf.

was not properly formatted and that it did not comply with the ACCESS filing requirements.

Celik Halat demonstrated that it was capable of submitting, prior to its untimely filing, several

documents onto ACCESS as searchable PDFs including other questionnaire responses and

extension requests.  Thus, the facts suggest only inattentiveness, which does not constitute an

"unexpected event" warranting an extraordinary circumstance.  See Extension of Time Limits,

78 Fed. Reg. at 57,793; *see also* 19 C.F.R. § 351.302(c)(2).

Celik Halat also fails to demonstrate how its counsel's decision to "press on to fix the

technical errors," instead of requesting an extension or contacting Commerce, constitutes

"reasonable measures."  Celik Br. 37; *Extension of Time Limits*, 78 Fed. Reg. at 57,793; 19

C.F.R. § 351.302(c).  Indeed, the untimely submission could have been avoided altogether had

counsel complied with Commerce's regulations and the ACCESS handbook, or taken other

*reasonable steps*, by, for example, beginning the filing earlier in the day.  *See* IDM at7; Celik Br.

36-38.  However, Celik Halat encountered its filing error forty-eight minutes before the deadline,

or only two minutes after it began filing its questionnaire, and yet it did not contact, via email or

phone, any Commerce official or the ACCESS Help Desk, or submit a timely extension request.

Celik Halat Reconsideration Request (Aug. 24, 2020) at 3, P.D. 139.  Specifically, plaintiff fails

to demonstrate that counsel's inability to file on time "{c}ould not have been prevented if

reasonable measures had been taken."  IDM at 7 (citing 19 C.F.R. § 351.302(c)(2)).  But for the

same reasons plaintiff's untimely submission could have been avoided, plaintiff could have

requested an extension before the deadline.  *See* IDM at 6, *See also* 19 C.F.R. §

351.302(c)(2)(ii).  As Commerce explained, Celik Halat's failure was not the result of an

unexpected error, but inattentiveness in failing to format its submission according to the

ACCESS filing requirements.  IDM at 6-7.  Indeed, "the {ACCESS} Handbook provides

guidance to ACCESS users on how to avoid the specific filing issue Celik Halat encountered." Handbook at 12; IDM at 7.

Finally, plaintiff's comparison of the circumstances here to other situations must fail. Celik. Br. 38-45. The Federal Circuit in *Dongtai II* rejected the appellant's argument "regarding Commerce's {usual} practice of approving untimely extension requests {for minor delays}"— the Court instead held that in the "various administrative reviews cited by the Appellant, Commerce found good cause was shown and therefore exercised its discretion in granting the untimely extension requests." *Dongtai II*, 777 F.3d at 1351. It is, in other words, a fact-driven inquiry. Alhough plaintiff cites various examples of Commerce granting out-of-time requests, it does not provide further context or otherwise explain the basis for its claim that Commerce has found extraordinary circumstances on facts like those presented here.

*Dongtai II* is also instructive here because the Federal Circuit in that case was applying an earlier version of 19 C.F.R. § 351.302. *See Dongtai II*, 777 F.3d at 1351 n.2. That earlier version did not specifically address untimely extension requests. *See* 19 C.F.R. § 351.302(c) (2013). The Federal Circuit nonetheless found that Commerce did not abuse its discretion, even without the current heightened regulatory requirement that a party seeking to file out of time must demonstrate extraordinary circumstances. *See* 19 C.F.R. § 351.302(c) (2020). This Court has applied *Dongtai II* to find no abuse of discretion by Commerce when applying the more recent changes to the "extraordinary circumstances" regulation, explaining that "{s}trict enforcement of time limits . . . is neither arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation of its decision." 19 C.F.R. § 351.302; *ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271, 1279 (Ct. Int'l Trade 2019) (citing *Maverick Tube*, 107 F. Supp. 3d at 1331 (citing *Dongtai II*, 971 F. Supp. 2d at 1242).

In *ArcelorMittal*, a respondent failed to submit timely comments on draft remand results. The respondent submitted an extension request one week after the deadline, claiming that it had just learned of the deadline because its counsel was out of the country when the draft was released and the notification for the draft had been "lost in the email traffic during that period." *See ArcelorMittal*, 399 F. Supp. 3d at 1275.  Following *Dongtai II*, this Court sustained Commerce's finding that the facts did not present "extremely compelling circumstances." *Id*. at 1282.  Instead, on the facts and "in light of the '{i}mportant principles of timeliness and finality {that} undergird all aspects of litigation,'" the Court found that it was not an abuse of discretion for Commerce to reject respondent's untimely extension request and submissions. *Id*. (quoting *Essar Steel Ltd. v. United State*s, 678 F.3d 1268, 1278 (Fed. Cir. 2012)).

Indeed, Celik Halat fails to acknowledge that Commerce has consistently rejected untimely filed submissions.  *E.g., Certain Hot-Rolled Carbon Steel Flat Products from Ukraine*, 66 Fed. Reg. 50,401 (Dep't of Commerce Oct. 3, 2001); *Wooden Bedroom Furniture from the People's Republic of China*, 69 Fed. Reg. 67,313 (Dep't of Commerce Nov. 17, 2004) (final determination of sales at less than fair value).  And this Court has found no abuse of discretion by Commerce in instances like this.  *See Maverick Tube*, 107 F. Supp. 3d at 1331 (citing *Dongtai II*, 971 F. Supp. 2d at 1242.

III.   **Commerce's Decision To Apply Facts Available with an Adverse Inference To Celik Halat Was Supported By Substantial Evidence And In Accordance With Law**

Commerce applied adverse facts available to Celik Halat because the company failed to cooperate to the best of its ability to comply with Commerce's request for information.  Plaintiff contends that Commerce's decision was "contrary to the statute and grossly disproportionate to the innocent and minor error at issue."  Celik Br. 28-30.  As explained in more detail below, Commerce's decision was in accordance with law and supported by substantial evidence.

19

### A.      Celik Halat's Failure To Cooperate To The Best Of Its Ability Supports Commerce's Decision To Apply Facts Available With An Adverse Inference

Commerce  must use facts available if an "interested party or any other person:  (A) withholds information that has been requested by the administering authority; (B) fails to provide such information by the deadline, or in the form or manner requested; (C) significantly impedes a proceeding; or (D) provides such information that cannot be verified."   19 U.S.C. § 1677e(a)(2); *see also* H.R. Rep. No.103-316, at 869 (1994) (explaining that section 1677e(a) directs Commerce "to make determinations on the basis of the facts available where requested information is missing from the record").

Commerce cannot decline to consider information that is provided by an interested party and is necessary to the determination but fails to meet Commerce's requirements if the following criteria are satisfied:  (1) the information is submitted by the established deadline; (2) the information can be verified; (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching a determination; (4) the interested party has demonstrated that it acted to the best of its ability in responding to Commerce's requests for information; and (5) the information can be used without undue difficulties.  19 U.S.C. § 1677m(e).

If, however, the party's explanation of its deficiency is untimely or insufficient and one of the above factors is not satisfied, then Commerce may disregard all or part of the information provided and use adverse facts available.  19 U.S.C. §§ 1677e(a), 1677m(d)-(e).  "{T}he focus of subsection (a) is respondent's *failure to provide information*."  *Yantai Timken*, 521 F. Supp. 2d at 1372 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003) (emphasis added)).  "The mere failure of a respondent to furnish requested information - *for any reason* - requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination."  *Id*. (emphasis added).  To that end, if Commerce

20

determines that a respondent has "failed to cooperate by not acting to the best of its ability to comply with an information request," the statute permits the agency to draw adverse inferences when selecting among the facts available to reach its determination.  19 U.S.C. § 1677(e)(b). "{T}he statutory mandate that a respondent act to the best of its ability requires the respondent to do the maximum it is able to do."  *Yantai Timken*, 521 F. Supp. 2d at 1372; *see also Nippon Steel*, 337 F.3d at 1382 (A respondent fails to act to the best of its ability when it does not exert "maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation.").

In this case, Commerce found that Celik Halat failed to cooperate by not acting to the best of its ability to meet the established deadline to submit its questionnaire responses.  IDM at 4.  Celik Halat was fully aware of the deadline, and Celik Halat was advised of the importance of meeting deadlines and the consequences of not meeting those deadlines.  *See* Initial Questionnaire; *see also* Letter re:  Less-Than-Fair-Value Duty Investigation of Prestressed Concrete Steel Wire from the Republic of Turkey - Partial Grant of Extension for Sections B, C, and D Questionnaire Responses (July 23, 2020), P.D. 106.  Because Celik Halat fully knew of its responsibilities to meet the established deadline, but nonetheless failed to exert its maximum effort to submit its response in a timely manner, Commerce reasonably determined that Celik Halat failed to cooperate by not acting to the best of its ability to comply with a request for information.  PDM at 11, IDM at 4.

Plaintiff contends that "Commerce cannot rely on the untimely filing of a single exhibit to impose AFA."  Celik Br. at 29 (citing *Hyundai Heavy Indus. Co., Ltd. v. United States*, 393 F. Supp. 3d 1293 (Ct. Int'l Trade 2019)).  According to plaintiff, "Commerce merely equated Celik Halat's untimely filing with a failure to cooperate, without evaluating the circumstances of the

untimely filing." *Id.* at 29.  In fact, as this Court has explained, "{i}nsufficient attention to statutory duties under the unfair trade laws *is sufficient to warrant adverse treatment*.  It *implies an unwillingness to comply or reckless disregard of compliance standards*."  *Nippon Steel*, 118 F. Supp. 2d at 1379 (emphasis added).  Celik Halat concedes that it failed to submit its response to section B and C of Commerce's Initial Questionnaire by the established deadline.  Celik Br. at 29.  And contrary to plaintiff's portrayal, that failure constitutes a "reckless disregard for compliance standards," as described by this Court in *Nippon Steel*.  *See Nippon Steel*, 118 F. Supp. 2d at 1379.  Indeed, as Commerce explained, "{its} regulations are clear that a submission is not complete until it is filed in its entirety" and "Celik Halat did not file its response to sections B and C of the questionnaire in its entirety by the established deadline."  IDM at 5. Because plaintiff failed to cooperate to the best of its ability, Commerce's decision to rely on adverse facts available for purposes of calculating Celik Halat's AD rate was reasonable.  *Final Determination*, 85 Fed. Reg. at 80,001; *see also* IDM at 4; and 8.

Plaintiff's contention that Commerce should have relied on its partial responses provided before the deadline, to calculate its rate is unavailing.  Celik Br. at 30-31.  As an initial matter, to accept plaintiff's claim renders Commerce's deadlines meaningless and disincentivizes parties to cooperate with the agency in its requests for information.  Specifically, requiring Commerce to use partial submissions undermines both the purpose of the timing regulations,  which promotes the timely administration of Commerce's statutory mandate, and the adverse facts available statute, which provides respondents with an incentive to cooperate with Commerce's administration of its statutory mandate.  *See Maverick Tube*, 857 F.3d at 1360 (citing *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000)).

When Commerce amended its regulations to allow electronic filings, it specifically

contemplated the requirement that a document be "officially received by {Commerce} only

when it is filed electronically *in its entirety* using {} ACCESS."  *Antidumping and*

*Countervailing Duty Proceedings: Electronic Filing Procedures; Administrative Protective*

*Order Procedures*, 76 Fed. Reg. 39,263 (Dep't of Commerce July 6, 2011) (emphasis added).

As a consequence, for , "{a}n electronically filed document must be received successfully in its

entirety by {} ACCESS."  19 C.F.R. § 351.301(b)(1).  The AD questionnaire itself reminded

respondents of this requirement.  AD Questionnaire at 2.

   Celik Halat failed to submit significant portions of its section B and section C before

Commerce's deadline, making it impossible to calculate an accurate dumping margin even with

the incomplete information filed before 5pm.  Celik Halat Reconsideration Request (Aug. 24,

2020) at 4-5, P.D. 139, (noting that several section C exhibits and the entire section B home

market sales file were untimely filed); IDM at 8 ("even assuming, *arguendo*, that it was

appropriate to base Celik Halat's margin on its reported information, Commerce is unable to do

so without the home market and U.S. sales data").  Plaintiff fails to support its claims that its

*partially* filed submission was *partially* timely filed in accordance with Commerce's statute and

regulations, or that such incomplete information would yield an accurate dumping margin.

   Further, plaintiff's challenge to Commerce's decision fails to acknowledge Celik Halat's

own burden to prepare and provide Commerce with an accurate submission by the prescribed

deadline.  *See Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F. 3d 1330, 1336 (Fed.

Cir. 2002) (quoting *Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993);

*see also Husteel Co., Ltd. v. United States*, 77 F. Supp. 3d 1286, 1294-95 (Ct. Int'l Trade 2015)

(explaining that "{t}he court cannot conclude that {Commerce's untimely filing} regulations

required Commerce… to rule on the question of whether the revised home market database was

properly part of the record").  Had Celik Halat provided the requested information by the established deadline, Commerce would have had the necessary information to calculate its dumping margin.  Commerce was instead required to look to adverse facts available to ensure that Celik Halat did not benefit from its failure to cooperate.

**B.      Plaintiff's Reliance On 19 U.S.C. § 1677m(d) – Requiring Commerce To Provide Respondents An Opportunity To Remedy Or Explain Deficiencies – Is Misplaced And Unsupported By The Facts**

When a party's response to Commerce's questionnaire is deficient, prior to applying facts otherwise available Commerce must, to the extent practicable and subject to the requirements of 19 U.S.C. § 1677m(e), provide the party "an opportunity to remedy or explain the deficiency" in light of relevant time limits.  19 U.S.C. § 1677m(d).  In such cases, Commerce "shall not decline to consider" information so long as each of five conditions specified by section 1677m(e) is satisfied—including that the information is:  (1) timely, (2) verifiable, (3) not so incomplete as to be unreliable, (4) based on the party's cooperation to the best of its ability, and (5) usable without undue difficulties.  See 19 U.S.C. § 1677m(e).  If the response remains deficient, Commerce may disregard "all or part of the original and subsequent responses".  Id. § 1677m(d).

Relying on 19 U.S.C. § 1677m(d), Celik Halat argues that Commerce was required to provide it the opportunity to correct its submission's deficiencies in a "practicable" manner. Celik Halat Br. 25.  The remedial provisions of 19 U.S.C. § 1677m(d), however, are not triggered unless the respondent has satisfied all five enumerated criteria under 19 U.S.C. § 1677m(e).  *See Tung Mung Dev. Co., Ltd. v. United States*, 25 C.I.T. 752 (2001).  Failure to fulfill any one criterion renders § 1677m(d) inapplicable.  Id.  Two of those criteria are timely submitted information and that the interested party acted to the best of its ability.  Because Celik Halat failed to satisfy two of the criteria of 19 U.S.C. § 1677m(e), 19 U.S.C. § 1677m(d) cannot serve as an alternative means to submit untimely submissions.  See 19 U.S.C. § 1677m(e)(1),(4);

24

see also IDM at 4 (finding that "Celik Halat failed to cooperate to the best of its ability to comply with Commerce's request for information, within the meaning of section 776(b)(1) of the Act").

For these reasons, *Shelter Forest* and *China Kingdom Import & Export Co., Ltd. v. United States*, 507 F. Supp. 2d 1337 (Ct. Int'l Trade 2007) are inapplicable. Celik Halat Br. 25-27. Unlike in *Shelter Forest*, Commerce did not reject a timely submission as untimely without notice to the respondent regarding deficiencies, as required by 19 U.S.C. § 1677m(d). 497 F. Supp. 3d at 1401. *China Kingdom* is similarly distinguishable on its facts. In *China Kingdom*, this court held that Commerce did not comply with 19 U.S.C. § 1677m(d) by rejecting deficiency submissions when the respondents discovered the deficiency and tried to correct it significantly prior to the preliminary determination. 507 F. Supp. 2d at 1352-54. By contrast, Celik Halat "failed to submit all portions of its response to sections B and C of the questionnaire by the established deadline" prior to the preliminary determination. IDM at 4 (emphasis added). Because Celik Halat did not submit timely information or act to the best of its ability in accordance with 19 U.S.C. § 1677m(e)(4), Commerce was not required to provide the company an opportunity to correct or explain deficiencies. 19 U.S.C. § 1677m(d), 1677m(e)(1), (4).

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's final determination.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

*/s/ Tara K. Hogan*
TARA K. HOGAN
Assistant Director

*/s/ Miles K. Karson*
MILES K. KARSON
OF COUNSEL:                           Trial Attorney
JESUS N. SAENZ                        U.S. Dept. of Justice
Counsel                               Civil Division
Office of the Chief Counsel           Commercial Litigation Branch
    for Trade Enforcement and Compliance   P.O. Box 480
U.S. Department of Commerce           Ben Franklin Station
Washington, D.C.                      Washington, D.C. 20044
                                      Telephone: (202) 307-0309
                                      E-mail: miles.karson@usdoj.gov
July 27, 2021                         Attorneys for Defendant