IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| CELIK HALAT VE TEL SANAYI A.S. | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | |
| Defendant. | Court No. 21-00045 |
| and | PUBLIC DOCUMENT |
| INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, AND WIRE MESH CORP. | |
| Defendant-Intervenors. | |

REPLY BRIEF OF PLAINTIFF CELIK HALAT VE TEL SANAYI A.S.

Irene H. Chen
CHEN LAW GROUP, LLC.
200-A Monroe St., Ste. 100
Rockville, MD 20850
Tel (301) 760-7393

August 24, 2021                    *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.    ARGUMENT ......................................................................................................... 3

    A.     COMMERCE ABUSED ITS DISCRETION IN REJECTING CELIK HALAT'S ENTIRE QUESTIONNAIRE RESPONSE BASED ON THE 21-MINUTE LATE FILING OF A SINGLE EXHIBIT .............................................................................................. 3

       1.     Judicial Precedent Does not Support Commerce's Contention that it May Reject all Untimely Filings Regardless of the Length of the Delay ...................................... 5

       2.     Commerce Improperly Rejected Celik Halat's Entire Questionnaire Response Based on the 21 Minute Late Filing of a Single Exhibit ............................................... 12

       3.     Commerce's Inconsistent Application of its Extension Regulation is Arbitrary and Capricious ............................................................................................................ 13

    B.     COMMERCE'S APPLICATION OF TOTAL ADVERSE FACTS AVAILABLE AGAINST CELIK HALAT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE OR IN ACCORDANCE WITH LAW ............................................................................... 16

       1.     Commerce is Engaged in Impermissible Post-Hoc Rationalization ............................ 19

       2.     Commerce failed to Provide Celik Halat a Statutorily Required Opportunity to Remedy the Untimely Filed Exhibit .................................................................................... 20

       3.     Celik Halat Did Exhaust its Administrative Remedies ............................................. 21

III.   CONCLUSION .................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271 (Ct. Int'l Trade 2019)............... 6

*Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014)..................... 11

*Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ................................................................................................................................................... 19

*BMW of N. Am. LLC v. United States*, 926 F.3d 1291 (Fed. Cir. 2019) ..................................... 19

*Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019)...................... 8, 9

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 83 S. Ct. 239, 9 L. Ed. 2d 207 (1962)........................................................................................................................................ 15

*Celik Halat ve Tel Sanayi A.S. v. United States*, 483 F. Supp. 3d 1370 (Ct. Int'l Trade 2020) 4, 15

*China Kingdom Import & Export Co., Ltd. v. United States*, 507 F. Supp. 2d 1337 (Ct. Int'l Trade 2007)............................................................................................................................ 21, 23

*Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351 (Fed. Cir. 2021)............. 21

*Dongtai Peak Honey Indus. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015)........................ 7, 8

*Dupont Teijin Films v. United States*, 931 F. Supp. 2d 1297 (Ct. Int'l Trade 2013).................... 10

*Ferrostaal Metals Gmbh v. United States*, No. 20-00018, 2021 Ct. Intl. Trade LEXIS 54 (Ct. Int'l Trade May 4, 2021)............................................................................................................ 21

*Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) .. 10

*Hiep Thanh Seafood Joint Stock Co. v. United States*, 34 Ct. Int'l Trade 1428, 752 F. Supp. 2d 1330 (2010) ............................................................................................................................... 20

*Hyosung Corp. v. United States*, 35 Ct. Int'l Trade 343 (Ct. Int'l Trade 2011) ............................ 7

*Itochu Building Products v. United States*, 733 F. 3d 1140 (Fed. Cir. 2013) ............................... 22

*MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015)...................... 4

*Mannesmannrohren-Werke AG & Mannesmann Pipe & Steep Corp. v. United States*, 77 F. Supp. 2d 1302 (Ct. Int'l Trade 1999)...................................................................................... 17

*Maui Pineapple Co. v. United States*, 27 Ct. Int'l Trade 580, 264 F. Supp. 2d 1244 (2003)......... 8

*Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375 (Fed. Cir. 2008) ......................... 22

*Nippon Steel Corp. v. United States*, 24 Ct. Int'l Trade 1158, 118 F. Supp. 2d 1366 (2000) ...........................................................................................................................16, 17, 18, 19

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012)................................ 6

*Seah Steel Vina Corp. v. United States*, 182 F. Supp. 3d 1316 (Ct. Int'l Trade 2016)................ 15

*Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ..................................................................................................................................... 9, 21

*Timken Co. v. United States*, 894 F.2d 385 (1990) ...................................................................... 20

*U.S. Magnesium LLC v. United States*, 895 F. Supp. 2d 1319 (Ct. Int'l Trade 2013)................. 10

*Yantai Timken Co. v. United States*, 31 Ct. Int'l Trade 1741, 521 F. Supp. 2d 1356 (2007) ......... 6

**Statutes**

19 U.S.C. § 1677e(b) ................................................................................................................... 16

19 U.S.C. § 1677m(d) ............................................................................................................ passim

19 U.S.C. § 1677m(e) ................................................................................................................... 20

**Administrative Decisions**

*Certain Hot-Rolled Carbon Steel Flat Products from Ukraine*, 66 Fed. Reg. 50,401 (Dep't of

Commerce Oct. 3, 2001) ............................................................................................... 14

*Wooden Bedroom Furniture from the People's Republic of China*, 69 Fed. Reg. 67,313 (Dep't of
    Commerce Nov. 17, 2004) .................................................................................. 15

**Administrative Regulations**

19 C.F.R. 351.301 ...................................................................................................... 10

19 C.F.R. 351.302 ............................................................................................ 10, 12, 14

## I.   <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiff Celik Halat ve Tel Sanayi A.S. ("Plaintiff" or "Celik Halat") respectfully submits this reply brief to the briefs in opposition filed by Defendant, the United States, ("Defendant" or "Commerce") and Defendant-Intervenors, Insteel Wire Products Company, Sumiden Wire Products Corporation, and Wire Mesh Corp. ("Defendant-Intervenors") regarding the final determination of the United States Department of Commerce ("Commerce") in the antidumping duty investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey.

Commerce severely abused its discretion in rejecting Celik Halat's entire Sections B and C responses based on a 21-minute delay in the filing of a Section B exhibit. Commerce applied an impermissible bright line rule in rejecting both responses, without evaluating the particular circumstances and in violation of its own regulations regarding timely filed documents. The delay in question involved a single exhibit filed 21 minutes after working hours, with the majority of the responses filed timely, and no working time lost by Commerce to conduct the investigation. Compared with the complete lack of burden to Commerce in accepting the filing, the consequences of Commerce's rejection of Celik Halat's entire Sections B and C responses were severe, resulting in a 53.65 percent adverse facts available rate assigned to Celik Halat, the loss of the opportunity to prove that the actual margin was two percent, and the effective removal of Celik Halat from the U.S. market for years.

Commerce also defied its own practice of granting post-deadline extensions for minor delays due to counsel error. Commerce also failed to allow Celik Halat the statutorily required opportunity to remedy the deficiency and refused to accept the self-corrected late exhibit 21 minutes after the 5:00 pm filing deadline. Commerce violated the statute by improperly rushing

1

to apply adverse facts available and the most punitive AD margin for a minor inadvertent error by counsel.

Further, Commerce and Defendant-Intervenors' arguments in opposition are unfounded and should be rejected. Plaintiff does not contend that Commerce has no discretion to set and enforce deadlines. Rather, Plaintiff challenges Commerce's position that it may reject any untimely submission, even in cases where the delay is as short as 21 minutes. The courts have prohibited Commerce's imposition of a bright-line rule requiring Commerce to consider the interests of accuracy and fairness over burden and finality issues.

Commerce does not deny its obligation to balance interests. However, it does not acknowledge that those interests were never addressed in the Final Determination. Commerce and Defendant-Intervenors also avoid any direct discussion of the 21- minute delay. Their silence is telling because there is no conceivable way that such a short delay after business hours in the filing of a single exhibit to otherwise timely filed questionnaire responses could have impeded Commerce's ability to comply with its statutory obligations in any way. Nor did Commerce identify any such harm in the *Final Determination*.

Commerce and Defendant-Intervenors' attempts to portray Celik Halat's filing as a wholesale failure to file the entire response on time should also be rejected as inaccurate. Commerce's opposition also does not substantively address Celik Halat's arguments regarding the improper removal of the entire Sections B and C response (both public and BPI and timely and untimely portions) from the record. As discussed in Celik Halat's opening brief, Commerce's regulations, ACCESS handbook, and questionnaire instructions do not support its rejection of the timely filed sections of Celik Halat's Sections B and C questionnaire responses, based on the 21-minute late filing of one BPI exhibit to its Section B response.

2

Commerce's actions in treating Celik Halat's situation differently from other similar cases involving minor clerical errors were arbitrary and capricious. Commerce contends that Celik Halat did not demonstrate "extraordinary circumstances." But in the *Final Determination,* and again in its response brief, Commerce failed to address the specific cases cited by Celik Halat where it granted other respondents out of time extensions due to counsel's minor mistakes. Commerce also has no explanation for why it has treated Celik Halat differently and more harshly than petitioners and other respondents that have made untimely filings of entire responses due to minor errors.

## II.   ARGUMENT

### A. COMMERCE ABUSED ITS DISCRETION IN REJECTING CELIK HALAT'S ENTIRE QUESTIONNAIRE RESPONSE BASED ON THE 21-MINUTE LATE FILING OF A SINGLE EXHIBIT

Commerce abused its discretion its discretion in rejecting Celik Halat's entire Sections B and C questionnaire response based on a 21-minute delay in the filing of one exhibit to its Section B response. (PR 137). Commerce contends that its decision to reject Celik Halat's Sections B and C questionnaire response in its entirety was not an abuse of discretion because it was supported by reasoned explanation. However, Commerce's explanation is not reasoned because it did not address why burden and finality issues in accepting a response based on a 21 minute late filing of a single exhibit outweighed fairness and accuracy concerns.

Defendant-Intervenors argue that accepting Celik Halat's 21-minute late filing would have created a burden on Commerce. *Def-Int. Br.* at 26-27. The Court should reject Defendant-Intervenors' arguments as impermissible *post hoc* rationalization, given that Commerce never stated as such in the *Final Determination*, and that such a conclusion is unreasonable given the facts in the case.

3

According to Commerce, it has "broad discretion" to enforce its deadlines and that it must be able to enforce those deadlines in order "to fulfill its mandate to administer the antidumping duty laws." *DOC Br.* at 8. Commerce contends that it may strictly enforce time limits and other requirements if it provides a "reasoned explanation for its decision." *DOC Br.* at 9. Defendant-Intervenors contend that Commerce's regulation requires that all untimely submissions be rejected regardless of any adverse consequences to the responding party. *Def-Int. Br.* at 12-13.

Commerce and Defendant-Intervenors are incorrect that the agency's discretion is unfettered. The courts have repeatedly held that Commerce must consider accuracy and burden concerns in weighing whether to reject untimely filings. *See e.g. Celik Halat ve Tel Sanayi A.S. v. United States*, 483 F. Supp. 3d 1370, 1379 (Ct. In'l Trade 2020) ("Commerce abuses its discretion when it rejects information that would not be burdensome to incorporate and which would increase the accuracy of the calculated subsidy rate"); *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355-56 (Ct. Int'l Trade 2015) ("Commerce's discretion "is bounded at the outer limits by obligation to carry out its statutory duty of 'determining dumping margins "as accurately as possible"'").

Moreover, Commerce did not provide a reasoned explanation in the *Final Determination*. The facts show that the interests of accuracy and fairness weighed heavily in Plaintiff's favor. Here, the difference between the 53.65 percent Petition AFA rate assigned to Celik Halat and the rate it was denied the opportunity to establish as the actual dumping rate, *i.e.,* less than two percent, was substantial. *See Celik Halat Case Brief* at 8 (PR 160). This is compared with the lack of any burden on Commerce in accepting a response that was filed timely, except for one exhibit that was filed 21 minutes after business hours. Commerce lost no time and sustained no

burden.

Instead of addressing the balancing of interests, Commerce devoted its discussion to its claim that a submission is not complete unless it is filed in its entirety, its claim that Celik Halat did not demonstrate "extraordinary circumstances," and rebuking Celik Halat for failing to format its exhibit properly. *Issues and Decision Memorandum for Final Determination* ("Decision Memo") at 5-7 (PR 167). While Commerce may insist on perfection from respondents, judicial precedent does not. Given the minimal delay and the disproportionate impact to Celik Halat, Commerce's actions were an unreasonable judgment and abuse of discretion.

### 1. Judicial Precedent Does not Support Commerce's Contention that it May Reject all Untimely Filings Regardless of the Length of the Delay

Judicial precedent does not support Commerce's position that it may reject all untimely filings regardless of the length of the delay. Case law firmly supports Celik Halat's arguments that Commerce is prohibited from taking an inflexible approach to untimely submissions with deadlines that are not dictated by statute.

Commerce contends in conclusory fashion that "reasonableness and fairness considerations do not require Commerce to accept Celik Halat's late response." *DOC Br.* at 12. Defendant-Intervenors also argue erroneously that Commerce is required to reject all filings past any deadline, regardless of the length of the delay. *Def.-Int. Br.* at 13. Commerce cites a number of cases that it contends supports its decision to reject Celik Halat's entire Sections B and C questionnaire response based on the 21-minute late filing of a single exhibit. *DOC Br.* at 14. But all of the cases cited by Commerce involve far lengthier delays, agency burden and finality issues. These cases hold that Commerce must weigh the interests of accuracy and fairness over finality and burden, which the agency did not do in this case.

5

Commerce relies in error on *PSC VSMPO* for the proposition that reasonableness and fairness considerations do not require it to accept Celik Halat's response. *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012). The case of *PSC VSMPO-Avisma Corp.* is factually inapposite because it involved a late filed affidavit that was due September 17, 2007, per the Department's new factual information deadlines, but was actually filed by the respondent on June 11, 2008, *i.e.*, 268 days late. *Id.* at 757-758. That does not compare with the delay in this case, *i.e.*, 21 minutes.

The case of *ArcelorMittal USA LLC v. United* States, which Commerce relied on for the proposition that strict enforcement of time limits is acceptable is also factually distinguishable. *DOC Br.* at 18-19. Commerce had only about two weeks after the deadline for comments on the remand results before it was required to file the Remand Redetermination with the court. *ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271, 1282 (Ct. Int'l Trade 2019). On November 15, 2018, Commerce released its draft remand redetermination to the parties and gave them until November 26, 2018 to submit comments on it. *Id.* at 1275. NLMK did not submit timely comments, instead submitting on December 3, 2018, an untimely request for an extension of time to submit draft remand comments. *Id.* NLMK's delayed extension request consumed one (1) week of the two weeks that Commerce had to prepare the remand.

Contrary to Commerce's claims, *Yantai Timken Co. v. United States*, 31 Ct. Int'l Trade 1741, 1755, 521 F. Supp. 2d 1356, 1371 (2007), does not excuse its rejection of a 21-minute late filing. *DOC Br.* at 7. In *Yantai Timken,* Plaintiffs, sought to submit new factual information nine months after the deadline. *Id.* at 1361. The Court noted the deadline to submit new factual information had long passed, the verification had taken place and the *Preliminary Results* had

been issued. *Id.* at 1372. Moreover, Yantai had already submitted submit responses to Commerce's original questionnaire and to Commerce's six supplemental questionnaires. *Id.*

The case of *Stupp Corp. v. United States*, Ct No. 2020-1857, 2021 U.S. App. LEXIS 20984 (Fed. Cir. July 15, 2021), which Commerce relied on in arguing that it has broad discretion to enforce deadlines, is also factually inapposite. *DOC Br.* at 7-8. In *Stupp*, the respondent SeAH submitted its case brief which contained untimely factual information on September 1, 2015, more than three months after the Department issued its Preliminary Determination. *Id.* at *10-11. Here, however, Celik Halat's Sections B and C responses were submitted over one month prior to the preliminary determination.

Commerce cited *Hyosung Corp. v. United States*, 35 Ct. Int'l Trade 343, 347 (Ct. Int'l Trade 2011) for its incorrect argument that reasonableness and accuracy do not require it to accept Celik Halat's response. *DOC Br.* at 14. In *Hyosung,* the Court upheld Commerce's rejection of Hyosung's untimely submission because Hyosung submitted its response more than four months after the deadline, more than two months after the regulatory deadline for respondents to submit new factual information, and a week after the publication of the *Preliminary Results. Id.* at 347. In contrast, here Celik Halat submitted the Section B exhibit 21 minutes after the deadline.

Contrary to Commerce's claims, the case of *Dongtai Peak Honey Indus. Co. v. United States* supports Celik's argument that Commerce did not provide a reasoned explanation for its rejection of a 21-minute late filing here. *DOC Br.* at 8 (citing *Dongtai Peak Honey Indus. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015). Dongtai Peak failed to submit its response to a supplemental response by the deadline, instead filing two untimely requests to extend the deadline by ten days and one day, respectively, citing an overlapping deadline for its Sections C

and D response, a national holiday, and other issues. *Id.* at 1347. On April 27, 2012, Dongtai

Peak submitted its response to the Supplemental Questionnaire without Commerce having

granted the two extension requests. *Id.* On May 22, 2012, Commerce denied Dongtai Peak's

extension requests because it found no good cause, noting that Dongtai Peak had previously been

cautioned regarding late extension requests. *Id.* The Court upheld Commerce's rejection because

Commerce had explained that the deadline was significant due to Dongtai Peak's non-bona fide

U.S. sales in prior reviews, and the need for a full analysis of the information sought in the

Supplemental Questionnaire. *Id*. at 1352. In contrast, here Commerce provided no explanation of

why the deadline was significant or why a 21-minute delay in the filing of one exhibit would

impose a burden on the agency.

Commerce cites *Maui Pineapple* for the proposition that it has discretion to enforce

deadlines and that accurate information must be provided promptly for the agency to have

sufficient time to review. *See DOC Br.* at 8. However, in *Maui Pineapple*, Commerce decided to

accept respondent's minor corrections after the filing deadline, which plaintiff subsequently

challenged in an appeal. *Maui Pineapple Co. v. United States*, 27 Ct. Int'l Trade 580, 600, 264 F.

Supp. 2d 1244, 1261 (2003). The Court rejected Plaintiff's arguments and held that by accepting

the corrections, Commerce avoided the use of a high dumping margin and was able to obtain an

accurate gross unit price for the merchandise sold. *Id.* at 1261. *Maui Pineapple* supports Celik

Halat's argument that Commerce should accept its Sections B and C response to avoid a

punitively high AD margin in favor of an accurate margin.

Celik Halat cited *Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359, 1367 (Ct. Int'l

Trade 2019) for the proposition that Commerce abused its discretion when it removed a timely

filed unredacted response, based on the respondent's attempt to refile a redacted response two

days after the deadline. Commerce erroneously argues that *Bosun Tools* is distinguishable because Celik Halat failed to submit its questionnaire response by the deadline, while in *Bosun Tools*, Commerce already had the timely submitted unredacted version. The Court in *Bosun Tools* found that Commerce had improperly rejected Bosun's response because it had attempted to file the redacted version on time and the respondent's actions did not infringe or delay Commerce's review of the information submitted in any meaningful way. *Id.* at 1366. The Court in *Bosun Tools* also held that it would not be burdensome to incorporate the information proffered. *Id.* Here, Celik Halat attempted to file the exhibit in question on time before the 5 pm deadline and it filed the majority of the Sections B and C response prior to the deadline. Moreover, Celik Halat's 21-minute late delay in submitting the exhibit did not infringe or delay Commerce's review of the information. Defendant-Intervenors speculate that "{u}nlike <u>Bosun</u>, the respondent's actions here had a direct impact on the investigation." *Def-Int Br.* at 17. There is no evidence of any impact due to the 21minute delay and Commerce never stated so to that effect. Defendant-Intervenors also incorrectly assert that Celik Halat did not make an effort to address its failure in a timely fashion. *Def-Int. Br.* at 17, n. 4. Celik Halat self-corrected the late filing 21 minutes after the 5:00 pm deadline, whereas in *Bosun*, the respondent attempted to correct the incomplete filing two days after the deadline.

Celik Halat demonstrated in its opening brief that per the Court's ruling in *Shelter Forest*, Commerce was obligated to waive its deadline in appropriate circumstances. *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021). Commerce argues that *Shelter Forest* is distinguishable because the untimely submission at issue was the result of Commerce's failure to notify respondent of the deficiencies in its original, timely submissions. *DOC Br.* at 11. However, Commerce misses the point. The Court concluded that Commerce

abused its discretion in rejecting Shelter Forest's submission regarding glue content because it had not provided the respondent with the required notice of deficiency regarding its glue evidence. *Id.* at 1399. The Court held that Commerce could not use the extension regulation (19 C.F.R. § 351.301 and § 351.302) "to discharge Commerce of its obligation to notify respondents of deficiencies in submissions under §1677m(d) and then allow Commerce to claim attempts to correct those deficiencies are untimely." *Id.* at 1401. Citing the importance of the rejected information to Commerce's ultimate determination, the Court held that any burden imposed on Commerce in reviewing Shelter Forest's submission was minimal and its decision to reject it was an abuse of discretion, likely with "an inaccurate and punitive result." *Id.* at 1402.

      Defendant-Intervenors' contention that other cases Celik Halat cites to demonstrate that Commerce cannot apply a rigid rule to all untimely submissions are not applicable because they involve the correction of "narrow corrective information" misses the point. *Def. Int. Br.* at 14. The cases of *U.S. Magnesium LLC v. United States*, 895 F. Supp. 2d 1319 (Ct. Int'l Trade 2013), *Pro-Team Coil Nail Enterprise, Inc. v. United States*, 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019), *Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012), and *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995) all stand for the proposition that Commerce's discretion in rejecting untimely submissions is not absolute. In *Pro-Team Coil Nail Enterprise, Inc.*, the Court held that Commerce could not disregard the Q&V Schedule submitted by the respondent, which was submitted seven days after the deadline, when the late filing did not affect Commerce's ability to reach the final result. *Pro-Team Coil Nail Enterprise, Inc.* 419 F. Supp. 3d at 1331. In *Dupont Teijin Films v. United States*, 931 F. Supp. 2d 1297 (Ct. Int'l Trade 2013), the Court concluded that although Commerce may set

reasonable deadlines, it cannot entirely deprive interested parties of the opportunity to submit factual information on a particular issue. *Id.* at 1305.

Defendant-Intervenors' attempts to distinguish the court's holding in *Artisan* are also unavailing. *Def-Int. Br.* at 32-33. As Celik Halat explained in its opening brief, the key premise of the Court's holding in *Artisan* was that Commerce imposed a disproportionate response by rejecting the respondent's separate rate application and imposing AFA for a relatively minor compliance error, i.e., the late filing of a Q&V response that was not even one working hour late. *See* Celik Halat Br. at 12 (*citing Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334, 1344 (Ct. Int'l Trade 2014). As in this case, the Court in *Artisan* concluded that the record did not support a conclusion that the brief delay in the availability of the Q&V questionnaire would have resulted in any delay in the investigation. *Id.* at 1347. The Court also concluded that the consequences of the unexcused late filing was "particularly severe" for an inadvertent mistake by Plaintiff's counsel. *Id.*

There is no language in any of these cases that grants Commerce absolute discretion in the case of late filed questionnaire responses. Defendant-Intervenors have not cited any cases that limits the acceptance of untimely responses to narrow corrective information. Moreover, unlike Defendant-Intervenors' allegations, Celik Halat did not fail to timely file an entire questionnaire response. *Def-Int. Br.* at 15. As Commerce stated in its letter rejecting Celik Halat's response, the only untimely filing was a Section B domestic sales table exhibit. *DOC Letter dated August 19, 2020* (PR 137)

In our opening brief, we established that Commerce does not have unfettered discretion in the administration of its proceedings. *Celik Opening Br.* at 16. Commerce contends that it reasonably rejected Celik Halat's response in its entirety because its deadlines are "to allow the

agency to analyze and verify such information within the statutorily mandated timeframe for completing an investigation." *DOC Br.* at 9. However, Commerce could not have lost any time of its statutorily mandated timeframe for its investigation, when only one substantive exhibit was filed 21 minutes late. Further, in the *Final Determination¸* Commerce did not cite any difficulties or burden it would have encountered had it accepted the 21-minute late filing.

### 2. Commerce Improperly Rejected Celik Halat's Entire Questionnaire Response Based on the 21 Minute Late Filing of a Single Exhibit

In its opening brief, Celik Halat argued that Commerce's questionnaire instructions, its ACCESS handbook, and its regulations do not support its position that a questionnaire response must be filed in its entirety by 5:00 pm ET in order to be accepted as filed by Commerce. In its response brief, Commerce did not specifically address any of Celik Halat's arguments. Instead, Commerce asserts conclusorily that Celik Halat "submitted its response past the established deadline." *DOC Br.* at 9. By declining to specifically address Celik Halat's arguments about why rejection of the entire response was improper, Commerce has effectively conceded those points.

Moreover, Commerce's questionnaire does not support its position. The initial questionnaire instructions contain a reference to the untimely filing of "part of a questionnaire response"

> {F}ailure to properly request extensions for all or part of a questionnaire response may result in the application of partial or total facts available, pursuant to section 776(a) of the Act, which may include adverse inferences, pursuant to section 776(b) of the Act.

*DOE Letter Re: Initial Questionnaire* (June 19, 2020) (PR 67).

Further, Commerce's memorandum granting Celik Halat's extension request also references "information," not a response filed after the deadline:

> Pursuant to 19 CFR 351.302(d), any information filed after these

12

deadlines will be considered untimely filed and will be rejected.

*DOC Letter Re: Partial Grant of Extension for Sections B, C, and D Questionnaire Responses (July 23, 2020)* (PR 106).

Commerce is attempting to conflate the filing of a questionnaire response with the filing of information after 5:00 pm ET, but its own instructions and regulations do not support its contention that it may reject and remove from the record Celik Halat's entire questionnaire response based on the 21-minute late filing of a Section B exhibit.

Defendant-Intervenors argue that the regulation regarding a document filed in its entirety was a "reasonable interpretation" by Commerce. *Def-Int. Br.* at 29-30. But this argument is entirely conclusory in nature as Defendant-Intervenors also fail to address any of the specifics of Plaintiff's arguments. Commerce 's interpretation of its own regulation that document covers "questionnaire response" is not a reasonable interpretation in light of its own questionnaire instructions and that the reference to "document" is a generic term that may apply to any exhibit, spreadsheet, narrative, or letter that makes up a multi-part filing and generates its own ACCESS receipt.

### 3.  Commerce's Inconsistent Application of its Extension Regulation is Arbitrary and Capricious

Commerce's application of its extension regulation is arbitrary and capricious. Commerce argues that substantial evidence supports its conclusion that no "extraordinary circumstances" existed with regard to Celik Halat's untimely filing of its Sections B and C questionnaire response. *DOC Br.* at 15-16. However, per Commerce's own regulations and instructions, Celik Halat was not required to file an extension for the timely filed portions of its questionnaire response and therefore was not required to demonstrate "extraordinary circumstances" for those portions of its Sections B and C responses.

13

Commerce should have accepted the untimely filed exhibit because Commerce has in other cases, routinely granting out of time extensions for minor mistakes and clerical errors, even after the 2013 modification of its regulation, 19 C.F.R. §351.302. *Celik Halat Opening Br.* at 40-41. Commerce contends that its regulations "provide for specific circumstances in which an untimely submission may be excused – namely circumstances that are unforeseeable and beyond a party's control" and that "technical difficulties…is not one of those circumstances." *DOC Br.* at 10. However, Commerce is silent on why it was reasonable to reject Celik Halat's questionnaire response based on its conclusion that Celik Halat failed to demonstrate "extraordinary circumstances," when it has granted other parties, including Petitioners, out of time extensions for similar clerical errors. In its response brief, Commerce also did not rebut Celik Halat's arguments that it granted Petitioners in the parallel CVD investigation an out of time extension for the filing of new subsidy allegations, after Petitioners filed its submission with typographical errors, which was subsequently rejected by ACCESS. Commerce also did not dispute that it had granted an out of time extension to Petitioners in the *Metal Lockers* investigation for a minor formatting issue. Commerce by its silence regarding these other cases either in the *Final Determination* or in its response brief has conceded these points.

Commerce claims that "Celik Halat fails to acknowledge that Commerce has consistently rejected untimely filed submissions." *DOC Br.* at 19. But Commerce has accepted untimely filed submissions. *Celik Opening Br*. at 40-41. Cases cited by Commerce are not factually similar to the instant facts here. *See Certain Hot-Rolled Carbon Steel Flat Products from Ukraine*, 66 Fed. Reg. 50,401, 50,401-50402 (Dep't of Commerce Oct. 3, 2001) (Zaporizhstal filed three additional questionnaire response submissions on June 28, June 29, and July 6, 2001, respectively, well past the deadline of May 18, 2001); *Wooden Bedroom Furniture from the*

14

*People's Republic of China*, 69 Fed. Reg. 67,313, 67,320 (Dep't of Commerce Nov. 17, 2004)

(Hong Yu's supplemental Section A questionnaire response was due on May 21, 2004, but was

not received until June 8, 2004, and was rejected as untimely).

Defendant-Intervenors incorrectly argue that the cases cited by Celik Halat did not

constitute an agency practice and do not demonstrate that Commerce's actions were arbitrary and

capricious. *Def-Int. Br.* at 22. The cases that Celik Halat cited are not isolated incidents but rather

a demonstrated practice of granting respondents out of time extensions for minor and inadvertent

errors by counsel. Further, these cases establish that Commerce has treated Celik Halat

inconsistently in these circumstances. The court may review Commerce's decision to ensure that

it is not "treating similar situations in dissimilar ways." *Celik Halat ve Tel Sanayi A.S. v. United*

*States*, 483 F. Supp. 3d 1370, 1379 (Ct. Int'l Trade 2020).

Defendant-Intervenors attempt to further explain Commerce's finding with regard to

prior cases where Commerce has granted untimely extension requests for minor errors. However,

these are impermissible post hoc rationalizations by Defendant-Intervenors, and the court cannot

rely on Defendant-Intervenors' "post hoc rationalizations" for Commerce's decision. *Seah Steel*

*Vina Corp. v. United States*, 182 F. Supp. 3d 1316, 1337 (Ct. Int'l Trade 2016) (*citing Burlington*

*Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S. Ct. 239, 9 L. Ed. 2d 207 (1962)).[1]

---

1  With regard to Celik Halat's allegation that Commerce accepted petitioners' untimely filing of
new subsidy allegation information in the CVD investigation, Defendant-Intervenors claim that
they notified Commerce as soon as they received the email at 4:55 pm from ACCESS. However,
there is no indication in the Commerce memo that this notification occurred prior to the 5:00 pm
deadline. Defendant-Intervenors also did not submit a written extension request. *Def-Int. Br.* at
23-25. Commerce has not rebutted Plaintiff's arguments with regard to this case in its response
brief. Accordingly, the Court should reject Defendant-Intervenors' post-hoc out of record
rationalizations.

**B. COMMERCE'S APPLICATION OF TOTAL ADVERSE FACTS AVAILABLE AGAINST CELIK HALAT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE OR IN ACCORDANCE WITH LAW**

Commerce's application of total adverse facts available to Celik Halat due to the inadvertent late filing of a single exhibit to its otherwise timely filed Sections B and C questionnaire responses was not supported by substantial evidence or in accordance with law. There is no dispute that Celik Halat was in the middle of filing its responses to the Sections B and C questionnaire, when it ran into technical issues and was unable to file the domestic sales table prior to the 5:00 pm deadline. *Request for Reconsideration* at 4 (PR 139).

Commerce claims that Celik Halat failed to act to the best of its ability when it "failed to exert its maximum effort to submit its response in a timely manner." *See DOC Br.* at 21. However, Commerce's conclusion, i.e., the mere untimeliness of Celik Halat's filing, is insufficient for an adverse facts available finding. More is required before an adverse inference may be drawn as to what facts are to be used. *See* 19 U.S.C. § 1677e(b); *Nippon Steel Corp. v. United States*, 24 Ct. Int'l Trade 1158, 1169, 118 F. Supp. 2d 1366, 1377 (2000).

Commerce's conclusion boiled down to equating the failure to file the exhibit timely with a failure to cooperate:

> Because Celik Halat failed to submit all portions of its response to sections B and C of the questionnaire by the established deadline, we find that Celik Halat failed to cooperate to the best of its ability to comply with Commerce's request for information within the meaning of section 776(b)(1) of the Act.

*Preliminary Decision Memo* at 9 (PR 153).

In the *Final Determination*, Commerce acknowledges that Celik Halat filed other documents timely.

> Celik Halat was also capable of preparing a document to contain searchable text as it had timely filed other submissions in

16

accordance with the ACCESS filing requirements before it failed
to timely filed (sic) its sections B and C questionnaire response.

*Decision Memo* at 7 (PR 167).

Commerce also cites its own removal of Celik Halat's timely filed questionnaire as a

basis for its inability to calculate Celik Halat's rate and having to resort to the Petition AFA rate.

Finally, we disagree with Celik Halat that Commerce should use
Celik Halat's timely filed information to determine its margin in
the final determination, instead of applying the AFA rate of 53.65
percent provided in the Petition. As discussed above, because
Commerce rejected Celik Halat's response to sections B and C of
the questionnaire as untimely filed and removed this response from
the record, neither Celik Halat's home market nor U.S. sales data
are available for Commerce to use. Thus, even assuming,
*arguendo*, that it was appropriate to base Celik Halat's margin on
its reported information, Commerce is unable to do so without
the home market and U.S. sales data.

*Decision Memo* at 8 (PR 167).

Commerce did not provide a reasoned explanation for its adverse facts available finding.

"It is not sufficient for Commerce to simply assert this legal standard {not acting to the best of

ability} as its conclusion or repeat its finding concerning the need for facts available." *Nippon*

*Steel Corp.*, 118 F. Supp. 2d at 1377.   Simple inadvertence is insufficient for application of an

adverse inference. *Mannesmannrohren-Werke AG & Mannesmann Pipe & Steep Corp. v. United*

*States*, 77 F. Supp. 2d 1302,1316 (Ct. Int'l Trade 1999).

The record shows that the only late filing at issue was a single exhibit filed 21 minutes

late. This exhibit was inadvertently filed late, while Celik Halat was in the middle of filing its

Sections B and C questionnaire response, the vast majority of which was filed on time. *Request*

*for Reconsideration* at 3-4 (PR 139).

Commerce alleges that Plaintiff Celik Halat has failed to "support its claims that its

*partially* filed submission was *partially* timely filed in accordance with Commerce's statute and

17

regulations, or that such incomplete information would yield an accurate dumping margin."
*DOC Br.* at 23. Commerce also argues that "Celik Halat failed to submit significant portions of
its section B and section C before Commerce's deadline, making it impossible to calculate an
accurate dumping margin even with the incomplete information filed before 5pm." *DOC Br.* at
23. In addition to being impermissible *post hoc* rationalization, Commerce characterization of the
*Final Determination* is erroneous. A single exhibit – the domestic sales table – is the only late
filed document at issue. In the *Final Determination*¸ Commerce cited its own removal of Celik
Halat's entire response, which included the timely filed U.S. sales table, as a basis for its
conclusion that no information was available to calculate a margin. Commerce is mistaken that
Celik Halat has to "support its claims" that the partially timely filed questionnaire response
would yield an accurate dumping margin. It was Commerce's obligation accept Celik Halat's
timely filed questionnaire response, and to provide Celik Halat an opportunity to remedy the
deficiency - the domestic sales table. Once Commerce fulfilled these obligations, then it may
determine whether it had enough information to calculate an accurate dumping margin.

Moreover, Commerce may not draw an adverse inference based on a simple mistake, i.e.,
the filing of an exhibit 21 minutes after the deadline. *Nippon Steel Corp.,* 118 F. Supp. 2d 1366,
1377-1379 (2000) (holding that Commerce erred in applying AFA based on simple mistake and
that it must analyze error in the light of overall conduct, importance of the information, time
pressures of investigation, and other information to determine whether it was inadvertence or
failure to cooperate). Defendant-Intervenors argue that Commerce is not required to estimate the
AD margin had Celik Halat cooperated. *Def-Int Br.* at 28. But Defendant-Intervenors ignore
Commerce's responsibility under section 1677e(d)(2) to assess the circumstances of the alleged
failure to cooperate before determining the AFA rate, and thus cannot apply the most punitive

AFA rates for something as minor as a 21 minute delay in completing a filing, as contrasted with the highest AFA rate for intentionally misrepresenting facts to Commerce." *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Cir. 2019) (appropriate AFA rate depends on the particular facts and reflects the seriousness of the non-cooperating party's conduct.).

Contrary to Defendant-Intervenors' contention, the case of *Bebitz Flanges*, which Defendant-Intervenors cite for the proposition that Commerce is not required to justify its rejection of untimely submissions, is not factually analogous to this case. *Def-Int Br.* at 32-33. In *Bebitz Flanges,* the Court upheld Commerce's rejection of a supplemental response filed the following morning after the deadline, due to Bebitz having received multiple opportunities to provide the information in the late filed submission. *Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp. 3d 1297, 1308 (Ct. Int'l Trade 2020). The Court held that Commerce had provided Bebitz an opportunity to remedy a deficient response, as provided in 19 U.S.C. § 1677m(d), via the issuance of the Supplemental Questionnaire, which satisfied that requirement. *Id.* at 1307. In contrast, Commerce did not give Celik Halat any such opportunity to remedy the deficiency.

### 1.   Commerce is Engaged in Impermissible Post-Hoc Rationalization

Commerce argues that Celik Halat's failure to timely submit the exhibit "constitutes a 'reckless disregard for compliance standards' as described by this Court in *Nippon Steel*." *See DOC Br.* at 22. This argument should be rejected because Commerce never referred to Celik Halat's actions as "reckless" in the *Final Determination*. Commerce's claim now in its response brief that Celik Halat was "reckless" is impermissible *post-hoc* rationalization and cannot be considered by the Court.

A *post hoc* rationalization is an impermissible justification for a determination supplied

by counsel for the Department in judicial proceedings. *Timken Co. v. United States*, 894 F.2d

385, 389 (1990) ("The first mention of these justifications appears in Commerce's appeal brief

before the CIT. '{A}gency action cannot be sustained on *post hoc* rationalizations supplied

during judicial review.'"); *Hiep Thanh Seafood Joint Stock Co. v. United States*, 34 Ct. Int'l

Trade 1428, 1434, 752 F. Supp. 2d 1330, 1335-36 (2010) (refusing to affirm based on counsel's

justification for Commerce's determination not articulated in final results).

Commerce's explanation does not mention or characterize Celik Halat's actions as a

"reckless disregard for compliance standards." *Decision Memo* at 22 (PR 167). Commerce also

claims that the "missing information in this case was not minor or incidental to Commerce's

dumping calculation; rather, the entirety of Celik Halat's domestic sales database was vital to

Commerce's calculation of an accurate dumping margin." *DOC Br.* at 11. This is also an

impermissible *post hoc* rationalization, as Commerce never stated this in the *Final*

*Determination*, and it should not be considered by the Court.

### 2. Commerce failed to Provide Celik Halat a Statutorily Required Opportunity to Remedy the Untimely Filed Exhibit

Commerce failed to provide Celik Halat the statutorily required opportunity to remedy

the untimely filed exhibit. 19 U.S.C. § 1677m(d) ("section 1677m(d)") governs the conduct by

Commerce in the event of a deficient submission from a respondent. 19 U.S.C. § 1677m(d).

Commerce argues that Celik Halat did not submit timely information or act to the best of its

ability in accordance with 19 U.S.C. § 1677m(e)(4), so Commerce was not required to provide

the company an opportunity to correct or explain deficiencies. *DOC Br.* at 23-24.

Commerce is incorrect. If Commerce determines that a submission is deficient,

Commerce "shall promptly inform the person submitting the response of the nature of the

deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy

or explain the deficiency in light of the time limits . . ." 19 U.S.C. § 1677m(d).

Subsection 1677m(d) states that, in certain circumstances involving a person's submission attempting to cure an earlier failure to "comply with {an information} request," if Commerce finds the submission "not satisfactory," it "may, subject to subsection (e), disregard all or part of the original and subsequent responses." 19 U.S.C. § 1677m(d); *Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351, 1357 & footnote 2 (Fed. Cir. 2021). The purpose of section 1677m(d) is to provide a party that submitted a deficient response with an opportunity to correct the "deficiency," to the extent practicable. *See* 19 U.S.C. § 1677m(d). Nor does section 1677m(d) require that Commerce analyze section 1677m(e) before Commerce acts under section 1677m(d). *Ferrostaal Metals Gmbh v. United States*, No. 20-00018, 2021 Ct. Intl. Trade LEXIS 54, at *15 (Ct. Int'l Trade May 4, 2021).

Commerce claims that *Shelter Forest* and *China Kingdom* are inapplicable, but its arguments are premised on its erroneous characterization of Section 1677m(d). *DOC Br.* at 25. In *Shelter Forest,* the Court found that Commerce abused its discretion by rejecting Shelter Forest's submission as untimely when it had not provided notice to Shelter Forest regarding any deficiencies, as required by 19 U.S.C. § 1677m(d). *Shelter Forest Int'l Acquisition, Inc.* 497 F. Supp. 3d at 1400. Similarly, in *China Kingdom Import & Export Co., Ltd. v. United States*, 507 F. Supp. 2d 1337 (Ct. Int'l Trade 2007), the Court held that Commerce did not comply with 19 U.S.C. § 1677m(d) by rejecting deficiency submissions when the respondents discovered the deficiency and tried to correct it well before the preliminary determination. *Id.* at 1352.

### 3.   Celik Halat Did Exhaust its Administrative Remedies

Celik properly raised its argument about section 1677m(d). In its Request for Reconsideration, its meeting with Commerce officials, and in its Case Brief, Celik Halat made

repeated requests to be given the opportunity to remedy the untimely filing by asking Commerce to accept the response. *Request for Reconsideration* at 2 (PR 139); *Celik Halat Request for a Meeting* (PR 142); *Celik Halat Case Br.* at 2-3 (PR 160). While Celik Halat may now have filled out the argument, the applicable law and the remedy sought are the same: the statutory right under section 1677m(d) to be given the opportunity to remedy a deficiency before application of adverse facts available.

Defendant-Intervenors claim that Celik Halat failed to exhaust its administrative remedies with regard to its section 1677m(d) arguments. *Def-Int Br.* at 36-37. Commerce has not claimed that Celik Halat failed to exhaust its administrative remedies, instead addressing the substance of Celik Halat's arguments. Commerce has waived any claim that Plaintiff has failed to exhaust its administrative remedies, and the Court should reject Defendant-Intervenors' assertions.

The Federal Circuit considers a party's argument to be on the record before Commerce where a party has set forth its position in its comments and held a meeting with Department officials. *Itochu Building Products v. United States*, 733 F. 3d 1140, 1146 (Fed. Cir. 2013). For exhaustion to be satisfied, a party is procedurally required to raise its objection at the time that Commerce is addressing the issue. *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008). In this case, Celik Halat made its request evident to Commerce at the time it could have determined to issue the deficiency request.

Notwithstanding the foregoing, the question of whether Commerce adopted an interpretation of 1677m(d) that is contrary to its plain language is a pure question of law that is not subject to administrative exhaustion requirements. The Federal Circuit has recognized the pure question of law exception to the exhaustion requirement where "statutory construction alone" is sufficient to resolve the merits of the argument. *See Agro Dutch Indus.*, 508 F.3d at

1029. Resolving this legal question involves statutory interpretation and would not involve further delving into the record or the requirement of additional information. *See China Kingdom Import & Export Co., Ltd.* 507 F. Supp. 2d at 1354 ("statutory provision is so plain that statutory interpretation remains a *Chevron* step one analysis"). Commerce was on notice of Plaintiff's argument and the relief sought throughout the underlying investigation.

### III.     CONCLUSION

For the foregoing reasons, and those stated in other papers filed herein, Plaintiff Celik Halat respectfully requests this Court to grant Plaintiff's Motion for Judgment on the Agency Record and to order the relief requested.

Respectfully submitted,

/s/Irene H. Chen
Irene H. Chen
CHEN LAW GROUP, LLC.
200-A Monroe St., Ste. 100
Rockville, MD 20850
Tel (301) 760-7393

Date: August 24, 2021                    *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains **6,979** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities, the signature block, and the present certificate).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

Dated: August 24, 2021                          /s/ Irene H. Chen
                                                Irene H. Chen

                                                *Counsel to Plaintiff Celik Halat ve Tel Sanayi A.S.*

24