Slip Op. No. 22-12

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CELIK HALAT VE TEL SANAYI A.S.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | |
| Defendant, | **Before: Timothy C. Stanceu, Judge** |
| and | **Court No. 21-00045** |
| **INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, AND WIRE MESH CORP.,** | |
| Defendant-Intervenors. | |

### OPINION AND ORDER

[Granting plaintiff's motion for judgment on the agency record in an action contesting a final determination in an antidumping duty investigation.]

Dated: February 15, 2022

*Irene H. Chen*, Chen Law Group LLC, of Rockville, MD, for plaintiff Celik Halat ve Tel Sanayi A.S.

*Miles K. Karson*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States. With him on the submission were *Brian M. Boynton,* Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Tara K. Hogan*, Assistant Director. Of counsel on the submission

was *Jesus N. Saenz*, Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

    *Kathleen W. Cannon*, Kelley Drye & Warren LLP, of Washington, DC, for defendant-intervenors Insteel Wire Products Company, Sumiden Wire Products Corporation, and Wire Mesh Corp.  With her on the submission were *Paul C. Rosenthal*, *R. Alan Luberda*, *Brooke M. Ringel*, and *Joshua R. Morey*.

    Stanceu, Judge: Plaintiff Celik Halat ve Tel Sanayi A.S. ("Celik Halat") contests a final determination that the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") issued in an antidumping duty ("AD") investigation of certain prestressed concrete steel wire strand ("PC strand" or the "subject merchandise") from the Republic of Turkey ("Turkey"), and the associated antidumping duty order (the "Order").

    As a result of this final determination, imports of Celik Halat's merchandise are subject under the Order to an estimated dumping margin of 53.65% and an adjusted cash deposit rate of 44.60%.  The high dumping margin resulted from a decision by Commerce to reject, in the entirety, Celik Halat's responses to Sections B and C of the Department's initial questionnaire because Celik Halat's representative filed a single exhibit to the Section B response 21 minutes after the 5:00 p.m. Eastern Time ("ET") filing deadline.

    The court sets aside the contested determination as an abuse of agency discretion and remands the decision to Commerce for immediate corrective action.

# I. BACKGROUND

## A. The Contested Agency Determinations

The contested antidumping duty determination (the "Final Determination") is

*Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the Netherlands,*

*Saudi Arabia, Taiwan, the Republic of Turkey, and the United Arab Emirates: Final Affirmative*

*Determinations of Sales at Less Than Fair Value and Final Affirmative Critical Circumstances*

*Determinations, in Part*, 85 Fed. Reg. 80,001 (Int'l Trade Admin. Dec. 11, 2020) ("*Final*

*Determination*").  The Final Determination incorporates by reference a "Final Issues and

Decision Memorandum" containing explanatory discussion.  *Issues and Decision*

*Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value*

*Investigation of Prestressed Concrete Steel Wire Strand from Turkey* (Int'l Trade Admin.

Dec. 7, 2020) (P.R. Doc. 167) ("*Final I&D Mem.*").[1]

The Order was published on February 1, 2021.  *Prestressed Concrete Steel Wire*

*Strand From Argentina, Colombia, Egypt, the Netherlands, Saudi Arabia, Taiwan, the Republic*

*of Turkey, and the United Arab Emirates: Antidumping Duty Orders*, 86 Fed. Reg. 7,703 (Int'l

Trade Admin.) ("*Order*").  The Order describes PC strand as "produced from wire of

non-stainless, non-galvanized steel, which is suitable for use in prestressed concrete

(both pretensioned and post-tensioned) applications."  *Id.* at 7,705.  The "product

---

[1] All information disclosed in this Opinion and Order was obtained from the
public record.  Public documents in the administrative record are cited as "P.R.
Doc. __."

definition encompasses covered and uncovered strand and all types, grades, and

diameters of PC strand." *Id*.

## B. The Parties

Plaintiff, a Turkish producer and exporter of PC strand, was a mandatory

respondent in the antidumping duty investigation culminating in the Final

Determination. *See* Compl. ¶¶ 3, 8 (Feb. 1, 2021), ECF No. 2.

Defendant is the United States. Defendant-intervenors Insteel Wire Products

Company, Sumiden Wire Products Corporation, and Wire Mesh Corp. are U.S.

domestic manufacturers of PC strand that were the petitioners in the antidumping duty

investigation resulting in the contested determinations. Consent Mot. to Intervene as of

Right 2 (Feb. 26, 2021), ECF No. 13.

## C. Proceedings Before Commerce

On April 16, 2020, Commerce received from the petitioners an antidumping and

countervailing duty petition addressed to imports of PC strand from Argentina,

Colombia, Egypt, Indonesia, Italy, Malaysia, the Netherlands, Saudi Arabia, South

Africa, Spain, Taiwan, Tunisia, Turkey, Ukraine, and the United Arab Emirates.

*Prestressed Concrete Steel Wire Strand from Argentina, Colombia, Egypt, Indonesia, Italy,*

*Malaysia, the Netherlands, Saudi Arabia, South Africa, Spain, Taiwan, Tunisia, Turkey,*

*Ukraine, and the United Arab Emirates – Petition for the Imposition of Antidumping and*

*Countervailing Duties* (P.R. Docs. 1–9). Commerce subsequently published an initiation

notice for an antidumping duty investigation on PC strand from various countries,

including, as is relevant here, Turkey. *Prestressed Concrete Steel Wire Strand from*

*Argentina, Colombia, Egypt, Indonesia, Italy, Malaysia, the Netherlands, Saudi Arabia, South*

*Africa, Spain, Taiwan, Tunisia, the Republic of Turkey, Ukraine, and the United Arab Emirates:*

*Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 28,605 (Int'l Trade Admin.

May 13, 2020) (P.R. Doc. 133).  The period of investigation for the antidumping duty

investigation was April 1, 2019 through March 31, 2020, pursuant to 19 C.F.R.

§ 351.204(b)(1).  *Id*. at 28,606.

On June 18, 2020, Commerce chose Güney Çelik Hasir ve Demir and Celik Halat

as the mandatory respondents in the antidumping duty investigation.  *Less-Than-Fair*

*Value Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey:*

*Respondent Selection* 5–6 (Int'l Trade Admin) (P.R. Doc. 66).  The following day,

Commerce sent Celik Halat its initial questionnaire (the "Initial Questionnaire"),

requesting that it respond to Section A (General Information), Section B (Sales in the

Home Market or to Third Countries), Section C (Sales to the United States), and

Section D (Cost of Production/Constructed Value).  *U.S. Dep't of Commerce Enforcement*

*and Compliance Antidumping and Countervailing Duty Operations Office II Request for*

*Information Antidumping Duty Investigation* 2 (June 19, 2020) (P.R. Doc. 67).

On September 30, 2020, Commerce published the Preliminary Less-Than-Fair-

Value Determination in its antidumping duty investigation (the "Preliminary

Determination"), in which Commerce, invoking its "facts otherwise available" and

"adverse inference" authorities under section 776(a) and (b), respectively, of the Tariff

Act, 19 U.S.C. § 1677e(a) and (b),[2] preliminarily determined, based on information in the

petition, an estimated dumping margin of 53.65% for entries of subject merchandise

exported by Celik Halat, with a preliminary affirmative critical circumstances

determination.  *Prestressed Concrete Steel Wire Strand From Argentina, Colombia, Egypt, the*

*Netherlands, Saudi Arabia, the Republic of Turkey, and the United Arab Emirates: Preliminary*

*Affirmative Determinations of Sales at Less Than Fair Value and Preliminary Affirmative*

*Critical Circumstances Determinations, in Part*, 85 Fed. Reg. 61,722, 61,723–24 (Int'l Trade

Admin) ("*Prelim. Determination*").  Incorporated by reference in the Preliminary

Determination is an explanatory document, the "Preliminary Decision Memorandum."

*Decision Memorandum for the Preliminary Determination in the Less-Than-Fair Value*

*Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey* (Sept. 23,

2020) (P.R. Doc. 153).  Commerce assigned the same preliminary 53.65% rate to Güney

Çelik Hasir ve Demir, also based on 19 U.S.C. § 1677e, and also assigned that

preliminary rate to all other Turkish exporters and producers of the subject

merchandise.  *Prelim. Determination*, 85 Fed. Reg. at 61,723–24.

---

[2] All citations to the United States Code herein are to the 2018 edition and all citations to the Code of Federal Regulations herein are to the 2020 edition.

Commerce stated that it would direct U.S. Customs and Border Protection

("Customs") to suspend liquidation on all entries of PC strand from Turkey and to

collect cash deposits of 53.65%. *Id.* at 61,724–25.

On December 11, 2020, Commerce published its Final Less-than-Fair-Value

Determination and, consistent with its Preliminary Determination, assigned estimated

dumping margins of 53.65% to Celik Halat, Güney Çelik Hasir ve Demir, and all other

Turkish exporters of the subject merchandise but reversed its earlier finding of critical

circumstances as to Celik Halat. *Final Determination*, 85 Fed. Reg. at 80,001–02.

On January 25, 2021, the U.S. International Trade Commission ("ITC") notified

Commerce that it had reached a final affirmative determination that an industry in the

United States was materially injured by reason of the less-than-fair-value imports of

PC strand from Turkey. *Order*, 86 Fed. Reg. at 7,703.  The ITC published its

determination four days later. *Prestressed Concrete Steel Wire Strand From Argentina,*

*Colombia, Egypt, Netherlands, Saudi Arabia, Taiwan, Turkey, and the United Arab Emirates*,

86 Fed. Reg. 7,564 (Int'l Trade Comm'n Jan. 29, 2021).  Commerce announced that it

would direct Customs, effective on the date of publication in the Federal Register of the

ITC's final affirmative injury determination, to continue to collect cash deposits of

53.65% on PC strand entries from Celik Halat. *Order*, 86 Fed. Reg. at 7,703–04.

Commerce published a correction to its Final Determination to reflect "adjusted cash

deposit rates for the Turkey [less-than-fair-value] investigation after accounting for

export subsidies in the companion countervailing duty investigation." *Prestressed*

*Concrete Steel Wire Strand From the Republic of Turkey: Notice of Correction to the Final*

*Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 11,724, 11,725 (Int'l

Trade Admin. Feb. 26, 2021).  Commerce determined an adjusted cash deposit rate of

44.60% for exports of subject merchandise by Celik Halat and other producers of

PC strand from Turkey.  *Id.*

### D.  Proceedings Before the Court

Plaintiff brought this action in February 2021 to contest the Final Determination

and the Order.  Summons (Feb. 1, 2021), ECF No. 1; Compl. (Feb. 1, 2021), ECF No. 2.

On February 26, 2021, the court granted the consent motion to intervene as of right

submitted by defendant-intervenors Insteel Wire Products Company, Sumiden Wire

Products Corporation, and Wire Mesh Corp.  Order, ECF No. 14.

On May 28, 2021, plaintiff filed the instant motion for judgment on the agency

record under USCIT Rule 56.2 and accompanying brief.  Pl.'s Rule 56.2 Mot. for J. on the

Agency R., ECF No. 20 ("Pl.'s Mot.").  Defendant and defendant-intervenors each filed a

response on July 27, 2021.  Def.'s Resp. to Pl.'s Mot. for J. on the Agency R., ECF No. 22

("Def.'s Resp."); Def.-Intervenors' Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R.,

ECF No. 21 ("Def.-Intervenor's Resp.").  Plaintiff filed its reply on August 24, 2021.

Reply Br. of Pl. Celik Halat ve Tel Sanayi A.S., ECF No. 23.

On September 13, 2021, plaintiff filed an unopposed motion for oral argument on

its Rule 56.2 motion.  Mot. for Oral Argument, ECF No. 26.

## II.  DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises jurisdiction under section 201 of the Customs Courts Act of

1980, 28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced

under section 516A of the Tariff Act, *as amended*, 19 U.S.C. § 1516a, including an action

contesting a final determination that Commerce issues to conclude an antidumping

duty investigation.

In reviewing a final determination, the court "shall hold unlawful any

determination, finding, or conclusion found . . . to be unsupported by substantial

evidence on the record, or otherwise not in accordance with law."  19 U.S.C.

§ 1516a(b)(1)(B)(i).  Substantial evidence refers to "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *SKF USA, Inc. v.*

*United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)).

Decisions that an agency makes in the enforcement and administration of its

regulatory requirements that call for an exercise of discretion are examined according to

an abuse of discretion standard.  *See*, *e.g.*, *Brennan v. Dep't of Health & Human Servs.*,

787 F.2d 1559, 1564 (Fed. Cir.), *cert. denied*, 479 U.S. 985 (1986).

### B. Celik Halat's Claim in This Litigation

In summary, Celik Halat claims that Commerce abused its discretion in rejecting

its responses to Sections B and C of the Initial Questionnaire and acted contrary to law

in resorting, on that basis, to its "facts otherwise available" authority under 19 U.S.C.

§ 1677e(a) and its "adverse inference" authority under section 19 U.S.C. § 1677e(b).[3]

Pl.'s Mot. 28 (arguing that "Commerce's proffered rationale in the *Final Determination*

regarding its rejection of Celik Halat's responses and its imposition of AFA is

unreasonable," *id.* at 28, unsupported by substantial evidence, *id.* at 28–30, contrary to

law and its own regulations, *id.* at 30–36, arbitrary and capricious, *id.* at 38–42, and an

abuse of discretion, *id.* at 16–25).

Under 19 U.S.C. § 1677e(a), Commerce is directed to use "the facts otherwise

available" in specifically defined circumstances.  Here, in resorting to the use of the

facts otherwise available, Commerce relied upon section 776(a)(1) and (2)(B) of the

Tariff Act, which established that if "necessary information is not available on the

record" or if an interested party fails to provide the requested "information by the

deadlines for submission of the information or in the form and manner requested,

subject to subsections (c)(1) and (e) of section 1677m of this title," Commerce "shall,

subject to section 1677m(d) of this title, use the facts otherwise available in reaching the

---

[3] When invoking its "facts otherwise available" authority under 19 U.S.C.
§ 1677e(a) together with its adverse inference authority under § 1677e(b), Commerce
conflates these separate authorities, referring to "adverse facts available" or "AFA."

applicable determination under this subtitle."  According to subsection (b) of 19 U.S.C.

§ 1677e, where Commerce ''finds that an interested party has failed to cooperate by not

acting to the best of its ability to comply with a request for information from the

administering authority [i.e., Commerce], the administering authority . . . in reaching

the applicable determination under this subtitle—may use an inference that is adverse

to the interests of that party in selecting from among the facts otherwise available.''

19 U.S.C. § 1677e(b)(1)(A).  In exercising this authority, Commerce must recognize, as

the Court of Appeals has stated, that ''the purpose of section 1677e(b) is to provide

respondents with an incentive to cooperate, not to impose *punitive*, aberrational, or

uncorroborated margins.''  *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,

216 F.3d 1027, 1032 (Fed. Cir. 2000) (emphasis added).

     Section 351.303 of the Department's regulations provides, generally, for the filing

of documents such as questionnaire responses.  *See* 19 C.F.R. § 351.303(b).  Under the

Department's regulations, Celik Halat was required to file its response to the Initial

Questionnaire, electronically on the Department's automated "ACCESS" system, by

"5 p.m. Eastern Time" on the due date, which in this instance was Monday, August 10,

2020.  *See id.* § 351.303(b)(1) ("An electronically filed document must be received

successfully in its entirety by the Department's electronic records system, ACCESS, by

5 p.m. Eastern Time on the due date"), (b)(2) ("A person must file all documents and

databases electronically using ACCESS . . . .").

The regulations, in 19 C.F.R. § 351.302, address the Department's extensions of filing requirements. "Unless expressly precluded by statute, the Secretary [of Commerce] may, for good cause, extend any time limit established by this part." *Id.* § 351.302(b). The time limits at issue in this case are the deadlines for responses to sections of a questionnaire issued by Commerce. The Department's regulation on time extensions specifically addresses the topic of "untimely" extension requests, i.e., those received after the applicable time period has expired: "An untimely filed extension request *will not be considered* unless the party demonstrates that an extraordinary circumstance exists." *Id.* § 351.302(c) (emphasis added). "An extraordinary circumstance is an unexpected event that: (i) Could not have been prevented if reasonable measures had been taken, and (ii) Precludes a party or its representative from timely filing an extension request through all reasonable means." *Id.* § 351.302(c)(2). In the preamble accompanying the promulgation of this regulation in 2013 (the "Preamble"), Commerce provided additional guidance on what would constitute an "extraordinary circumstance," which may include "a natural disaster, riot, war, *force majeure*, or medical emergency." *Extension of Time Limits,* 78 Fed. Reg. 57,790, 57,793 (Sept. 20, 2013) ("*Preamble*"). Addressing the general topic of filing difficulties, the preamble instructs that "inability . . . to access the internet" is not likely to be seen as an extraordinary circumstance. *Id.*

**1.  The Department's Rejection of Celik Halat's Responses to Sections B and C of the Initial Questionnaire**

On August 10, 2020, Celik Halat submitted its Sections B and C Initial

Questionnaire responses, but, apparently due to formatting and electronic filing issues,

it failed to upload one of its exhibits to its Section B response before the 5:00 p.m. ET

deadline.  Pl.'s Mot. 2–3; *Commerce Letter Re: Less-Than-Fair-Value Investigation of*

*Prestressed Concrete Steel Wire Strand from the Republic of Turkey* (Aug. 19, 2020) (P.R.

Doc. 137) ("*Rejection of Sections B and C Questionnaire*").  The exhibit in question, the

Home Market Sales Table, was uploaded 21 minutes late.  Celik Halat states that on

August 10, 2020, at 4:10 p.m. ET, "after confirming that all information and documents

for Celik Halat's Sections B and C of the AD questionnaire were ready for submission to

Commerce," its counsel "began to file the Section B and C responses through

Commerce's ACCESS electronic records system ('ACCESS')."  Pl.'s Mot. 2.

Celik Halat further states that "[a]t 4:12 p.m. ET, Celik Halat's representative

received an e-mail from ACCESS with an error message, rejecting a single PDF exhibit

of the [business proprietary information ('BPI')] version of the Section B response, the

Home Market Sales Table, on the ground that it contained 'no searchable text.'"  *Id.*  "At

this point, Celik Halat's representative considered but decided not to call the ACCESS

help desk or the Commerce analyst for help."  *Id.* at 9.  Celik Halat adds that "[t]he

representative had previously called the ACCESS help desk or the analyst, but was

unable to reach anyone immediately, due to Covid-19 remote working arrangements."

*Id.* According to Celik Halat's version of events, the representative moved on to other parts of the filing and received confirmation that all BPI narrative files of its Section B and C Initial Questionnaire responses, all PDF versions of its Section B Initial Questionnaire response BPI exhibits, the BPI version of all Section C exhibits, the public version of the Section B response, and Exhibits C-1, C 2, C-3, and C-4 of the public Section C Initial Questionnaire response had been successfully submitted before the 5:00 p.m. deadline. *Id.* at 2–3. "Remaining exhibits of the public Section C response, Exhibits C-8, C-9, C-10 and C-11, were successfully submitted under the time stamp of 5:06 p.m. ET." *Id.* at 3. "At 5:21 p.m. ET, after numerous attempts, Celik Halat's representative gave up trying to submit the PDF version of the Home Market Sales Table, and instead filed the Excel version of the Home Market Sales Table." *Id.* "With the filing of the Excel version, Celik Halat received ACCESS' confirmation that the BPI exhibit to Section B response, the Home Market Sales Table, had been successfully submitted under the time stamp of 5:21 p.m. ET." *Id.* Celik Halat claimed that during filing, the representative "encountered unusually slow ACCESS processing times, with messages of 'waiting for ACCESS to respond.'" *Id.*

On August 18, 2020, petitioners submitted comments to Commerce on Celik Halat's Section B and C Initial Questionnaire responses, which included the assertion that "Celik Halat reported incorrect payment dates for its home market sales." *Prestressed Concrete Steel Wire Strand From Turkey — Petitioners' Comments on Celik Halat*

*ve Tel Sanayi A.S.'s Section B and C Responses* (Dep't of Commerce ACCESS Barcode 4017548-01).  The following day, on August 19, 2020, petitioners also submitted a request to the Department that it postpone its preliminary determinations in the antidumping investigation.  *Prestressed Concrete Steel Wire Strand from Indonesia, Italy, Malaysia, South Africa, Spain, Taiwan, Tunisia, Turkey, and Ukraine – Petitioners' Request to Postpone Preliminary Determinations* (Dep't of Commerce ACCESS Barcode 4017412-01).

On August 19, 2020, Commerce sent Celik Halat a letter stating that it had received the responses to Section B and C of the Initial Questionnaire on August 10, 2020, but that it would reject the Section B and C Initial Questionnaire responses in their entirety because Celik Halat did not file a portion of the responses, the Home Market Sales Table, before the 5:00 p.m. deadline as required by 19 C.F.R § 351.303(b)(1). *Rejection of Sections B and C Questionnaire* at 1.[4]  Commerce issued a memorandum to its Central Records Unit directing it to remove the Sections B and C Initial Questionnaire responses, in the entirety, from the administrative record.  *Rejection of Celik Halat Submissions* (August 19, 2020) (P.R. Doc. 136).

On August 24, 2020, Celik Halat requested that Commerce reconsider its rejection of the Sections B and C Initial Questionnaire responses.  *Pre-Stressed Concrete*

---

[4] Commerce grounded its decision solely in the delayed filing of the Home Market Sales Table filed at 5:21 p.m. Eastern Time ("ET") and did not reference the fact that Exhibits C-8, C-9, C-10, and C-11 were submitted under the time stamp of 5:06 p.m. ET.

*Steel Wire Strand from Turkey: Request for Reconsideration of the Department's Rejection of the Sections B&C Antidumping Questionnaire Response of Celik Halat* 2 (P.R. Doc. 139).  Celik Halat acknowledged that a portion of its Section B Initial Questionnaire response was not successfully uploaded to ACCESS within the deadline but argued that, under the circumstances, it did not believe "punishing Celik Halat by rejecting the entire submission would be warranted or justified."  *Id.*  Celik Halat argued that the Department should exercise its discretion to accept the filing because "difficulties with the [ACCESS] interface and its repeated rejection of 'non-conforming' documents resulted in unavoidable delays that turned a simple process into a difficult and frustrating ordeal, and that ultimately result[ed] in the late filing of part of the response."  *Id.* at 3.  Moreover, "balancing of the equities certainly favor[s] accepting the submission."  *Id.* at 12.

On August 27, 2020, Commerce denied Celik Halat's Request for Reconsideration, in short claiming that "Celik Halat was advised of both the ACCESS document format and Commerce's timeliness requirements weeks before the [Sections B and C] deadline of 5:00 pm ET on August 10, 2020."  *Commerce Letter Re: Less-Than-Fair-Value Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey* 2 (P.R. Doc. 140).  Moreover, Commerce found that the "situation described in [Celik Halat's] August 24 letter does not demonstrate the existence of extraordinary circumstances within the meaning of Commerce's regulations."  *Id.*

On August 31, 2020, petitioners submitted a letter withdrawing their request to postpone the preliminary determination. *Prestressed Concrete Steel Wire Strand From Turkey — Petitioners' Withdrawal of Request to Postpone the Preliminary Determination* (Dep't of Commerce ACCESS Barcode 4021658-01). The letter called for Commerce to assign Güney Çelik Hasir ve Demir and Celik Halat "dumping rates based on total adverse facts available." *Id.* at 5.

On September 2, 2020, Celik Halat requested a meeting with Commerce to discuss its rejection of Celik Halat's Section B and C Initial Questionnaire responses. *Pre-Stressed Concrete Steel Wire Strand from Turkey: Request for a Meeting to Regarding the Acceptance of the Sections B and C Responses of Celik Halat ve Tel Sanayi A.S.* (P.R. Doc. 142). Commerce subsequently held a video conference call with Celik Halat to discuss the request on September 4, 2020. *Commerce's Memorandum on Video Conference with Celik Halat* (Sept. 8, 2020) (P.R. Doc. 149).

On September 8, 2020, in a response to petitioners' August 31, 2020 letter, Celik Halat requested that Commerce accept its Sections B and C Initial Questionnaire responses in full and reject petitioners' demand for imposition of total adverse facts available. *Pre-Stressed Concrete Steel Wire Strand from Turkey: Response of Celik Halat to Petitioners' Demand for Imposition of Total AFA and to the Department's Denial of Reconsideration of the Rejection of its Section B and C Responses* 2 (P.R. Doc. 147). As discussed below, Commerce decided that total "adverse facts available" was the

appropriate resolution of the issue arising from Celik Halat's untimely filing on

August 10, 2020.

### 2.  The Department's Use of "the Facts Otherwise Available" under 19 U.S.C. § 1677e(a) and an Adverse Inference under 19 U.S.C. § 1677e(b)

On September 30, 2020, Commerce published its Preliminary Determination,

and, applying what it termed "adverse facts available," or "AFA," invoked both

sections 776(a) and (b) of the Tariff Act, 19 U.S.C. § 1677e(a) and (b), and preliminarily

assigned an estimated dumping margin of 53.65% to Celik Halat's exports.  *Prelim.*

*Determination*, 85 Fed. Reg. at 61,723–24; *Final I&D Mem.* at 4 ("In the *Preliminary*

*Determination*, we found that, because Celik Halat failed to submit all portions of its

response to sections B and C of the questionnaire by the established deadline, Celik

Halat failed to cooperate to the best of its ability to comply with Commerce's request for

information, within the meaning of section 776(b)(1) of the Act.").

In the Final Issues and Decision Memorandum, Commerce found no "basis to

alter our use of AFA pursuant to section 776(b) of the Act, or the AFA rate assigned to

Celik Halat in the Preliminary Determination."  *Id*. at 5.  The Final Issues and Decision

Memorandum largely summarized Commerce's discussion in the Preliminary Decision

Memorandum, relying on several key findings of fact.  Commerce explained that

"Commerce's regulations are clear that a submission is not complete until it is filed in

its entirety."  *Id*.  Commerce, citing § 351.301(b) of its regulations, stated that Celik Halat

was made aware of this rule in the cover letter of the Initial Questionnaire.  *Id*.  Thus,

Commerce found it "immaterial that portions of Celik Halat's questionnaire response were filed prior to the deadline." *Id*. Commerce stated that "Celik Halat did not file its response to sections B and C of the questionnaire in its entirety by the established deadline of 5:00 p.m. ET on August 10, 2020." *Id*. Thus, "Commerce properly rejected sections B and C of Celik Halat's questionnaire response in its entirety as untimely." *Id*. at 6.

Next, Commerce stated that "Celik Halat failed to request an extension of the deadline to submit its sections B and C questionnaire response when it encountered 'filing difficulties'" despite having "sufficient time to notify Commerce (i.e., either the official in charge or the ACCESS Help Desk) and request an extension of the deadline to resolve the problem prior to the expiry of the deadline." *Id*. Separately, Commerce found that "Celik Halat did not promptly submit a letter to Commerce after knowingly filing its untimely response to explain its delay and request an out-of-time extension." *Id*. In discussing the arguments made in Celik Halat's August 24, 2020 Request for Reconsideration, Commerce found that "[t]he ACCESS filing issue Celik Halat encountered due to document formatting problems was not an unexpected event." *Id*. at 7. Commerce also found that "examples of Commerce['s] previously granting out-of-time extensions are immaterial here" because "Celik Halat's problem with its questionnaire response filing was not due to 'unpredictable clerical difficulties' with ACCESS, as the Handbook provides guidance to ACCESS users on how to avoid the

specific filing issue Celik Halat encountered." *Id.* Celik Halat's failure to file its

response in a timely manner was therefore not "'an unexpected event that . . . could not

have been prevented if reasonable measures had been taken' under 19 CFR

351.302(c)(2)." *Id*.

 In the Final Issues and Decision Memorandum, Commerce also relied for its

decision upon certain language in the preamble accompanying the 2013 promulgation

of current 19 C.F.R. 351.302. *See id*. at 7 (explaining that the Preamble "elaborates that

extraordinary circumstances examples include 'a natural disaster, ware [sic], *force

majeure*, or medical emergency) & n.33 (citing *Preamble*, 78 Fed. Reg. at 57,792).

Commerce added that "[t]he *Extension of Time Limits* also states that 'insufficient

resources, inattentiveness, or the inability of a party's representative to access the

Internet on the day on which the submission was due' are unlikely examples of an

extraordinary circumstance." *Id*. at 7 (citing *Preamble*, 78 Fed. Reg. at 57,792).

### 3. The Underlying Facts and Circumstances Demonstrate that the Department's Decision Was an Abuse of Discretion

 Plaintiff argues that the Department's imposition of a bright-line rule rejecting its

Section B and C Initial Questionnaire response and its application of 19 U.S.C. § 1677e

constituted an abuse of discretion. Pl.'s Mot. 16–25. Upon review of the evidence of

record as a whole, this court agrees. "An agency abuses its discretion where, inter alia,

'the decision . . . represents an unreasonable judgment in weighing relevant factors.'"

*Brenner v. Dep't. of Veteran Affairs*, 990 F.3d 1313, 1324 (Fed. Cir. 2021) (*quoting Star Fruits*

*S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).  Here, Commerce based its

use of the facts otherwise available and an adverse inference on what was no more than

a minor incident of non-compliance with an ACCESS filing requirement that had no

appreciable effect on the antidumping duty investigation.  Commerce reached this

decision despite record evidence that Celik Halat timely requested extensions to file the

submission in question, which Commerce in large part denied.

Defendant and defendant-intervenors, largely echoing the reasoning outlined in

the Final Issues and Decision Memorandum, contend that the Department's rejection of

the untimely submission was not an abuse of discretion.  Def.'s Resp. at 8–15; Def.-

Intervenors Resp. 25–30.  Defendant argues that Commerce has broad discretion to

establish its own rules governing administrative procedures, including the

establishment and enforcement of time limits, Def.'s Resp. at 8, and that "[h]ere,

Commerce provided a reasoned explanation for rejecting Celik Halat's untimely filed

response."  *Id* at 9.  Commerce has broad discretion in establishing its own rules

governing the administrative procedure, but in applying those rules to an individual

circumstance, Commerce lacked the discretion to impose a draconian and punitive

sanction in the circumstance presented.  The court's examination of the larger body of

record evidence bearing on that circumstance, including Celik Halat's attempts to

comply and the events that occurred on the afternoon of August 10, 2020, supports the

court's conclusion.

Before the date of the filing, Celik Halat anticipated that it would have difficulty meeting the filing deadline for its Sections B, C, and D Initial Questionnaire responses and made repeated extension requests.  On July 22, 2020, Celik Halat submitted an extension request of the July 27, 2020 deadline for Sections B, C, and D of the Department's Initial Questionnaire, requesting an extension to August 17, 2020. *Prestressed Concrete Steel Wire Strand from Turkey (A-489-842): Extension Request of Celik Halat ve Tel Sanayi A.S." ("Celik Halat") for SECTION B-C-D in the AD investigation* (P.R. Doc. 103).  Celik Halat reiterated the reasons outlined in its prior July 7, 2020 extension request for its Section A Initial Questionnaire response, including the COVID-19 pandemic, the corresponding lockdown of Turkey, Celik Halat's office closures, and the lack of a robust work-from-home infrastructure.  *Id.* at 2.  Celik Halat also mentioned that Turkey would be observing a religious holiday starting July 30 and extending until August 4, and that "everywhere is literally closed."  *Id.* at 3.  On July 23, 2020, Commerce issued a letter to Celik Halat, granting the extension request in part, extending Celik Halat's response deadline to Sections B, C, and D of the Initial Questionnaire to August 10, 2020.  *Commerce Letter Re: Less-Than-Fair-Value Duty Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey* (P.R. Doc. 106).  Commerce, again, claimed that it could not grant the request in its entirety due to the "statutory deadlines in this investigation."  *Id.* at 1.

On August 4, 2020, Celik Halat submitted another extension request for its

Sections B, C, and D Initial Questionnaire responses. *Prestressed Concrete Steel Wire*

*Strand from Turkey (A-489-842): Extension Request of Celik Halat ve Tel Sanayi A.S." ("Celik*

*Halat") for supplemental SECTION B-C-D in the AD investigation* (P.R. Doc. 113).

Specifically, Celik Halat requested an additional four days to respond to each section,

explaining that an "unfortunate accident had happened and CELIK HALAT's finance

manager had a minor traffic accident on his return to work from his family visit" and

"he [was] on sick leave and resting in his home." *Id.* at 2. Celik Halat stated that if

Commerce would not grant the four-day extension to August 14, 2020 for its Sections B,

C, and D Initial Questionnaire responses, then Celik Halat would appreciate an

extension only for the Section D response. *Id.* Later that day, Commerce issued a letter

to Celik Halat, denying the extension request entirely, claiming that it could not grant

the request due to the "statutory deadlines in this investigation." *Commerce Letter Re:*

*Less-Than-Fair-Value Duty Investigation of Prestressed Concrete Steel Wire Strand from the*

*Republic of Turkey* (Aug. 4, 2020) (P.R. Doc. 114).

The following day, Celik Halat submitted yet another extension request for its

Section D Initial Questionnaire response, asking Commerce to extend the deadline three

days until August 13, 2020. *Pre-stressed Concrete Steel Wire Strand from Turkey (A-489-*

*842): Extension Request of Celik Halat ve Tel Sanayi A.S." ("Celik Halat") for SECTION D in*

*the AD investigation* 2 (Aug. 5, 2020) (P.R. Doc. 115). Celik Halat reiterated that its

finance manager was on sick leave due to the traffic accident and stated that "[h]is

absence is seriously affecting our ability to answer Sections B, C & D questionnaire and

in particular Section D response" and that this made it "almost impossible to answer

Section D questionnaire by August 10, 2020." *Id.* Commerce issued a letter to Celik

Halat granting its extension request, extending the deadline for Section D of the Initial

Questionnaire to August 13, 2020. *Commerce Letter Re: Less-Than-Fair-Value Duty*

*Investigation of Prestressed Concrete Steel Wire Strand from the Republic of Turkey* (Aug. 5,

2020) (P.R. Doc. 116) ("*Commerce Letter Granting Section D Extension Request*"). In the

letter, Commerce also stated that it would not be able to "grant <u>any</u> further extension of

the deadlines for Celik Halat's initial AD questionnaire response." *Id.* at 1 (emphasis in

original).

        The court notes, first, that Celik Halat made repeated, timely extension requests

for its Section B and C Initial Questionnaire responses and that Commerce was

somewhat parsimonious in granting those requests. The Department's grounding of its

reasoning for denying extension requests in its "statutory deadlines" is open to

question. Had Commerce granted the four-day extension requested in the August 4,

2020 extension request, which would have moved the August 10, 2020 deadline to

August 14, 2020, it still would have had 47 days to issue timely the Preliminary

Determination on September 30, 2020. And there is no record evidence that doing so

would have delayed the issuance of the Final Determination.

In its Final Issues and Decision Memorandum, Commerce reasoned that its

rejection of Celik Halat's Section B and C Initial Questionnaire responses was justified

because Celik Halat failed to request an extension of the deadline to submit its Sections

B and C Initial Questionnaire responses when it encountered filing difficulties despite

having "sufficient time to notify Commerce." *Final I&D Mem.* at 6.  Commerce added

another justification, noting that Celik Halat did not "promptly submit a letter to

Commerce after knowingly filing its untimely response to explain its delay and request

an out-of-time extension." *Id*.  While this court agrees that it would have been prudent

for Celik Halat's representative to file an extension request, timely or otherwise, the

court also notes the existence of record evidence to support a reasonable belief on the

part of the submitter that both of these efforts would have been futile.

In its August 5, 2020 letter granting the Section D extension request, Commerce

also addressed the matter of the timing for the filing of responses to Sections B and C of

the Initial Questionnaire.  As noted above, Celik Halat had sought an extension until

August 17, 2020 to file these responses but had been allowed only an extension to

August 10, 2020.  The letter stated, as to these responses, that "[w]e remind you that

Celik Halat's response to sections B and C of Commerce's initial AD questionnaire

remains due no later than 5:00 p.m. Eastern Time (ET) on Monday, August 10, 2020."

*Commerce Letter Granting Section D Extension Request* at 1.  While this sentence was

appropriate, the sentence that followed was not.  The sentence read, "Please note that

we will not be able to grant <u>any</u> further extension of the deadlines for Celik Halat's

initial AD questionnaire response." *Id*. (emphasis in original).  This emphatic and

unambiguous statement in the August 5 letter was itself an abuse of discretion on the

part of Commerce.  It foreclosed any future extension whatsoever (whether or not upon

a timely request, even a brief one on an emergency basis) and even one necessitated by

what Commerce might consider an "extraordinary circumstance" as described by

19 C.F.R. § 351.302(c).  This intimidating language reasonably could be expected to

cause Celik Halat's representative, taking Commerce at its word, to conclude five days

later that Celik Halat would not be granted even a brief extension on the afternoon of

August 10, 2020, that attempting to obtain one would only delay things further, and

that the best course of action instead was continuing the effort to file before the 5:00

p.m. deadline all of the Section B and C Initial Questionnaire responses with all

associated exhibits in a form that would be successfully uploaded in the ACCESS

system.  The court, therefore, rejects the Department's rationale that Celik Halat's

representative should have made a timely extension request on the filing date or should

have submitted an "untimely" extension request at the earliest opportunity.[5]

------

[5] The language of 19 C.F.R. § 351.302(c) was a further discouragement for Celik Halat's filing, as soon as possible, what Commerce terms an "untimely" extension request.  This regulation warns, in unambiguous language, that "[a]n untimely filed extension request *will not be considered* unless the party demonstrates that an extraordinary circumstance exists."  19 C.F.R. § 351.302(c) (emphasis added).  The regulation set forth a standard that, as applied to the situation confronting Celik Halat's (continued . . .)

Had Celik Halat's representative filed an extension request when the difficulty

encountered with the filing of the Home Market Sales Table exhibit appeared (which

plaintiff states, and defendant does not contest, was at 4:12 p.m. ET), one of three events

would have occurred.  If Commerce, consistent with the language in the Department's

August 5, 2020 letter, rejected the emergency extension request, then the representative

may have lost additional time seeking the request, and the filing of the exhibit may have

occurred even later than 5:21 p.m.  A second possibility is that Commerce, despite the

language in the August 5 letter, would have granted a brief extension, in which case the

need for this litigation would not have arisen.  The court notes a third possibility: Celik

Halat's representative would not have received an answer from Commerce in the short

time remaining before the 5:00 p.m. deadline.  As the court explains below, the result of

that event also would have been that the need for this litigation never would have

arisen.

The Preamble to the 2013 regulatory amendment states that "[f]or submissions

that are due at 5:00 p.m., if the Department is not able to notify the party requesting the

---

representative on the afternoon of August 10, 2020, was unforgiving: the regulation
expressly confined an "extraordinary circumstance" to one that "could not have been
prevented if reasonable measures had been taken" and that "[p]recludes a party or its
representative from timely filing an extension request through all reasonable means."
*Id.* § 351.302(c)(2).  In light of the language of the regulation, Celik Halat's
representative reasonably could conclude that Commerce would not consider the
technical filing issues encountered on August 10, 2020 to constitute an extraordinary
circumstance.

extension of the disposition of the request by 5:00 p.m., then the submission would be

due by the opening of business (8:30 a.m.) on the next work day." *Preamble*, 78 Fed.

Reg. at 57,792 (citing 19 C.F.R. § 351.103(b), which sets forth general information,

including office hours, but does not address the time at which submissions are due).

Notably, Commerce made no mention of this Preamble language in its Final Issues and

Decision Memorandum, and none of the parties identified it in briefing in this case.

Considering it *sua sponte*, the court declines to apply it to plaintiff's prejudice.  While

litigants are presumed to be on notice of preamble language that interprets a regulation

being promulgated, the "8:30 a.m." preamble language is not interpretive but a

substantive provision that Commerce should have included in the codified regulation.

Had Commerce done so, it is possible that Celik Halat's representative would have

been aware of it.  But it is not reasonable for the court to expect a filer to be on notice of,

or to allow a litigant to be prejudiced by, a substantive regulatory provision buried

within preamble language, especially a provision that was published in the Federal

Register nearly seven years before the due date of a filing and never issued as a

regulation or rule.

Nevertheless, the Preamble language is relevant to this dispute in a certain

respect.  Under the rule it states, a filer encountering technical difficulty filing on

ACCESS could obtain an automatic extension until 8:30 a.m. the next business day

simply by submitting a request for a brief extension close to a 5:00 p.m. filing deadline.

The "8:30 a.m." regulatory provision hidden in the Preamble indicates to the court that

in this situation, Commerce made far too much of the filing of an exhibit that occurred

21 minutes after the 5:00 p.m. deadline but more than 15 hours before 8:30 a.m. on the

next business day.  This uncodified regulatory provision is another reason the court

concludes that the Department's severely penalizing the 21-minute delay in Celik

Halat's filing of the exhibit was an abuse of its discretion.

Defendant-intervenors argue that "to the extent [Celik] Halat's post-rejection

request is deemed an 'untimely filed' extension request, [Celik] Halat failed to

demonstrate that an extraordinary circumstance existed, as Commerce properly

concluded."  Def.-Intervenors' Resp. 19.  But even were the court to presume, *arguendo*,

that Celik Halat's representative had not described what Commerce would consider an

"extraordinary circumstance"—and on these particular facts the court need not decide

that issue—Commerce imposed a grossly disproportionate penalty for what essentially

was a minor technical violation that had no discernible effect on the investigation.

While Commerce has the authority to establish and enforce its own regulations, it is not

free to apply its "extraordinary circumstance" rule in so harsh a way as to produce an

unjust and punitive result.  *See F.lli De Cecco Di Filippo Fara S. Martino S.p.A.*, 216 F.3d at

1032 (cautioning against a punitive, as opposed to remedial, use of 19 U.S.C. § 1677e(b)).

Plaintiff cites a series of decisions to support the proposition that "[a]s confirmed

by court precedent, the antidumping duty statute prohibits Commerce from taking an

inflexible approach to all submissions for deadlines not dictated by statute." Pl.'s

Mot. 18. Defendant counters that "the cases referenced are inapposite," Def.'s Resp. 11,

and claims that, given Celik Halat's knowledge of the established deadlines in this case

and the importance of submitting its documents in a timely manner, "[f]airness and

accuracy concerns . . . do not require this Court to set aside Commerce's application and

enforcement of the deadline in this case." *Id.* at 15. The court disagrees.

    The Department's procedures as applied in this case insisted on technical

perfection in the filing of documents on its ACCESS system. In that regard, plaintiff

explains, and defendant does not dispute, that Celik Halat's representative first

attempted to file the exhibit at issue at 4:12 p.m. on the filing due date and that ACCESS

rejected it "on the ground that it contained 'no searchable text.'" Pl.'s Mot. 2. Also,

there seems to be no dispute that the representative's difficulty in correcting this

formatting issue caused, or at least contributed to, the 21-minute time period following

the 5:00 p.m. filing deadline that elapsed before the filing of the exhibit was completed.

*Id.* at 3 ("At 5:21 p.m. ET, after numerous attempts, Celik Halat's representative gave up

trying to submit the PDF version of the Home Market Sales Table, and instead filed the

Excel version of the Home Market Sales Table."). Commerce even acknowledged that it

has allowed for out-of-time extensions due to technical filing issues in the past despite

the language in its regulations. *Final I&D Mem.* at 7 (finding "examples of

Commerce['s] previously granting out-of-time extensions [] immaterial here"). No one

who has confronted issues in using automated filing systems would dispute that

unanticipated technical difficulties do sometimes occur.  While Commerce insisted on

technical perfection, on this record the court will not do so.

    The court does not suggest that Commerce could not have taken some action in

response to the missed deadline, such as a warning.  But, as this Court states in *Celik*

*Halat ve Tel Sanayi A.S. v. United States*, 46 CIT __, Slip. Op. 22-13 (Feb. 15, 2022) (which

arose from the concurrent countervailing duty investigation),[6] at this point in the

litigation the court's concern is to remedy the damage done by the Department's unfair

treatment of Celik Halat.  Therefore, the court is ordering Commerce to determine a

new estimated dumping margin for Celik Halat that does not resort to 19 U.S.C. § 1677e

with respect to the filing of the Sections B and C questionnaire response.  The court is

requiring Commerce to submit a remand redetermination within 45 days so that the

court may fashion an appropriate remedy on an expedited basis.

### III. CONCLUSION AND ORDER

    The facts and circumstances considered on the whole demonstrate that

Commerce abused its discretion to impose a draconian penalty upon plaintiff for a

minor and inadvertent technical error by its counsel that had no appreciable effect on

---

[6] Celik Halat was confronted with the need to comply, simultaneously, with the
Department's questionnaires in the parallel antidumping and countervailing duty
investigations.

the antidumping duty investigation.  The court will allow only a limited period of time

for Commerce to correct the serious, prejudicial consequences of its error.

Therefore, upon consideration of all papers and proceedings herein, and upon

due deliberation, it is hereby

**ORDERED** that plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, ECF No. 20 (May 28, 2021), be, and hereby is, granted; it is further

**ORDERED** that Commerce, within 45 days from the date of issuance of this Opinion and Order, shall submit a redetermination upon remand ("Remand Redetermination") that complies with this Opinion and Order; it is further

**ORDERED** that plaintiff and defendant-intervenors shall have 20 days from the filing of the Remand Redetermination in which to submit comments to the court; it is further

**ORDERED** that should plaintiff or defendant-intervenors submit comments, defendant shall have 10 days from the date of filing of the last comment to submit a response; and it is further

**ORDERED** that plaintiff's Motion for Oral Argument (Sept. 13, 2021), ECF No. 26, is denied.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: February 15, 2022
        New York, New York